# EXHIBIT J

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

THE CITY OF CHICAGO,

                                *Plaintiff*,

        *v.*

JEFF SESSIONS, Attorney General of the
United States,

                                *Defendant*.

Civil Action No. 1:17-cv-05720

Hon. Harry D. Leinenweber

### DECLARATION OF ALAN R. HANSON

Pursuant to 28 U.S.C. § 1746, I, Alan R. Hanson, declare as follows:

1.      I am the Acting Assistant Attorney General for the Office of Justice Programs ("OJP") at the U.S. Department of Justice. I have held this position since January 30, 2017. As Acting Assistant Attorney General, I am the head of OJP.

2.      OJP administers the Edward Byrne Memorial Justice Assistance Grant ("Byrne JAG") program.

3.      Attached as **Exhibit A** is a true and correct copy of an award document transmitted on August 23, 2017 (as part of an award package) to the County of Greenville, South Carolina, an applicant to and prospective recipient under the FY 2017 Byrne JAG - Local Solicitation (Dkt. No. 26-11).

4.      Attached as **Exhibit B** is a true and correct copy of an award document transmitted on August 23, 2017 (as part of an award package) to the City of Binghamton, New York, an applicant to and prospective recipient under the FY 2017 Byrne JAG - Local Solicitation (Dkt. No. 26-11).

5.      In each of Exhibits A and B, the award document sets out the various conditions ("special conditions") that will apply to the FY 2017 Byrne JAG award, if the

prospective recipient chooses to accept the award. *See, e.g.*, Exhibit A at 1, Box 12; Exhibit B at 1, Box 12.

6.      Conditions 1 through 58 are identical in each of Exhibits A and B and are being included in each award document being generated within OJP for awards under the FY 2017 Byrne JAG - Local Solicitation, including any such award document that would be generated for the City of Chicago, Illinois.

7.      Attached as **Exhibit C** is a true and correct copy of an award document transmitted on September 7, 2016 (as part of an award package), to the City of Chicago, Illinois under the FY 2016 Byrne JAG - Local Solicitation. Chicago subsequently accepted the award (with the various conditions contained therein).


I declare under penalty of perjury that the foregoing is true and correct.


Dated:  August 24, 2017

Alan R. Hanson

# Exhibit A*

\* In the document that follows, on the page labeled "1 of 20," information in the original document has been redacted in fields 2a ("GRANTEE IRS/VENDOR NO") and 2b ("GRANTEE DUNS NO").

| U.S. Department of Justice<br>Office of Justice Programs<br>**Bureau of Justice Assistance** | **Grant** | PAGE 1 OF 20 |
|---|---|---|

| 1 RECIPIENT NAME AND ADDRESS (Including Zip Code)<br>County of Greenville<br>301 University Ridge, Suite 600<br>Greeville, SC 29601 | 4 AWARD NUMBER: 2017-DJ-BX-0002 |
|---|---|

| 5 PROJECT PERIOD: FROM 10/01/2016 TO 09/30/2020 |
| BUDGET PERIOD: FROM 10/01/2016 TO 09/30/2020 |

| 2a GRANTEE IRS/VENDOR NO<br>[REDACTED] | 6 AWARD DATE 08/23/2017 | 7 ACTION |
|---|---|---|
| | 8 SUPPLEMENT NUMBER<br>00 | Initial |
| 2b GRANTEE DUNS NO<br>[REDACTED] | 9 PREVIOUS AWARD AMOUNT | $ 0 |
| 3 PROJECT TITLE<br>Judicial Support and Law Enforcement Enhancements 2017 | 10 AMOUNT OF THIS AWARD | $ 163,164 |
| | 11 TOTAL AWARD | $ 163,164 |

12 SPECIAL CONDITIONS

THE ABOVE GRANT PROJECT IS APPROVED SUBJECT TO SUCH CONDITIONS OR LIMITATIONS AS ARE SET FORTH
ON THE ATTACHED PAGE(S)

13 STATUTORY AUTHORITY FOR GRANT

This project is supported under FY17(BJA - JAG State and JAG Local) Title I of Pub L No 90-351 (generally codified at 42 U S C 3711 - 3797ff-5),
including subpart 1 of part E (codified at 42 U S C 3750 - 3758); see also 28 U S C 530C(a)

14 CATALOG OF DOMESTIC FEDERAL ASSISTANCE (CFDA Number)

16 738 - Edward Byrne Memorial Justice Assistance Grant Program

15 METHOD OF PAYMENT

GPRS

| AGENCY APPROVAL | GRANTEE ACCEPTANCE |
|---|---|
| 16 TYPED NAME AND TITLE OF APPROVING OFFICIAL<br><br>Alan R Hanson<br><br>Acting Assistant Attorney General | 18 TYPED NAME AND TITLE OF AUTHORIZED GRANTEE OFFICIAL<br><br>Joseph M Kernell<br>County Administrator |
| 17 SIGNATURE OF APPROVING OFFICIAL<br><br>*Alan R. Hanson* | 19 SIGNATURE OF AUTHORIZED RECIPIENT OFFICIAL | 19A DATE |

| AGENCY USE ONLY |
|---|

20 ACCOUNTING CLASSIFICATION CODES

| FISCAL<br>YEAR | FUND<br>CODE | BUD<br>ACT | OFC | DIV<br>REG | SUB | POMS | AMOUNT |
|---|---|---|---|---|---|---|---|
| X | B | DJ | 80 | 00 | 00 | | 163164 |

21 SDJUGT0339

OJP FORM 4000/2 (REV 5-87) PREVIOUS EDITIONS ARE OBSOLETE

OJP FORM 4000/2 (REV 4-88)



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION
SHEET
Grant**

PAGE 2 OF 20

| PROJECT NUMBER | 2017-DJ-BX-0002 | AWARD DATE | 08/23/2017 |
|---|---|---|---|

*SPECIAL CONDITIONS*

1. Requirements of the award; remedies for non-compliance or for materially false statements

   The conditions of this award are material requirements of the award. Compliance with any certifications or assurances submitted by or on behalf of the recipient that relate to conduct during the period of performance also is a material requirement of this award.

   Failure to comply with any one or more of these award requirements -- whether a condition set out in full below, a condition incorporated by reference below, or a certification or assurance related to conduct during the award period -- may result in the Office of Justice Programs ("OJP") taking appropriate action with respect to the recipient and the award. Among other things, the OJP may withhold award funds, disallow costs, or suspend or terminate the award. The Department of Justice ("DOJ"), including OJP, also may take other legal action as appropriate.

   Any materially false, fictitious, or fraudulent statement to the federal government related to this award (or concealment or omission of a material fact) may be the subject of criminal prosecution (including under 18 U.S.C. 1001 and/or 1621, and/or 42 U.S.C. 3795a), and also may lead to imposition of civil penalties and administrative remedies for false claims or otherwise (including under 31 U.S.C. 3729-3730 and 3801-3812).

   Should any provision of a requirement of this award be held to be invalid or unenforceable by its terms, that provision shall first be applied with a limited construction so as to give it the maximum effect permitted by law. Should it be held, instead, that the provision is utterly invalid or -unenforceable, such provision shall be deemed severable from this award.

2. Applicability of Part 200 Uniform Requirements

   The Uniform Administrative Requirements, Cost Principles, and Audit Requirements in 2 C.F.R. Part 200, as adopted and supplemented by DOJ in 2 C.F.R. Part 2800 (together, the "Part 200 Uniform Requirements") apply to this FY 2017 award from OJP.

   The Part 200 Uniform Requirements were first adopted by DOJ on December 26, 2014. If this FY 2017 award supplements funds previously awarded by OJP under the same award number (e.g., funds awarded during or before December 2014), the Part 200 Uniform Requirements apply with respect to all funds under that award number (regardless of the award date, and regardless of whether derived from the initial award or a supplemental award) that are obligated on or after the acceptance date of this FY 2017 award.

   For more information and resources on the Part 200 Uniform Requirements as they relate to OJP awards and subawards ("subgrants"), see the OJP website at https://ojp.gov/funding/Part200UniformRequirements htm.

   In the event that an award-related question arises from documents or other materials prepared or distributed by OJP that may appear to conflict with, or differ in some way from, the provisions of the Part 200 Uniform Requirements, the recipient is to contact OJP promptly for clarification.

3. Compliance with DOJ Grants Financial Guide

   The recipient agrees to comply with the DOJ Grants Financial Guide as posted on the OJP website (currently, the "2015 DOJ Grants Financial Guide" available at https://ojp.gov/financialguide/DOJ/index htm), including any updated version that may be posted during the period of performance.



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION
SHEET**

**Grant**

PAGE 3 OF 20

| PROJECT NUMBER | 2017-DJ-BX-0002 | AWARD DATE | 08/23/2017 |
|---|---|---|---|

*SPECIAL CONDITIONS*

4. Required training for Point of Contact and all Financial Points of Contact

Both the Point of Contact (POC) and all Financial Points of Contact (FPOCs) for this award must have successfully completed an "OJP financial management and grant administration training" by 120 days after the date of the recipient's acceptance of the award. Successful completion of such a training on or after January 1, 2015, will satisfy this condition.

In the event that either the POC or an FPOC for this award changes during the period of performance, the new POC or FPOC must have successfully completed an "OJP financial management and grant administration training" by 120 calendar days after-- (1) the date of OJP's approval of the "Change Grantee Contact" GAN (in the case of a new POC), or (2) the date the POC enters information on the new FPOC in GMS (in the case of a new FPOC). Successful completion of such a training on or after January 1, 2015, will satisfy this condition.

A list of OJP trainings that OJP will consider "OJP financial management and grant administration training" for purposes of this condition is available at https://www.ojp.gov/training/fmts htm. All trainings that satisfy this condition include a session on grant fraud prevention and detection.

The recipient should anticipate that OJP will immediately withhold ("freeze") award funds if the recipient fails to comply with this condition. The recipient's failure to comply also may lead OJP to impose additional appropriate conditions on this award.

5. Requirements related to "de minimis" indirect cost rate

A recipient that is eligible under the Part 200 Uniform Requirements and other applicable law to use the "de minimis" indirect cost rate described in 2 C.F.R. 200.414(f), and that elects to use the "de minimis" indirect cost rate, must advise OJP in writing of both its eligibility and its election, and must comply with all associated requirements in the Part 200 Uniform Requirements. The "de minimis" rate may be applied only to modified total direct costs (MTDC) as defined by the Part 200 Uniform Requirements.

6. Requirement to report potentially duplicative funding

If the recipient currently has other active awards of federal funds, or if the recipient receives any other award of federal funds during the period of performance for this award, the recipient promptly must determine whether funds from any of those other federal awards have been, are being, or are to be used (in whole or in part) for one or more of the identical cost items for which funds are provided under this award. If so, the recipient must promptly notify the DOJ awarding agency (OJP or OVW, as appropriate) in writing of the potential duplication, and, if so requested by the DOJ awarding agency, must seek a budget-modification or change-of-project-scope grant adjustment notice (GAN) to eliminate any inappropriate duplication of funding.



| U.S. Department of Justice<br>Office of Justice Programs<br>**Bureau of Justice Assistance** | **AWARD CONTINUATION SHEET**<br>**Grant** | PAGE  4  OF  20 |
|---|---|---|

| PROJECT NUMBER | 2017-DJ-BX-0002 | AWARD DATE | 08/23/2017 |
|---|---|---|---|

*SPECIAL CONDITIONS*

7.  Requirements related to System for Award Management and Universal Identifier Requirements

    The recipient must comply with applicable requirements regarding the System for Award Management (SAM), currently accessible at https://www.sam.gov/.  This includes applicable requirements regarding registration with SAM, as well as maintaining the currency of information in SAM.

    The recipient also must comply with applicable restrictions on subawards ("subgrants") to first-tier subrecipients (first-tier "subgrantees"), including restrictions on subawards to entities that do not acquire and provide (to the recipient) the unique entity identifier required for SAM registration.

    The details of the recipient's obligations related to SAM and to unique entity identifiers are posted on the OJP web site at https://ojp.gov/funding/Explore/SAM htm (Award condition:  System for Award Management (SAM) and Universal Identifier Requirements), and are incorporated by reference here.

    This condition does not apply to an award to an individual who received the award as a natural person (i.e., unrelated to any business or non-profit organization that he or she may own or operate in his or her name).

8.  All subawards ("subgrants") must have specific federal authorization

    The recipient, and any subrecipient ("subgrantee") at any tier, must comply with all applicable requirements for authorization of any subaward.  This condition applies to agreements that -- for purposes of federal grants administrative requirements -- OJP considers a "subaward" (and therefore does not consider a procurement "contract").

    The details of the requirement for authorization of any subaward are posted on the OJP web site at https://ojp.gov/funding/Explore/SubawardAuthorization htm (Award condition:  All subawards ("subgrants") must have specific federal authorization), and are incorporated by reference here.

9.  Specific post-award approval required to use a noncompetitive approach in any procurement contract that would exceed $150,000

    The recipient, and any subrecipient ("subgrantee") at any tier, must comply with all applicable requirements to obtain specific advance approval to use a noncompetitive approach in any procurement contract that would exceed the Simplified Acquisition Threshold (currently, $150,000).  This condition applies to agreements that -- for purposes of federal grants administrative requirements -- OJP considers a procurement "contract" (and therefore does not consider a subaward).

    The details of the requirement for advance approval to use a noncompetitive approach in a procurement contract under an OJP award are posted on the OJP web site at https://ojp.gov/funding/Explore/NoncompetitiveProcurement htm (Award condition:  Specific post-award approval required to use a noncompetitive approach in a procurement contract (if contract would exceed $150,000)), and are incorporated by reference here.

OJP FORM 4000/2 (REV  4-88)



| U.S. Department of Justice<br>Office of Justice Programs<br>**Bureau of Justice Assistance** | **AWARD CONTINUATION<br>SHEET<br>Grant** | PAGE 5 OF 20 |
|---|---|---|

| PROJECT NUMBER | 2017-DJ-BX-0002 | AWARD DATE | 08/23/2017 |
|---|---|---|---|

*SPECIAL CONDITIONS*

10. Requirements pertaining to prohibited conduct related to trafficking in persons (including reporting requirements and OJP authority to terminate award)

   The recipient, and any subrecipient ("subgrantee") at any tier, must comply with all applicable requirements (including requirements to report allegations) pertaining to prohibited conduct related to the trafficking of persons, whether on the part of recipients, subrecipients ("subgrantees"), or individuals defined (for purposes of this condition) as "employees" of the recipient or of any subrecipient.

   The details of the recipient's obligations related to prohibited conduct related to trafficking in persons are posted on the OJP web site at https://ojp.gov/funding/Explore/ProhibitedConduct-Trafficking htm (Award condition: Prohibited conduct by recipients and subrecipients related to trafficking in persons (including reporting requirements and OJP authority to terminate award)), and are incorporated by reference here.

11. Compliance with applicable rules regarding approval, planning, and reporting of conferences, meetings, trainings, and other events

   The recipient, and any subrecipient ("subgrantee") at any tier, must comply with all applicable laws, regulations, policies, and official DOJ guidance (including specific cost limits, prior approval and reporting requirements, where applicable) governing the use of federal funds for expenses related to conferences (as that term is defined by DOJ), including the provision of food and/or beverages at such conferences, and costs of attendance at such conferences.

   Information on the pertinent DOJ definition of conferences and the rules applicable to this award appears in the DOJ Grants Financial Guide (currently, as section 3.10 of "Postaward Requirements" in the "2015 DOJ Grants Financial Guide").

12. Requirement for data on performance and effectiveness under the award

   The recipient must collect and maintain data that measure the performance and effectiveness of work under this award. The data must be provided to OJP in the manner (including within the timeframes) specified by OJP in the program solicitation or other applicable written guidance. Data collection supports compliance with the Government Performance and Results Act (GPRA) and the GPRA Modernization Act of 2010, and other applicable laws.

13. OJP Training Guiding Principles

   Any training or training materials that the recipient -- or any subrecipient ("subgrantee") at any tier -- develops or delivers with OJP award funds must adhere to the OJP Training Guiding Principles for Grantees and Subgrantees, available at https://ojp.gov/funding/ojptrainingguidingprinciples htm.

14. Effect of failure to address audit issues

   The recipient understands and agrees that the DOJ awarding agency (OJP or OVW, as appropriate) may withhold award funds, or may impose other related requirements, if (as determined by the DOJ awarding agency) the recipient does not satisfactorily and promptly address outstanding issues from audits required by the Part 200 Uniform Requirements (or by the terms of this award), or other outstanding issues that arise in connection with audits, investigations, or reviews of DOJ awards.

15. Potential imposition of additional requirements

   The recipient agrees to comply with any additional requirements that may be imposed by the DOJ awarding agency (OJP or OVW, as appropriate) during the period of performance for this award, if the recipient is designated as "high-risk" for purposes of the DOJ high-risk grantee list.



| U.S. Department of Justice<br>Office of Justice Programs<br>**Bureau of Justice Assistance** | **AWARD CONTINUATION SHEET**<br>**Grant** | PAGE 6 OF 20 |
|---|---|---|

| PROJECT NUMBER | 2017-DJ-BX-0002 | | AWARD DATE | 08/23/2017 |
|---|---|---|---|---|

*SPECIAL CONDITIONS*

16. Compliance with DOJ regulations pertaining to civil rights and nondiscrimination - 28 C.F.R. Part 42

   The recipient, and any subrecipient ("subgrantee") at any tier, must comply with all applicable requirements of 28 C.F.R. Part 42, specifically including any applicable requirements in Subpart E of 28 C.F.R. Part 42 that relate to an equal employment opportunity program.

17. Compliance with DOJ regulations pertaining to civil rights and nondiscrimination - 28 C.F.R. Part 54

   The recipient, and any subrecipient ("subgrantee") at any tier, must comply with all applicable requirements of 28 C.F.R. Part 54, which relates to nondiscrimination on the basis of sex in certain "education programs."

18. Compliance with DOJ regulations pertaining to civil rights and nondiscrimination - 28 C.F.R. Part 38

   The recipient, and any subrecipient ("subgrantee") at any tier, must comply with all applicable requirements of 28 C.F.R. Part 38, specifically including any applicable requirements regarding written notice to program beneficiaries and prospective program beneficiaries. Part 38 of 28 C.F.R., a DOJ regulation, was amended effective May 4, 2016.

   Among other things, 28 C.F.R. Part 38 includes rules that prohibit specific forms of discrimination on the basis of religion, a religious belief, a refusal to hold a religious belief, or refusal to attend or participate in a religious practice. Part 38 also sets out rules and requirements that pertain to recipient and subrecipient ("subgrantee") organizations that engage in or conduct explicitly religious activities, as well as rules and requirements that pertain to recipients and subrecipients that are faith-based or religious organizations.

   The text of the regulation, now entitled "Partnerships with Faith-Based and Other Neighborhood Organizations," is available via the Electronic Code of Federal Regulations (currently accessible at https://www.ecfr.gov/cgi-bin/ECFR?page=browse), by browsing to Title 28-Judicial Administration, Chapter 1, Part 38, under e-CFR "current" data.

19. Restrictions on "lobbying"

   In general, as a matter of federal law, federal funds awarded by OJP may not be used by the recipient, or any subrecipient ("subgrantee") at any tier, either directly or indirectly, to support or oppose the enactment, repeal, modification, or adoption of any law, regulation, or policy, at any level of government. See 18 U.S.C. 1913. (There may be exceptions if an applicable federal statute specifically authorizes certain activities that otherwise would be barred by law.)

   Another federal law generally prohibits federal funds awarded by OJP from being used by the recipient, or any subrecipient at any tier, to pay any person to influence (or attempt to influence) a federal agency, a Member of Congress, or Congress (or an official or employee of any of them) with respect to the awarding of a federal grant or cooperative agreement, subgrant, contract, subcontract, or loan, or with respect to actions such as renewing, extending, or modifying any such award. See 31 U.S.C. 1352. Certain exceptions to this law apply, including an exception that applies to Indian tribes and tribal organizations.

   Should any question arise as to whether a particular use of federal funds by a recipient (or subrecipient) would or might fall within the scope of these prohibitions, the recipient is to contact OJP for guidance, and may not proceed without the express prior written approval of OJP.

OJP FORM 4000/2 (REV 4-88)



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION
SHEET
Grant**

PAGE  7  OF  20

| PROJECT NUMBER | 2017-DJ-BX-0002 | AWARD DATE | 08/23/2017 |
| --- | --- | --- | --- |

*SPECIAL CONDITIONS*

20. Compliance with general appropriations-law restrictions on the use of federal funds (FY 2017)

The recipient, and any subrecipient ("subgrantee") at any tier, must comply with all applicable restrictions on the use of federal funds set out in federal appropriations statutes.  Pertinent restrictions, including from various "general provisions" in the Consolidated Appropriations Act, 2017, are set out at https://ojp.gov/funding/Explore/FY17AppropriationsRestrictions htm, and are incorporated by reference here.

Should a question arise as to whether a particular use of federal funds by a recipient (or a subrecipient) would or might fall within the scope of an appropriations-law restriction, the recipient is to contact OJP for guidance, and may not proceed without the express prior written approval of OJP.

21. Reporting potential fraud, waste, and abuse, and similar misconduct

The recipient, and any subrecipients ("subgrantees") at any tier, must promptly refer to the DOJ Office of the Inspector General (OIG) any credible evidence that a principal, employee, agent, subrecipient, contractor, subcontractor, or other person has, in connection with funds under this award-- (1) submitted a claim that violates the False Claims Act; or (2) committed a criminal or civil violation of laws pertaining to fraud, conflict of interest, bribery, gratuity, or similar misconduct.

Potential fraud, waste, abuse, or misconduct involving or relating to funds under this award should be reported to the OIG by-- (1) mail directed to: Office of the Inspector General, U.S. Department of Justice, Investigations Division, 950 Pennsylvania Avenue, N.W. Room 4706, Washington, DC 20530; (2) e-mail to: oig hotline@usdoj.gov; and/or (3) the DOJ OIG hotline: (contact information in English and Spanish) at (800) 869-4499 (phone) or (202) 616-9881 (fax).

Additional information is available from the DOJ OIG website at https://www.usdoj.gov/oig.



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION SHEET**

**Grant**

PAGE  8  OF  20

| PROJECT NUMBER | 2017-DJ-BX-0002 | AWARD DATE | 08/23/2017 |
| --- | --- | --- | --- |

*SPECIAL CONDITIONS*

22.  Restrictions and certifications regarding non-disclosure agreements and related matters

No recipient or subrecipient ("subgrantee") under this award, or entity that receives a procurement contract or subcontract with any funds under this award, may require any employee or contractor to sign an internal confidentiality agreement or statement that prohibits or otherwise restricts, or purports to prohibit or restrict, the reporting (in accordance with law) of waste, fraud, or abuse to an investigative or law enforcement representative of a federal department or agency authorized to receive such information.

The foregoing is not intended, and shall not be understood by the agency making this award, to contravene requirements applicable to Standard Form 312 (which relates to classified information), Form 4414 (which relates to sensitive compartmented information), or any other form issued by a federal department or agency governing the nondisclosure of classified information.

1.  In accepting this award, the recipient--

a.  represents that it neither requires nor has required internal confidentiality agreements or statements from employees or contractors that currently prohibit or otherwise currently restrict (or purport to prohibit or restrict) employees or contractors from reporting waste, fraud, or abuse as described above; and

b.  certifies that, if it learns or is notified that it is or has been requiring its employees or contractors to execute agreements or statements that prohibit or otherwise restrict (or purport to prohibit or restrict), reporting of waste, fraud, or abuse as described above, it will immediately stop any further obligations of award funds, will provide prompt written notification to the federal agency making this award, and will resume (or permit resumption of) such obligations only if expressly authorized to do so by that agency.

2.  If the recipient does or is authorized under this award to make subawards ("subgrants"), procurement contracts, or both--

a.  it represents that--

(1)  it has determined that no other entity that the recipient's application proposes may or will receive award funds (whether through a subaward ("subgrant"), procurement contract, or subcontract under a procurement contract) either requires or has required internal confidentiality agreements or statements from employees or contractors that currently prohibit or otherwise currently restrict (or purport to prohibit or restrict) employees or contractors from reporting waste, fraud, or abuse as described above; and

(2)  it has made appropriate inquiry, or otherwise has an adequate factual basis, to support this representation; and

b.  it certifies that, if it learns or is notified that any subrecipient, contractor, or subcontractor entity that receives funds under this award is or has been requiring its employees or contractors to execute agreements or statements that prohibit or otherwise restrict (or purport to prohibit or restrict), reporting of waste, fraud, or abuse as described above, it will immediately stop any further obligations of award funds to or by that entity, will provide prompt written notification to the federal agency making this award, and will resume (or permit resumption of) such obligations only if expressly authorized to do so by that agency.

OJP FORM 4000/2 (REV  4-88)



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

| **AWARD CONTINUATION SHEET** **Grant** | PAGE 9 OF 20 |

| PROJECT NUMBER | 2017-DJ-BX-0002 | AWARD DATE | 08/23/2017 |

*SPECIAL CONDITIONS*

23. Compliance with 41 U.S.C. 4712 (including prohibitions on reprisal; notice to employees)

The recipient (and any subrecipient at any tier) must comply with, and is subject to, all applicable provisions of 41 U.S.C. 4712, including all applicable provisions that prohibit, under specified circumstances, discrimination against an employee as reprisal for the employee's disclosure of information related to gross mismanagement of a federal grant, a gross waste of federal funds, an abuse of authority relating to a federal grant, a substantial and specific danger to public health or safety, or a violation of law, rule, or regulation related to a federal grant.

The recipient also must inform its employees, in writing (and in the predominant native language of the workforce), of employee rights and remedies under 41 U.S.C. 4712.

Should a question arise as to the applicability of the provisions of 41 U.S.C. 4712 to this award, the recipient is to contact the DOJ awarding agency (OJP or OVW, as appropriate) for guidance.

24. Encouragement of policies to ban text messaging while driving

Pursuant to Executive Order 13513, "Federal Leadership on Reducing Text Messaging While Driving," 74 Fed. Reg. 51225 (October 1, 2009), DOJ encourages recipients and subrecipients ("subgrantees") to adopt and enforce policies banning employees from text messaging while driving any vehicle during the course of performing work funded by this award, and to establish workplace safety policies and conduct education, awareness, and other outreach to decrease crashes caused by distracted drivers.

25. Cooperating with OJP Monitoring

The recipient agrees to cooperate with OJP monitoring of this award pursuant to OJP's guidelines, protocols, and procedures, and to cooperate with OJP (including the grant manager for this award and the Office of Chief Financial Officer (OCFO)) requests related to such monitoring, including requests related to desk reviews and/or site visits. The recipient agrees to provide to OJP all documentation necessary for OJP to complete its monitoring tasks, including documentation related to any subawards made under this award. Further, the recipient agrees to abide by reasonable deadlines set by OJP for providing the requested documents. Failure to cooperate with OJP's monitoring activities may result in actions that affect the recipient's DOJ awards, including, but not limited to: withholdings and/or other restrictions on the recipient's access to award funds; referral to the DOJ OIG for audit review; designation of the recipient as a DOJ High Risk grantee; or termination of an award(s).

26. FFATA reporting: Subawards and executive compensation

The recipient must comply with applicable requirements to report first-tier subawards ("subgrants") of $25,000 or more and, in certain circumstances, to report the names and total compensation of the five most highly compensated executives of the recipient and first-tier subrecipients (first-tier "subgrantees") of award funds. The details of recipient obligations, which derive from the Federal Funding Accountability and Transparency Act of 2006 (FFATA), are posted on the OJP web site at https://ojp.gov/funding/Explore/FFATA htm (Award condition: Reporting Subawards and Executive Compensation), and are incorporated by reference here.

This condition, including its reporting requirement, does not apply to-- (1) an award of less than $25,000, or (2) an award made to an individual who received the award as a natural person (i.e., unrelated to any business or non-profit organization that he or she may own or operate in his or her name).

OJP FORM 4000/2 (REV 4-88)



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION
SHEET**

**Grant**

PAGE 10 OF 20

| PROJECT NUMBER | 2017-DJ-BX-0002 | AWARD DATE | 08/23/2017 |
|---|---|---|---|

*SPECIAL CONDITIONS*

27. Use of program income

Program income (as defined in the Part 200 Uniform Requirements) must be used in accordance with the provisions of the Part 200 Uniform Requirements.  Program income earnings and expenditures both must be reported on the quarterly Federal Financial Report, SF 425.

28. Justice Information Sharing

In order to promote information sharing and enable interoperability among disparate systems across the justice and public safety community, the recipient (and any subrecipient at any tier)  must comply with DOJ's Global Justice Information Sharing Initiative (DOJ's Global) guidelines and recommendations for this particular award. The recipient shall conform to the Global Standards Package (GSP) and all constituent elements, where applicable, as described at: https://it.ojp.gov/gsp_grantcondition. The recipient shall document planned approaches to information sharing and describe compliance to the GSP and appropriate privacy policy that protects shared information, or provide detailed justification for why an alternative approach is recommended.

29. Avoidance of duplication of networks

To avoid duplicating existing networks or IT systems in any initiatives funded by BJA for law enforcement information sharing systems which involve interstate connectivity between jurisdictions, such systems shall employ, to the extent possible, existing networks as the communication backbone to achieve interstate connectivity, unless the recipient can demonstrate to the satisfaction of BJA that this requirement would not be cost effective or would impair the functionality of an existing or proposed IT system.

30. Compliance with 28 C.F.R. Part 23

With respect to any information technology system funded or supported by funds under this award, the recipient (and any subrecipient at any tier) must comply with 28 C.F.R. Part 23, Criminal Intelligence Systems Operating Policies, if OJP determines this regulation to be applicable. Should OJP determine 28 C.F.R. Part 23 to be applicable, OJP may, at its discretion, perform audits of the system, as per the regulation. Should any violation of 28 C.F.R. Part 23 occur, the recipient may be fined as per 42 U.S.C. 3789g(c)-(d).  The recipient may not satisfy such a fine with federal funds.

31. Protection of human research subjects

The recipient (and any subrecipient at any tier) must comply with the requirements of 28 C.F.R. Part 46 and all OJP policies and procedures regarding the protection of human research subjects, including obtainment of Institutional Review Board approval, if appropriate, and subject informed consent.

32. Confidentiality of data

The recipient (and any subrecipient at any tier) must comply with all confidentiality requirements of 42 U.S.C. 3789g and 28 C.F.R. Part 22 that are applicable to collection, use, and revelation of data or information. The recipient further agrees, as a condition of award approval, to submit a Privacy Certificate that is in accord with requirements of 28 C.F.R. Part 22 and, in particular, 28 C.F.R. 22.23.

OJP FORM 4000/2 (REV  4-88)



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION
SHEET**

**Grant**

PAGE 11 OF 20

| PROJECT NUMBER | 2017-DJ-BX-0002 | AWARD DATE | 08/23/2017 |
|---|---|---|---|

*SPECIAL CONDITIONS*

33. Verification and updating of recipient contact information

The recipient must verify its Point of Contact(POC), Financial Point of Contact (FPOC), and Authorized Representative contact information in GMS, including telephone number and e-mail address.  If any information is incorrect or has changed, a Grant Adjustment Notice (GAN) must be submitted via the Grants Management System (GMS) to document changes.

34. Law enforcement task forces - required training

Within 120 days of award acceptance, each current member of a law enforcement task force funded with award funds who is a task force commander, agency executive, task force officer, or other task force member of equivalent rank, must complete required online (internet-based) task force training. Additionally, all future task force members must complete this training once during the period of performance for this award, or once every four years if multiple OJP awards include this requirement.

The required training is available free of charge online through the BJA-funded Center for Task Force Integrity and Leadership (www.ctfli.org). The training addresses task force effectiveness, as well as other key issues including privacy and civil liberties/rights, task force performance measurement, personnel selection, and task force oversight and accountability. If award funds are used to support a task force, the recipient must compile and maintain a task force personnel roster, along with course completion certificates.

Additional information regarding the training is available through BJA's web site and the Center for Task Force Integrity and Leadership (www.ctfli.org).

35. Required attendance at BJA-sponsored events

The recipient (and its subrecipients at any tier) must participate in BJA-sponsored training events, technical assistance events, or conferences held by BJA or its designees, upon BJA's request.

36. Justification of consultant rate

Approval of this award does not indicate approval of any consultant rate in excess of $650 per day. A detailed justification must be submitted to and approved by the OJP program office prior to obligation or expenditure of such funds.

OJP FORM 4000/2 (REV  4-88)



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION
SHEET
Grant**

PAGE 12 OF 20

| PROJECT NUMBER | 2017-DJ-BX-0002 | AWARD DATE | 08/23/2017 |
|---|---|---|---|

*SPECIAL CONDITIONS*

37. Compliance with National Environmental Policy Act and related statutes

Upon request, the recipient (and any subrecipient at any tier) must assist BJA in complying with the National Environmental Policy Act (NEPA), the National Historic Preservation Act, and other related federal environmental impact analyses requirements in the use of these award funds, either directly by the recipient or by a subrecipient. Accordingly, the recipient agrees to first determine if any of the following activities will be funded by the grant, prior to obligating funds for any of these purposes. If it is determined that any of the following activities will be funded by the award, the recipient agrees to contact BJA.

The recipient understands that this condition applies to new activities as set out below, whether or not they are being specifically funded with these award funds. That is, as long as the activity is being conducted by the recipient, a subrecipient, or any third party, and the activity needs to be undertaken in order to use these award funds, this condition must first be met. The activities covered by this condition are:

a. New construction;

b. Minor renovation or remodeling of a property located in an environmentally or historically sensitive area, including properties located within a 100-year flood plain, a wetland, or habitat for endangered species, or a property listed on or eligible for listing on the National Register of Historic Places;

c. A renovation, lease, or any proposed use of a building or facility that will either (a) result in a change in its basic prior use or (b) significantly change its size;

d. Implementation of a new program involving the use of chemicals other than chemicals that are (a) purchased as an incidental component of a funded activity and (b) traditionally used, for example, in office, household, recreational, or education environments; and

e. Implementation of a program relating to clandestine methamphetamine laboratory operations, including the identification, seizure, or closure of clandestine methamphetamine laboratories.

The recipient understands and agrees that complying with NEPA may require the preparation of an Environmental Assessment and/or an Environmental Impact Statement, as directed by BJA. The recipient further understands and agrees to the requirements for implementation of a Mitigation Plan, as detailed at https://bja.gov/Funding/nepa html, for programs relating to methamphetamine laboratory operations.

Application of This Condition to Recipient's Existing Programs or Activities: For any of the recipient's or its subrecipients' existing programs or activities that will be funded by these award funds, the recipient, upon specific request from BJA, agrees to cooperate with BJA in any preparation by BJA of a national or program environmental assessment of that funded program or activity.

38. Establishment of trust fund

If award funds are being drawn down in advance, the recipient (or a subrecipient, with respect to a subaward) is required to establish a trust fund account. (The trust fund may or may not be an interest-bearing account.) The fund, including any interest, may not be used to pay debts or expenses incurred by other activities beyond the scope of the Edward Byrne Memorial Justice Assistance Grant Program (JAG). The recipient also agrees to obligate the award funds in the trust fund (including any interest earned) during the period of performance for the award and expend within 90 days thereafter. Any unobligated or unexpended funds, including interest earned, must be returned to OJP at the time of closeout.



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION
SHEET
Grant**

PAGE 13 OF 20

| PROJECT NUMBER | 2017-DJ-BX-0002 | AWARD DATE | 08/23/2017 |
|---|---|---|---|

*SPECIAL CONDITIONS*

39. Prohibition on use of award funds for match under BVP program

JAG funds may be used to purchase vests for an agency, but they may not be used as the 50% match for purposes of the DOJ Bulletproof Vest Partnership (BVP) program.

40. Certification of body armor "mandatory wear" policies

The recipient agrees to submit a signed certification that all law enforcement agencies receiving body armor purchased with funds from this award have a written "mandatory wear" policy in effect. The recipient must keep signed certifications on file for any subrecipients planning to utilize funds from this award for ballistic-resistant and stab-resistant body armor purchases. This policy must be in place for at least all uniformed officers before any funds from this award may be used by an agency for body armor. There are no requirements regarding the nature of the policy other than it be a mandatory wear policy for all uniformed officers while on duty.

41. Body armor - compliance with NIJ standards

Ballistic-resistant and stab-resistant body armor purchased with JAG award funds may be purchased at any threat level, make or model, from any distributor or manufacturer, as long as the body armor has been tested and found to comply with applicable National Institute of Justice ballistic or stab standards and is listed on the NIJ Compliant Body Armor Model List (https://nij.gov/). In addition, ballistic-resistant and stab-resistant body armor purchased must be American-made. The latest NIJ standard information can be found here: https://nij.gov/topics/technology/body-armor/pages/safety-initiative.aspx.

42. Required monitoring of subawards

The recipient must monitor subawards under this JAG award in accordance with all applicable statutes, regulations, award conditions, and the DOJ Grants Financial Guide, and must include the applicable conditions of this award in any subaward. Among other things, the recipient is responsible for oversight of subrecipient spending and monitoring of specific outcomes and benefits attributable to use of award funds by subrecipients. The recipient agrees to submit, upon request, documentation of its policies and procedures for monitoring of subawards under this award.

43. Reporting requirements

The recipient must submit quarterly Federal Financial Reports (SF-425) and semi-annual performance reports through OJP's GMS (https://grants.ojp.usdoj.gov). Consistent with the Department's responsibilities under the Government Performance and Results Act (GPRA) and the GPRA Modernization Act of 2010, the recipient must provide data that measure the results of its work. The recipient must submit quarterly performance metrics reports through BJA's Performance Measurement Tool (PMT) website (www.bjaperformancetools.org). For more detailed information on reporting and other JAG requirements, refer to the JAG reporting requirements webpage. Failure to submit required JAG reports by established deadlines may result in the freezing of grant funds and future High Risk designation.

44. Required data on law enforcement agency training

Any law enforcement agency receiving direct or sub-awarded funding from this JAG award must submit quarterly accountability metrics data related to training that officers have received on the use of force, racial and ethnic bias, de-escalation of conflict, and constructive engagement with the public.



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION
SHEET
Grant**

PAGE 14 OF 20

| PROJECT NUMBER | 2017-DJ-BX-0002 | AWARD DATE | 08/23/2017 |
|---|---|---|---|

*SPECIAL CONDITIONS*

45. Prohibited Expenditures List

Award funds may not be used for items that are listed on the Prohibited Expenditure List at the time of purchase or acquisition, including as the list may be amended from time to time. The Prohibited Expenditure List may be accessed here: https://www.bja.gov/funding/JAGControlledPurchaseList.pdf

46. Controlled expenditures - prior written approval required

Award funds may not be used for items that are listed on the Controlled Expenditure List at the time of purchase or acquisition, including as the list may be amended from time to time, without explicit written prior approval from BJA. The Controlled Expenditure List, and instructions on how to request approval for purchase or acquisitions are set out at https://www.bja.gov/funding/JAGControlledPurchaseList.pdf

47. Controlled expenditures - incident reporting

If an agency uses award funds to purchase or acquire any item on the Controlled Expenditure List at the time of purchase or acquisition, including as the list may be amended from time to time, the agency must collect and retain (for at least 3 years) certain information about the use of-- (1) any federally-acquired Controlled Equipment in the agency's inventory, and (2) any other controlled equipment in the same category as the federally-acquired controlled equipment in the agency's inventory, regardless of source; and the agency must make that information available to BJA upon request. Details about what information must be collected and retained are set out at https://ojp.gov/docs/LE-Equipment-WG-Final-Report.pdf.

48. Sale of items on Controlled Expenditure List

Notwithstanding the provision of the Part 200 Uniform Requirements set out at 2 C.F.R. 200.313, no equipment listed on the Controlled Expenditure List that is purchased with award funds may be transferred or sold to a third party, except as described below:

a. Agencies may transfer or sell any controlled equipment, except riot helmets and riot shields, to a Law Enforcement Agency (LEA) after obtaining prior written approval from BJA. As a condition of that approval, the acquiring LEA will be required to submit information and certifications to BJA as if it were requesting approval to use award funds for the initial purchase of items on the Controlled Expenditure List.

b. Agencies may not transfer or sell any riot helmets or riot shields purchased under this award.

c. Agencies may not transfer or sell any Controlled Equipment purchased under this award to non-LEAs, with the exception of fixed wing aircraft, rotary wing aircraft, and command and control vehicles. Before any such transfer or sale is finalized, the agency must obtain prior written approval from BJA. All law enforcement-related and other sensitive or potentially dangerous components, and all law enforcement insignias and identifying markings must be removed prior to transfer or sale.

The recipient must notify BJA prior to the disposal of any items on the Controlled Expenditure List purchased with award funds, and must abide by any applicable laws (including regulations) in such disposal.

49. Prohibited or controlled expenditures - Effect of failure to comply

Failure to comply with an award condition related to prohibited or controlled expenditures may result in denial of any further approvals of controlled expenditures under this or other federal awards.

OJP FORM 4000/2 (REV 4-88)



| U.S. Department of Justice<br>Office of Justice Programs<br>**Bureau of Justice Assistance** | **AWARD CONTINUATION<br>SHEET**<br>**Grant** | PAGE 15 OF 20 |
|---|---|---|

| PROJECT NUMBER | 2017-DJ-BX-0002 | AWARD DATE | 08/23/2017 |
|---|---|---|---|

*SPECIAL CONDITIONS*

50. Controlled expenditures - Standards

Consistent with recommendation 2.1 of Executive Order 13688, a law enforcement agency that acquires controlled equipment with award funds must adopt robust and specific written policies and protocols governing General Policing Standards and Specific Controlled Equipment Standards. General Policing Standards includes policies on (a) Community Policing; (b) Constitutional Policing; and (c) Community Input and Impact Considerations. Specific Controlled Equipment Standards includes policies specifically related to (a) Appropriate Use of Controlled Equipment; (b) Supervision of Use; (c) Effectiveness Evaluation; (d) Auditing and Accountability; and (e) Transparency and Notice Considerations. Upon OJP's request, the recipient must provide a copy of the General Policing Standards and Specific Controlled Equipment Standards, and any related policies and protocols.

51. Authorization to obligate (federal) award funds to reimburse certain project costs incurred on or after October 1, 2016

The recipient may obligate (federal) award funds only after the recipient makes a valid acceptance of the award. As of the first day of the period of performance for the award (October 1, 2016), however, the recipient may choose to incur project costs using non-federal funds, but any such project costs are incurred at the recipient's risk until, at a minimum-- (1) the recipient makes a valid acceptance of the award, and (2) all applicable withholding conditions are removed by OJP (via a Grant Adjustment Notice). (A withholding condition is a condition in the award document that precludes the recipient from obligating, expending, or drawing down all or a portion of the award funds until the condition is removed.)

Except to the extent (if any) that an award condition expressly precludes reimbursement of project costs incurred "at-risk," if and when the recipient makes a valid acceptance of this award and OJP removes each applicable withholding condition through a Grant Adjustment Notice, the recipient is authorized to obligate (federal) award funds to reimburse itself for project costs incurred "at-risk" earlier during the period of performance (such as project costs incurred prior to award acceptance or prior to removal of an applicable withholding condition), provided that those project costs otherwise are allowable costs under the award.

Nothing in this condition shall be understood to authorize the recipient (or any subrecipient at any tier) to use award funds to "supplant" State or local funds in violation of the recipient's certification (executed by the chief executive of the State or local government) that federal funds will be used to increase the amounts of such funds that would, in the absence of federal funds, be made available for law enforcement activities.

52. "Certification of Compliance with 8 U.S.C. 1373" required for valid award acceptance by a unit of local government

In order validly to accept this award, the applicant local government must submit the required "Certification of Compliance with 8 U.S.C. 1373" (executed by the chief legal officer of the local government). Unless that executed certification either-- (1) is submitted to OJP together with the fully-executed award document, or (2) is uploaded in OJP's GMS no later than the day the signed award document is submitted to OJP, any submission by a unit of local government that purports to accept the award is invalid.

If an initial award-acceptance submission by the recipient is invalid, once the unit of local government does submit the necessary certification regarding 8 U.S.C. 1373, it may submit a fully-executed award document executed by the unit of local government on or after the date of that certification.

For purposes of this condition, "local government" does not include any Indian tribes.



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION SHEET**

**Grant**

PAGE 16 OF 20

| PROJECT NUMBER | 2017-DJ-BX-0002 | AWARD DATE | 08/23/2017 |
| --- | --- | --- | --- |

*SPECIAL CONDITIONS*

53. Ongoing compliance with 8 U.S.C. 1373 is required

1. With respect to the "program or activity" funded in whole or part under this award (including any such "program or activity" of any subrecipient at any tier), throughout the period of performance for the award, no State or local government entity, -agency, or -official may prohibit or in any way restrict-- (1) any government entity or -official from sending or receiving information regarding immigration status as described in 8 U.S.C. 1373(a); or (2) a government entity or -agency from sending, requesting or receiving, maintaining, or exchanging information regarding immigration status as described in 8 U.S.C. 1373(b). For purposes of this award, any prohibition (or restriction) that violates this condition is an "information-communication restriction."

2. Certifications from subrecipients. The recipient may not make a subaward to a State or local government or a "public" institution of higher education, unless it first obtains a certification of compliance with 8 U.S.C. 1373, properly executed by the chief legal officer of the jurisdiction or institution that would receive the subaward, using the appropriate form available at https://ojp.gov/funding/Explore/SampleCertifications-8USC1373 htm. Similarly, the recipient must require that no subrecipient (at any tier) may make a further subaward to a State or local government or a "public" institution of higher education, unless it first obtains a certification of compliance with 8 U.S.C. 1373, properly executed by the chief legal officer of the jurisdiction or institution that would receive the further subaward, using the appropriate OJP form.

3. The recipient's monitoring responsibilities include monitoring of subrecipient compliance with the requirements of this condition.

4. Allowable costs. Compliance with these requirements is an authorized and priority purpose of this award. To the extent that such costs are not reimbursed under any other federal program, award funds may be obligated (including for authorized reimbursements) for the reasonable, necessary, and allocable costs (if any) that the recipient, or any subrecipient at any tier that is a State or local government or a "public" institution of higher education, incurs to implement this condition.

5. Rules of Construction

A. For purposes of this condition:

(1) "State" and "local government" include any agency or other entity thereof, but not any institution of higher education or any Indian tribe.

(2) A "public" institution of higher education is one that is owned, controlled, or directly funded by a State or local government.

(3) "Program or activity" means what it means under title VI of the Civil Rights Act of 1964 (see 42 U.S.C. 2000d-4a).

(4) "Immigration status" means what it means for purposes of 8 U.S.C. 1373 (Illegal Immigration Reform and Immigrant Responsibility Act of 1996); and terms that are defined in 8 U.S.C. 1101 (Immigration and Nationality Act) mean what they mean under that section 1101, except that the term "State" also shall include American Samoa (cf. 42 U.S.C. 901(a)(2)).

(5) Pursuant to the provisions set out at (or referenced in) 8 U.S.C. 1551 note ("Abolition … and Transfer of Functions"), references to the "Immigration and Naturalization Service" in 8 U.S.C. 1373 are to be read as references to particular components of the Department of Homeland Security (DHS).

B. Nothing in this condition shall be understood to authorize or require any recipient, any subrecipient at any tier, any State or local government, any "public" institution of higher education, or any other entity (or individual) to violate any federal law, including any applicable civil rights or nondiscrimination law.

OJP FORM 4000/2 (REV 4-88)

| | U.S. Department of Justice<br>Office of Justice Programs<br>**Bureau of Justice Assistance** | **AWARD CONTINUATION<br>SHEET**<br>**Grant** | PAGE 17 OF 20 |
|---|---|---|---|



| PROJECT NUMBER | 2017-DJ-BX-0002 | AWARD DATE | 08/23/2017 |
|---|---|---|---|

*SPECIAL CONDITIONS*

IMPORTANT NOTE: Any questions about the meaning or scope of this condition should be directed to OJP, before award acceptance.

54.  Authority to obligate award funds contingent on compliance with 8 U.S.C. 1373; unallowable costs; obligation to notify

1.  If the recipient is a State or local government--

A.  The recipient may not obligate award funds if, at the time of the obligation, the "program or activity" of the recipient (or of any subrecipient at any tier that is a either a State or unit of local government or a "public" institution of higher education) that is funded in whole or in part with award funds is subject to any "information-communication restriction."

B.  In addition, with respect to any project costs it incurs "at risk," the recipient may not obligate award funds to reimburse itself if -- at the time it incurs such costs -- the "program or activity" of the recipient (or of any subrecipient at any tier that is a either a State or unit of local government or a "public" institution of higher education) that would be reimbursed in whole or in part with award funds was subject to any "information-communication restriction."

C.  Any drawdown of award funds by the recipient shall be considered, for all purposes, to be a material representation by the recipient to OJP that, as of the date the recipient requests the drawdown, the recipient and all subrecipients (regardless of tier) are in compliance with 8 U.S.C. 1373.

D.  The recipient must promptly notify OJP (in writing) if the recipient, from its requisite monitoring of compliance with award conditions or otherwise, has credible evidence that indicates that the funded "program or activity" of the recipient, or of any subrecipient at any tier that is either a State or a local government or a "public" institution of higher education, may be subject to any "information-communication restriction." In addition, any subaward (at any tier) to a subrecipient that is either a State or a local government or a "public" institution of higher education must require prompt notification to the entity that made the subaward, should the subrecipient such credible evidence regarding an "information-communication restriction."

2.  Any subaward (at any tier) to a subrecipient that is either a State or a local government or a "public" institution of higher education must provide that the subrecipient may not obligate award funds if, at the time of the obligation, the "program or activity" of the subrecipient (or of any further such subrecipient at any tier) that is funded in whole or in part with award funds is subject to any "information-communication restriction."

3.  Absent an express written determination by DOJ to the contrary, based upon a finding by DOJ of compelling circumstances (e.g., a small amount of award funds obligated by the recipient at the time of a subrecipient's minor and transitory non-compliance, which was unknown to the recipient despite diligent monitoring), any obligations of award funds that, under this condition, may not be made shall be unallowable costs for purposes of this award.  In making any such determination, DOJ will give great weight to evidence submitted by the recipient that demonstrates diligent monitoring of subrecipient compliance with the requirements set out in the award condition entitled "Ongoing compliance with 8 U.S.C. 1373 is required."

4.  Rules of Construction

A.  For purposes of this condition "information-communication restriction" has the meaning set out in the award condition entitled "Ongoing compliance with 8 U.S.C. 1373 is required."

B.  Both the "Rules of Construction" and the "Important Note" set out in the award condition entitled "Ongoing compliance with 8 U.S.C. 1373 is required" are incorporated by reference as though set forth here in full.

OJP FORM 4000/2 (REV  4-88)

| | | | |
|---|---|---|---|
|  | U.S. Department of Justice<br>Office of Justice Programs<br>**Bureau of Justice Assistance** | **AWARD CONTINUATION SHEET**<br><br>**Grant** | PAGE 18 OF 20 |

| PROJECT NUMBER | 2017-DJ-BX-0002 | AWARD DATE | 08/23/2017 |
|---|---|---|---|

*SPECIAL CONDITIONS*

55. Required State-level rules or practices related to aliens; allowable costs

The following provisions apply to the recipient of this award, if the recipient is a State government, and also apply to any State-government subrecipient at any tier (whether or not the recipient is a State government).

1. Requirements

With respect to the "program or activity" that is funded (in whole or in part) by this award, as of the date the recipient accepts this award, and throughout the remainder of the period of performance for the award--

A. A State statute, or a State rule, -regulation, -policy, or -practice, must be in place that is designed to ensure that agents of the United States acting under color of federal law in fact are given to access any State (or State-contracted) correctional facility for the purpose of permitting such agents to meet with individuals who are (or are believed by such agents to be) aliens and to inquire as to such individuals' right to be or remain in the United States.

B. A State statute, or a State rule, -regulation, -policy, or -practice, must be in place that is designed to ensure that, when a State (or State-contracted) correctional facility receives from DHS a formal written request authorized by the Immigration and Nationality Act that seeks advance notice of the scheduled release date and time for a particular alien in such facility, then such facility will honor such request and -- as early as practicable (see para. 4.B. of this condition) -- provide the requested notice to DHS.

2. Monitoring

The recipient's monitoring responsibilities include monitoring of subrecipient compliance with the requirements of this condition.

3. Allowable costs

Compliance with these requirements is an authorized and priority purpose of this award. To the extent that such costs are not reimbursed under any other federal program, award funds may be obligated (including for authorized reimbursements) for the reasonable, necessary, and allocable costs (if any) of-- (1) developing and putting into place statutes, rules, regulations, policies, and practices to satisfy this condition, and (2) permitting access as described in para. 1.A. above, and (3) honoring any request from DHS that is encompassed by para. 1.B. above.

4. Rules of construction

A. For purposes of this condition--

(1) the term "alien" means what it means under section 101 of the Immigration and Nationality Act (see 8 U.S.C. 1101(a)(3)).

(2) the term "correctional facility" means what it means under the Title I of the Omnibus Crime Control and Safe Streets Act of 1968 (see 42 U.S.C. 3791(a)(7)).

B. Nothing in this condition shall be understood to authorize or require any recipient, any subrecipient at any tier, any State or local government, or any other entity or individual to maintain (or detain) any individual in custody beyond the date and time the individual would have been released in the absence of this condition.

Current DHS practice is ordinarily to request advance notice of scheduled release "as early as practicable (at least 48 hours, if possible)." (See DHS Form I-247A (3/17)). In the event that (e.g., in light of the date DHS made such request) the scheduled release date and time for an alien are such as not to permit the advance notice that DHS has requested, it shall not be a violation of this condition to provide only as much advance notice as practicable.

OJP FORM 4000/2 (REV 4-88)



| | U.S. Department of Justice<br>Office of Justice Programs<br>**Bureau of Justice Assistance** | **AWARD CONTINUATION<br>SHEET**<br>**Grant** | PAGE 19 OF 20 |
|---|---|---|---|

| PROJECT NUMBER | 2017-DJ-BX-0002 | AWARD DATE | 08/23/2017 |
|---|---|---|---|

*SPECIAL CONDITIONS*

NOTE: Current DHS practice is to use one form (DHS Form I-247A (3/17)) for two distinct purposes -- to request advance notice of scheduled release, and to request that an individual be detained for up to 48 hours AFTER the scheduled release. This condition imposes NO requirements as to such DHS requests for detention.

C. Both the "Rules of Construction" and the "Important Note" set out in the award condition entitled "Ongoing compliance with 8 U.S.C. 1373 is required" are incorporated by reference as though set forth here in full.

56. Required local-government-level rules or practices related to aliens; allowable costs

The following provisions apply to the recipient of this award, if the recipient is a unit of local government, and also apply to any local-government subrecipient of this award at any tier (whether or not the recipient itself is a unit of local government).

1. Requirements

With respect to the "program or activity" that is funded (in whole or in part) by this award, as of the date the recipient accepts this award, and throughout the remainder of the period of performance for the award--

A. A local ordinance, -rule, -regulation, -policy, or -practice (or an applicable State statute, -rule, -regulation, -policy, or -practice) must be in place that is designed to ensure that agents of the United States acting under color of federal law in fact are given access a local-government (or local-government-contracted) correctional facility for the purpose of permitting such agents to meet with individuals who are (or are believed by such agents to be) aliens and to inquire as to such individuals' right to be or remain in the United States.

B. A local ordinance, -rule, -regulation, -policy, or -practice (or an applicable State statute, -rule, -regulation, -policy, or -practice) must be in place that is designed to ensure that, when a local-government (or local-government-contracted) correctional facility receives from DHS a formal written request authorized by the Immigration and Nationality Act that seeks advance notice of the scheduled release date and time for a particular alien in such facility, then such facility will honor such request and -- as early as practicable (see "Rules of Construction" incorporated by para. 4.B. of this condition) -- provide the requested notice to DHS.

2. Monitoring

The recipient's monitoring responsibilities include monitoring of subrecipient compliance with the requirements of this condition.

3. Allowable costs

Compliance with these requirements is an authorized and priority purpose of this award. To the extent that such costs are not reimbursed under any other federal program, award funds may be obligated (including for authorized reimbursements) for the reasonable, necessary, and allocable costs (if any) of-- (1) developing and putting into place statutes, ordinances, rules, regulations, policies, and practices to satisfy this condition, (2) permitting access as described in para. 1.A. above, and (3) honoring any request from DHS that is encompassed by para. 1.B. above.

4. Rules of construction

A. The "Rules of Construction" and the "Important Note" set out in the award condition entitled "Ongoing compliance with 8 U.S.C. 1373 is required" are incorporated by reference as though set forth here in full.

B. The "Rules of Construction" set out in the award condition entitled "Required State-level rules or practices related to aliens; allowable costs" are incorporated by reference as though set forth here in full.

| | U.S. Department of Justice<br>Office of Justice Programs<br>**Bureau of Justice Assistance** | **AWARD CONTINUATION SHEET**<br>**Grant** | PAGE 20 OF 20 |
|---|---|---|---|



| PROJECT NUMBER | 2017-DJ-BX-0002 | AWARD DATE | 08/23/2017 |
|---|---|---|---|

*SPECIAL CONDITIONS*

57. Use of funds for DNA testing; upload of DNA profiles

If award funds are used for DNA testing of evidentiary materials, any resulting eligible DNA profiles must be uploaded to the Combined DNA Index System ("CODIS," the DNA database operated by the FBI) by a government DNA laboratory with access to CODIS.

No profiles generated under this award may be entered or uploaded into any non-governmental DNA database without prior express written approval from BJA.

Award funds may not be used for the purchase of DNA equipment and supplies unless the resulting DNA profiles may be accepted for entry into CODIS.

58. Encouragement of submission of "success stories"

BJA strongly encourages the recipient to submit annual (or more frequent) JAG success stories. To submit a success story, sign in to a My BJA account at https://www.bja.gov/Login.aspx to access the Success Story Submission form. If the recipient does not yet have a My BJA account, please register at https://www.bja.gov/profile.aspx. Once registered, one of the available areas on the My BJA page will be "My Success Stories." Within this box, there is an option to add a Success Story. Once reviewed and approved by BJA, all success stories will appear on the BJA Success Story web page at https://www.bja.gov/SuccessStoryList.aspx.

# Exhibit B[*]

[*] In the document that follows, on the page labeled "1 of 20," information in the original document has been redacted in fields 2a ("GRANTEE IRS/VENDOR NO") and 2b ("GRANTEE DUNS NO").

| | U.S. Department of Justice<br>Office of Justice Programs<br>**Bureau of Justice Assistance** | **Grant** | PAGE 1 OF 20 |
|---|---|---|---|

| | |
|---|---|
| 1 RECIPIENT NAME AND ADDRESS (Including Zip Code)<br><br>City of Binghamton<br>38 Hawley Street<br>Binghamton, NY 13901-3777 | 4 AWARD NUMBER: 2017-DJ-BX-0001 |

| | |
|---|---|
| | 5 PROJECT PERIOD: FROM 10/01/2016 TO 09/30/2018<br><br> BUDGET PERIOD: FROM 10/01/2016 TO 09/30/2018 |

| | | |
|---|---|---|
| 2a GRANTEE IRS/VENDOR NO<br>[REDACTED] | 6 AWARD DATE 08/23/2017 | 7 ACTION |
| | 8 SUPPLEMENT NUMBER<br>00 | Initial |
| 2b GRANTEE DUNS NO<br>[REDACTED] | 9 PREVIOUS AWARD AMOUNT | $ 0 |
| 3 PROJECT TITLE<br>BJA FY 2017 Edward Byrne Memorial Assistance Grant JAG (Parks) | 10 AMOUNT OF THIS AWARD | $ 24,259 |
| | 11 TOTAL AWARD | $ 24,259 |

12 SPECIAL CONDITIONS

THE ABOVE GRANT PROJECT IS APPROVED SUBJECT TO SUCH CONDITIONS OR LIMITATIONS AS ARE SET FORTH
ON THE ATTACHED PAGE(S)

13 STATUTORY AUTHORITY FOR GRANT

This project is supported under FY17(BJA - JAG State and JAG Local) Title I of Pub L No 90-351 (generally codified at 42 U S C 3711 - 3797ff-5),
including subpart 1 of part E (codified at 42 U S C 3750 - 3758); see also 28 U S C 530C(a)

14 CATALOG OF DOMESTIC FEDERAL ASSISTANCE (CFDA Number)

16 738 - Edward Byrne Memorial Justice Assistance Grant Program

15 METHOD OF PAYMENT

GPRS

| AGENCY APPROVAL | GRANTEE ACCEPTANCE |
|---|---|
| 16 TYPED NAME AND TITLE OF APPROVING OFFICIAL<br><br>Alan R Hanson<br><br>Acting Assistant Attorney General | 18 TYPED NAME AND TITLE OF AUTHORIZED GRANTEE OFFICIAL<br><br>Richard C David<br>Mayor |
| 17 SIGNATURE OF APPROVING OFFICIAL<br><br>*Alan R. Hanson* | 19 SIGNATURE OF AUTHORIZED RECIPIENT OFFICIAL | 19A DATE |

| AGENCY USE ONLY |
|---|

| 20 ACCOUNTING CLASSIFICATION CODES | 21 SDJUGT0338 |
|---|---|

| FISCAL<br>YEAR | FUND<br>CODE | BUD<br>ACT | OFC | DIV<br>REG | SUB | POMS | AMOUNT |
|---|---|---|---|---|---|---|---|
| X | B | DJ | 80 | 00 | 00 | | 24259 |

OJP FORM 4000/2 (REV 5-87) PREVIOUS EDITIONS ARE OBSOLETE

OJP FORM 4000/2 (REV 4-88)



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION SHEET**

**Grant**

PAGE 2 OF 20

| PROJECT NUMBER | 2017-DJ-BX-0001 | AWARD DATE | 08/23/2017 |

*SPECIAL CONDITIONS*

1. Requirements of the award; remedies for non-compliance or for materially false statements

   The conditions of this award are material requirements of the award. Compliance with any certifications or assurances submitted by or on behalf of the recipient that relate to conduct during the period of performance also is a material requirement of this award.

   Failure to comply with any one or more of these award requirements -- whether a condition set out in full below, a condition incorporated by reference below, or a certification or assurance related to conduct during the award period -- may result in the Office of Justice Programs ("OJP") taking appropriate action with respect to the recipient and the award. Among other things, the OJP may withhold award funds, disallow costs, or suspend or terminate the award. The Department of Justice ("DOJ"), including OJP, also may take other legal action as appropriate.

   Any materially false, fictitious, or fraudulent statement to the federal government related to this award (or concealment or omission of a material fact) may be the subject of criminal prosecution (including under 18 U.S.C. 1001 and/or 1621, and/or 42 U.S.C. 3795a), and also may lead to imposition of civil penalties and administrative remedies for false claims or otherwise (including under 31 U.S.C. 3729-3730 and 3801-3812).

   Should any provision of a requirement of this award be held to be invalid or unenforceable by its terms, that provision shall first be applied with a limited construction so as to give it the maximum effect permitted by law. Should it be held, instead, that the provision is utterly invalid or -unenforceable, such provision shall be deemed severable from this award.

2. Applicability of Part 200 Uniform Requirements

   The Uniform Administrative Requirements, Cost Principles, and Audit Requirements in 2 C.F.R. Part 200, as adopted and supplemented by DOJ in 2 C.F.R. Part 2800 (together, the "Part 200 Uniform Requirements") apply to this FY 2017 award from OJP.

   The Part 200 Uniform Requirements were first adopted by DOJ on December 26, 2014. If this FY 2017 award supplements funds previously awarded by OJP under the same award number (e.g., funds awarded during or before December 2014), the Part 200 Uniform Requirements apply with respect to all funds under that award number (regardless of the award date, and regardless of whether derived from the initial award or a supplemental award) that are obligated on or after the acceptance date of this FY 2017 award.

   For more information and resources on the Part 200 Uniform Requirements as they relate to OJP awards and subawards ("subgrants"), see the OJP website at https://ojp.gov/funding/Part200UniformRequirements htm.

   In the event that an award-related question arises from documents or other materials prepared or distributed by OJP that may appear to conflict with, or differ in some way from, the provisions of the Part 200 Uniform Requirements, the recipient is to contact OJP promptly for clarification.

3. Compliance with DOJ Grants Financial Guide

   The recipient agrees to comply with the DOJ Grants Financial Guide as posted on the OJP website (currently, the "2015 DOJ Grants Financial Guide" available at https://ojp.gov/financialguide/DOJ/index htm), including any updated version that may be posted during the period of performance.



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION
SHEET
Grant**

PAGE 3 OF 20

| PROJECT NUMBER | 2017-DJ-BX-0001 | AWARD DATE | 08/23/2017 |
|---|---|---|---|

*SPECIAL CONDITIONS*

4. Required training for Point of Contact and all Financial Points of Contact

Both the Point of Contact (POC) and all Financial Points of Contact (FPOCs) for this award must have successfully completed an "OJP financial management and grant administration training" by 120 days after the date of the recipient's acceptance of the award. Successful completion of such a training on or after January 1, 2015, will satisfy this condition.

In the event that either the POC or an FPOC for this award changes during the period of performance, the new POC or FPOC must have successfully completed an "OJP financial management and grant administration training" by 120 calendar days after-- (1) the date of OJP's approval of the "Change Grantee Contact" GAN (in the case of a new POC), or (2) the date the POC enters information on the new FPOC in GMS (in the case of a new FPOC). Successful completion of such a training on or after January 1, 2015, will satisfy this condition.

A list of OJP trainings that OJP will consider "OJP financial management and grant administration training" for purposes of this condition is available at https://www.ojp.gov/training/fmts htm. All trainings that satisfy this condition include a session on grant fraud prevention and detection.

The recipient should anticipate that OJP will immediately withhold ("freeze") award funds if the recipient fails to comply with this condition. The recipient's failure to comply also may lead OJP to impose additional appropriate conditions on this award.

5. Requirements related to "de minimis" indirect cost rate

A recipient that is eligible under the Part 200 Uniform Requirements and other applicable law to use the "de minimis" indirect cost rate described in 2 C.F.R. 200.414(f), and that elects to use the "de minimis" indirect cost rate, must advise OJP in writing of both its eligibility and its election, and must comply with all associated requirements in the Part 200 Uniform Requirements. The "de minimis" rate may be applied only to modified total direct costs (MTDC) as defined by the Part 200 Uniform Requirements.

6. Requirement to report potentially duplicative funding

If the recipient currently has other active awards of federal funds, or if the recipient receives any other award of federal funds during the period of performance for this award, the recipient promptly must determine whether funds from any of those other federal awards have been, are being, or are to be used (in whole or in part) for one or more of the identical cost items for which funds are provided under this award. If so, the recipient must promptly notify the DOJ awarding agency (OJP or OVW, as appropriate) in writing of the potential duplication, and, if so requested by the DOJ awarding agency, must seek a budget-modification or change-of-project-scope grant adjustment notice (GAN) to eliminate any inappropriate duplication of funding.

OJP FORM 4000/2 (REV 4-88)



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

### AWARD CONTINUATION SHEET
### Grant

PAGE 4 OF 20

| PROJECT NUMBER | 2017-DJ-BX-0001 | AWARD DATE | 08/23/2017 |
| --- | --- | --- | --- |

*SPECIAL CONDITIONS*

7. Requirements related to System for Award Management and Universal Identifier Requirements

The recipient must comply with applicable requirements regarding the System for Award Management (SAM), currently accessible at https://www.sam.gov/. This includes applicable requirements regarding registration with SAM, as well as maintaining the currency of information in SAM.

The recipient also must comply with applicable restrictions on subawards ("subgrants") to first-tier subrecipients (first-tier "subgrantees"), including restrictions on subawards to entities that do not acquire and provide (to the recipient) the unique entity identifier required for SAM registration.

The details of the recipient's obligations related to SAM and to unique entity identifiers are posted on the OJP web site at https://ojp.gov/funding/Explore/SAM htm (Award condition: System for Award Management (SAM) and Universal Identifier Requirements), and are incorporated by reference here.

This condition does not apply to an award to an individual who received the award as a natural person (i.e., unrelated to any business or non-profit organization that he or she may own or operate in his or her name).

8. All subawards ("subgrants") must have specific federal authorization

The recipient, and any subrecipient ("subgrantee") at any tier, must comply with all applicable requirements for authorization of any subaward. This condition applies to agreements that -- for purposes of federal grants administrative requirements -- OJP considers a "subaward" (and therefore does not consider a procurement "contract").

The details of the requirement for authorization of any subaward are posted on the OJP web site at https://ojp.gov/funding/Explore/SubawardAuthorization htm (Award condition: All subawards ("subgrants") must have specific federal authorization), and are incorporated by reference here.

9. Specific post-award approval required to use a noncompetitive approach in any procurement contract that would exceed $150,000

The recipient, and any subrecipient ("subgrantee") at any tier, must comply with all applicable requirements to obtain specific advance approval to use a noncompetitive approach in any procurement contract that would exceed the Simplified Acquisition Threshold (currently, $150,000). This condition applies to agreements that -- for purposes of federal grants administrative requirements -- OJP considers a procurement "contract" (and therefore does not consider a subaward).

The details of the requirement for advance approval to use a noncompetitive approach in a procurement contract under an OJP award are posted on the OJP web site at https://ojp.gov/funding/Explore/NoncompetitiveProcurement htm (Award condition: Specific post-award approval required to use a noncompetitive approach in a procurement contract (if contract would exceed $150,000)), and are incorporated by reference here.



| U.S. Department of Justice<br>Office of Justice Programs<br>**Bureau of Justice Assistance** | **AWARD CONTINUATION<br>SHEET**<br>**Grant** | PAGE 5 OF 20 |
|---|---|---|

| PROJECT NUMBER | 2017-DJ-BX-0001 | AWARD DATE | 08/23/2017 |
|---|---|---|---|

*SPECIAL CONDITIONS*

10. Requirements pertaining to prohibited conduct related to trafficking in persons (including reporting requirements and OJP authority to terminate award)

The recipient, and any subrecipient ("subgrantee") at any tier, must comply with all applicable requirements (including requirements to report allegations) pertaining to prohibited conduct related to the trafficking of persons, whether on the part of recipients, subrecipients ("subgrantees"), or individuals defined (for purposes of this condition) as "employees" of the recipient or of any subrecipient.

The details of the recipient's obligations related to prohibited conduct related to trafficking in persons are posted on the OJP web site at https://ojp.gov/funding/Explore/ProhibitedConduct-Trafficking htm (Award condition: Prohibited conduct by recipients and subrecipients related to trafficking in persons (including reporting requirements and OJP authority to terminate award)), and are incorporated by reference here.

11. Compliance with applicable rules regarding approval, planning, and reporting of conferences, meetings, trainings, and other events

The recipient, and any subrecipient ("subgrantee") at any tier, must comply with all applicable laws, regulations, policies, and official DOJ guidance (including specific cost limits, prior approval and reporting requirements, where applicable) governing the use of federal funds for expenses related to conferences (as that term is defined by DOJ), including the provision of food and/or beverages at such conferences, and costs of attendance at such conferences.

Information on the pertinent DOJ definition of conferences and the rules applicable to this award appears in the DOJ Grants Financial Guide (currently, as section 3.10 of "Postaward Requirements" in the "2015 DOJ Grants Financial Guide").

12. Requirement for data on performance and effectiveness under the award

The recipient must collect and maintain data that measure the performance and effectiveness of work under this award. The data must be provided to OJP in the manner (including within the timeframes) specified by OJP in the program solicitation or other applicable written guidance. Data collection supports compliance with the Government Performance and Results Act (GPRA) and the GPRA Modernization Act of 2010, and other applicable laws.

13. OJP Training Guiding Principles

Any training or training materials that the recipient -- or any subrecipient ("subgrantee") at any tier -- develops or delivers with OJP award funds must adhere to the OJP Training Guiding Principles for Grantees and Subgrantees, available at https://ojp.gov/funding/ojptrainingguidingprinciples htm.

14. Effect of failure to address audit issues

The recipient understands and agrees that the DOJ awarding agency (OJP or OVW, as appropriate) may withhold award funds, or may impose other related requirements, if (as determined by the DOJ awarding agency) the recipient does not satisfactorily and promptly address outstanding issues from audits required by the Part 200 Uniform Requirements (or by the terms of this award), or other outstanding issues that arise in connection with audits, investigations, or reviews of DOJ awards.

15. Potential imposition of additional requirements

The recipient agrees to comply with any additional requirements that may be imposed by the DOJ awarding agency (OJP or OVW, as appropriate) during the period of performance for this award, if the recipient is designated as "high-risk" for purposes of the DOJ high-risk grantee list.



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION
SHEET
Grant**

PAGE 6 OF 20

| PROJECT NUMBER | 2017-DJ-BX-0001 | AWARD DATE | 08/23/2017 |
|---|---|---|---|

*SPECIAL CONDITIONS*

16. Compliance with DOJ regulations pertaining to civil rights and nondiscrimination - 28 C.F.R. Part 42

   The recipient, and any subrecipient ("subgrantee") at any tier, must comply with all applicable requirements of 28 C.F.R. Part 42, specifically including any applicable requirements in Subpart E of 28 C.F.R. Part 42 that relate to an equal employment opportunity program.

17. Compliance with DOJ regulations pertaining to civil rights and nondiscrimination - 28 C.F.R. Part 54

   The recipient, and any subrecipient ("subgrantee") at any tier, must comply with all applicable requirements of 28 C.F.R. Part 54, which relates to nondiscrimination on the basis of sex in certain "education programs."

18. Compliance with DOJ regulations pertaining to civil rights and nondiscrimination - 28 C.F.R. Part 38

   The recipient, and any subrecipient ("subgrantee") at any tier, must comply with all applicable requirements of 28 C.F.R. Part 38, specifically including any applicable requirements regarding written notice to program beneficiaries and prospective program beneficiaries. Part 38 of 28 C.F.R., a DOJ regulation, was amended effective May 4, 2016.

   Among other things, 28 C.F.R. Part 38 includes rules that prohibit specific forms of discrimination on the basis of religion, a religious belief, a refusal to hold a religious belief, or refusal to attend or participate in a religious practice. Part 38 also sets out rules and requirements that pertain to recipient and subrecipient ("subgrantee") organizations that engage in or conduct explicitly religious activities, as well as rules and requirements that pertain to recipients and subrecipients that are faith-based or religious organizations.

   The text of the regulation, now entitled "Partnerships with Faith-Based and Other Neighborhood Organizations," is available via the Electronic Code of Federal Regulations (currently accessible at https://www.ecfr.gov/cgi-bin/ECFR?page=browse), by browsing to Title 28-Judicial Administration, Chapter 1, Part 38, under e-CFR "current" data.

19. Restrictions on "lobbying"

   In general, as a matter of federal law, federal funds awarded by OJP may not be used by the recipient, or any subrecipient ("subgrantee") at any tier, either directly or indirectly, to support or oppose the enactment, repeal, modification, or adoption of any law, regulation, or policy, at any level of government. See 18 U.S.C. 1913. (There may be exceptions if an applicable federal statute specifically authorizes certain activities that otherwise would be barred by law.)

   Another federal law generally prohibits federal funds awarded by OJP from being used by the recipient, or any subrecipient at any tier, to pay any person to influence (or attempt to influence) a federal agency, a Member of Congress, or Congress (or an official or employee of any of them) with respect to the awarding of a federal grant or cooperative agreement, subgrant, contract, subcontract, or loan, or with respect to actions such as renewing, extending, or modifying any such award. See 31 U.S.C. 1352. Certain exceptions to this law apply, including an exception that applies to Indian tribes and tribal organizations.

   Should any question arise as to whether a particular use of federal funds by a recipient (or subrecipient) would or might fall within the scope of these prohibitions, the recipient is to contact OJP for guidance, and may not proceed without the express prior written approval of OJP.



| | U.S. Department of Justice Office of Justice Programs **Bureau of Justice Assistance** | **AWARD CONTINUATION SHEET** **Grant** | PAGE 7 OF 20 |
|---|---|---|---|

| PROJECT NUMBER | 2017-DJ-BX-0001 | AWARD DATE | 08/23/2017 |
|---|---|---|---|

*SPECIAL CONDITIONS*

20. Compliance with general appropriations-law restrictions on the use of federal funds (FY 2017)

The recipient, and any subrecipient ("subgrantee") at any tier, must comply with all applicable restrictions on the use of federal funds set out in federal appropriations statutes. Pertinent restrictions, including from various "general provisions" in the Consolidated Appropriations Act, 2017, are set out at https://ojp.gov/funding/Explore/FY17AppropriationsRestrictions htm, and are incorporated by reference here.

Should a question arise as to whether a particular use of federal funds by a recipient (or a subrecipient) would or might fall within the scope of an appropriations-law restriction, the recipient is to contact OJP for guidance, and may not proceed without the express prior written approval of OJP.

21. Reporting potential fraud, waste, and abuse, and similar misconduct

The recipient, and any subrecipients ("subgrantees") at any tier, must promptly refer to the DOJ Office of the Inspector General (OIG) any credible evidence that a principal, employee, agent, subrecipient, contractor, subcontractor, or other person has, in connection with funds under this award-- (1) submitted a claim that violates the False Claims Act; or (2) committed a criminal or civil violation of laws pertaining to fraud, conflict of interest, bribery, gratuity, or similar misconduct.

Potential fraud, waste, abuse, or misconduct involving or relating to funds under this award should be reported to the OIG by-- (1) mail directed to: Office of the Inspector General, U.S. Department of Justice, Investigations Division, 950 Pennsylvania Avenue, N.W. Room 4706, Washington, DC 20530; (2) e-mail to: oig hotline@usdoj.gov; and/or (3) the DOJ OIG hotline: (contact information in English and Spanish) at (800) 869-4499 (phone) or (202) 616-9881 (fax).

Additional information is available from the DOJ OIG website at https://www.usdoj.gov/oig.



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION SHEET**

**Grant**

PAGE  8  OF  20

| PROJECT NUMBER | 2017-DJ-BX-0001 | AWARD DATE | 08/23/2017 |
|---|---|---|---|

*SPECIAL CONDITIONS*

22.  Restrictions and certifications regarding non-disclosure agreements and related matters

No recipient or subrecipient ("subgrantee") under this award, or entity that receives a procurement contract or subcontract with any funds under this award, may require any employee or contractor to sign an internal confidentiality agreement or statement that prohibits or otherwise restricts, or purports to prohibit or restrict, the reporting (in accordance with law) of waste, fraud, or abuse to an investigative or law enforcement representative of a federal department or agency authorized to receive such information.

The foregoing is not intended, and shall not be understood by the agency making this award, to contravene requirements applicable to Standard Form 312 (which relates to classified information), Form 4414 (which relates to sensitive compartmented information), or any other form issued by a federal department or agency governing the nondisclosure of classified information.

1.  In accepting this award, the recipient--

a.  represents that it neither requires nor has required internal confidentiality agreements or statements from employees or contractors that currently prohibit or otherwise currently restrict (or purport to prohibit or restrict) employees or contractors from reporting waste, fraud, or abuse as described above; and

b.  certifies that, if it learns or is notified that it is or has been requiring its employees or contractors to execute agreements or statements that prohibit or otherwise restrict (or purport to prohibit or restrict), reporting of waste, fraud, or abuse as described above, it will immediately stop any further obligations of award funds, will provide prompt written notification to the federal agency making this award, and will resume (or permit resumption of) such obligations only if expressly authorized to do so by that agency.

2.  If the recipient does or is authorized under this award to make subawards ("subgrants"), procurement contracts, or both--

a.  it represents that--

(1)  it has determined that no other entity that the recipient's application proposes may or will receive award funds (whether through a subaward ("subgrant"), procurement contract, or subcontract under a procurement contract) either requires or has required internal confidentiality agreements or statements from employees or contractors that currently prohibit or otherwise currently restrict (or purport to prohibit or restrict) employees or contractors from reporting waste, fraud, or abuse as described above; and

(2)  it has made appropriate inquiry, or otherwise has an adequate factual basis, to support this representation; and

b.  it certifies that, if it learns or is notified that any subrecipient, contractor, or subcontractor entity that receives funds under this award is or has been requiring its employees or contractors to execute agreements or statements that prohibit or otherwise restrict (or purport to prohibit or restrict), reporting of waste, fraud, or abuse as described above, it will immediately stop any further obligations of award funds to or by that entity, will provide prompt written notification to the federal agency making this award, and will resume (or permit resumption of) such obligations only if expressly authorized to do so by that agency.

OJP FORM 4000/2 (REV  4-88)



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

### AWARD CONTINUATION SHEET
### Grant

PAGE 9 OF 20

| PROJECT NUMBER | 2017-DJ-BX-0001 | AWARD DATE | 08/23/2017 |
|---|---|---|---|

*SPECIAL CONDITIONS*

23. Compliance with 41 U.S.C. 4712 (including prohibitions on reprisal; notice to employees)

The recipient (and any subrecipient at any tier) must comply with, and is subject to, all applicable provisions of 41 U.S.C. 4712, including all applicable provisions that prohibit, under specified circumstances, discrimination against an employee as reprisal for the employee's disclosure of information related to gross mismanagement of a federal grant, a gross waste of federal funds, an abuse of authority relating to a federal grant, a substantial and specific danger to public health or safety, or a violation of law, rule, or regulation related to a federal grant.

The recipient also must inform its employees, in writing (and in the predominant native language of the workforce), of employee rights and remedies under 41 U.S.C. 4712.

Should a question arise as to the applicability of the provisions of 41 U.S.C. 4712 to this award, the recipient is to contact the DOJ awarding agency (OJP or OVW, as appropriate) for guidance.

24. Encouragement of policies to ban text messaging while driving

Pursuant to Executive Order 13513, "Federal Leadership on Reducing Text Messaging While Driving," 74 Fed. Reg. 51225 (October 1, 2009), DOJ encourages recipients and subrecipients ("subgrantees") to adopt and enforce policies banning employees from text messaging while driving any vehicle during the course of performing work funded by this award, and to establish workplace safety policies and conduct education, awareness, and other outreach to decrease crashes caused by distracted drivers.

25. Cooperating with OJP Monitoring

The recipient agrees to cooperate with OJP monitoring of this award pursuant to OJP's guidelines, protocols, and procedures, and to cooperate with OJP (including the grant manager for this award and the Office of Chief Financial Officer (OCFO)) requests related to such monitoring, including requests related to desk reviews and/or site visits. The recipient agrees to provide to OJP all documentation necessary for OJP to complete its monitoring tasks, including documentation related to any subawards made under this award. Further, the recipient agrees to abide by reasonable deadlines set by OJP for providing the requested documents. Failure to cooperate with OJP's monitoring activities may result in actions that affect the recipient's DOJ awards, including, but not limited to: withholdings and/or other restrictions on the recipient's access to award funds; referral to the DOJ OIG for audit review; designation of the recipient as a DOJ High Risk grantee; or termination of an award(s).

26. FFATA reporting: Subawards and executive compensation

The recipient must comply with applicable requirements to report first-tier subawards ("subgrants") of $25,000 or more and, in certain circumstances, to report the names and total compensation of the five most highly compensated executives of the recipient and first-tier subrecipients (first-tier "subgrantees") of award funds. The details of recipient obligations, which derive from the Federal Funding Accountability and Transparency Act of 2006 (FFATA), are posted on the OJP web site at https://ojp.gov/funding/Explore/FFATA htm (Award condition: Reporting Subawards and Executive Compensation), and are incorporated by reference here.

This condition, including its reporting requirement, does not apply to-- (1) an award of less than $25,000, or (2) an award made to an individual who received the award as a natural person (i.e., unrelated to any business or non-profit organization that he or she may own or operate in his or her name).



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION SHEET**

**Grant**

PAGE  10  OF  20

| PROJECT NUMBER | 2017-DJ-BX-0001 | AWARD DATE | 08/23/2017 |
|---|---|---|---|

*SPECIAL CONDITIONS*

27. Use of program income

Program income (as defined in the Part 200 Uniform Requirements) must be used in accordance with the provisions of the Part 200 Uniform Requirements.  Program income earnings and expenditures both must be reported on the quarterly Federal Financial Report, SF 425.

28. Justice Information Sharing

In order to promote information sharing and enable interoperability among disparate systems across the justice and public safety community, the recipient (and any subrecipient at any tier)  must comply with DOJ's Global Justice Information Sharing Initiative (DOJ's Global) guidelines and recommendations for this particular award. The recipient shall conform to the Global Standards Package (GSP) and all constituent elements, where applicable, as described at: https://it.ojp.gov/gsp_grantcondition. The recipient shall document planned approaches to information sharing and describe compliance to the GSP and appropriate privacy policy that protects shared information, or provide detailed justification for why an alternative approach is recommended.

29. Avoidance of duplication of networks

To avoid duplicating existing networks or IT systems in any initiatives funded by BJA for law enforcement information sharing systems which involve interstate connectivity between jurisdictions, such systems shall employ, to the extent possible, existing networks as the communication backbone to achieve interstate connectivity, unless the recipient can demonstrate to the satisfaction of BJA that this requirement would not be cost effective or would impair the functionality of an existing or proposed IT system.

30. Compliance with 28 C.F.R. Part 23

With respect to any information technology system funded or supported by funds under this award, the recipient (and any subrecipient at any tier) must comply with 28 C.F.R. Part 23, Criminal Intelligence Systems Operating Policies, if OJP determines this regulation to be applicable. Should OJP determine 28 C.F.R. Part 23 to be applicable, OJP may, at its discretion, perform audits of the system, as per the regulation. Should any violation of 28 C.F.R. Part 23 occur, the recipient may be fined as per 42 U.S.C. 3789g(c)-(d).  The recipient may not satisfy such a fine with federal funds.

31. Protection of human research subjects

The recipient (and any subrecipient at any tier) must comply with the requirements of 28 C.F.R. Part 46 and all OJP policies and procedures regarding the protection of human research subjects, including obtainment of Institutional Review Board approval, if appropriate, and subject informed consent.

32. Confidentiality of data

The recipient (and any subrecipient at any tier) must comply with all confidentiality requirements of 42 U.S.C. 3789g and 28 C.F.R. Part 22 that are applicable to collection, use, and revelation of data or information. The recipient further agrees, as a condition of award approval, to submit a Privacy Certificate that is in accord with requirements of 28 C.F.R. Part 22 and, in particular, 28 C.F.R. 22.23.

OJP FORM 4000/2 (REV  4-88)



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION
SHEET**

**Grant**

PAGE 11 OF 20

| PROJECT NUMBER | 2017-DJ-BX-0001 | AWARD DATE | 08/23/2017 |
|---|---|---|---|

*SPECIAL CONDITIONS*

33. Verification and updating of recipient contact information

The recipient must verify its Point of Contact(POC), Financial Point of Contact (FPOC), and Authorized Representative contact information in GMS, including telephone number and e-mail address. If any information is incorrect or has changed, a Grant Adjustment Notice (GAN) must be submitted via the Grants Management System (GMS) to document changes.

34. Law enforcement task forces - required training

Within 120 days of award acceptance, each current member of a law enforcement task force funded with award funds who is a task force commander, agency executive, task force officer, or other task force member of equivalent rank, must complete required online (internet-based) task force training. Additionally, all future task force members must complete this training once during the period of performance for this award, or once every four years if multiple OJP awards include this requirement.

The required training is available free of charge online through the BJA-funded Center for Task Force Integrity and Leadership (www.ctfli.org). The training addresses task force effectiveness, as well as other key issues including privacy and civil liberties/rights, task force performance measurement, personnel selection, and task force oversight and accountability. If award funds are used to support a task force, the recipient must compile and maintain a task force personnel roster, along with course completion certificates.

Additional information regarding the training is available through BJA's web site and the Center for Task Force Integrity and Leadership (www.ctfli.org).

35. Required attendance at BJA-sponsored events

The recipient (and its subrecipients at any tier) must participate in BJA-sponsored training events, technical assistance events, or conferences held by BJA or its designees, upon BJA's request.

36. Justification of consultant rate

Approval of this award does not indicate approval of any consultant rate in excess of $650 per day. A detailed justification must be submitted to and approved by the OJP program office prior to obligation or expenditure of such funds.

OJP FORM 4000/2 (REV 4-88)



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION SHEET**

**Grant**

PAGE 12 OF 20

| PROJECT NUMBER | 2017-DJ-BX-0001 | AWARD DATE | 08/23/2017 |
|---|---|---|---|

*SPECIAL CONDITIONS*

37. Compliance with National Environmental Policy Act and related statutes

Upon request, the recipient (and any subrecipient at any tier) must assist BJA in complying with the National Environmental Policy Act (NEPA), the National Historic Preservation Act, and other related federal environmental impact analyses requirements in the use of these award funds, either directly by the recipient or by a subrecipient. Accordingly, the recipient agrees to first determine if any of the following activities will be funded by the grant, prior to obligating funds for any of these purposes. If it is determined that any of the following activities will be funded by the award, the recipient agrees to contact BJA.

The recipient understands that this condition applies to new activities as set out below, whether or not they are being specifically funded with these award funds. That is, as long as the activity is being conducted by the recipient, a subrecipient, or any third party, and the activity needs to be undertaken in order to use these award funds, this condition must first be met. The activities covered by this condition are:

a. New construction;

b. Minor renovation or remodeling of a property located in an environmentally or historically sensitive area, including properties located within a 100-year flood plain, a wetland, or habitat for endangered species, or a property listed on or eligible for listing on the National Register of Historic Places;

c. A renovation, lease, or any proposed use of a building or facility that will either (a) result in a change in its basic prior use or (b) significantly change its size;

d. Implementation of a new program involving the use of chemicals other than chemicals that are (a) purchased as an incidental component of a funded activity and (b) traditionally used, for example, in office, household, recreational, or education environments; and

e. Implementation of a program relating to clandestine methamphetamine laboratory operations, including the identification, seizure, or closure of clandestine methamphetamine laboratories.

The recipient understands and agrees that complying with NEPA may require the preparation of an Environmental Assessment and/or an Environmental Impact Statement, as directed by BJA. The recipient further understands and agrees to the requirements for implementation of a Mitigation Plan, as detailed at https://bja.gov/Funding/nepa html, for programs relating to methamphetamine laboratory operations.

Application of This Condition to Recipient's Existing Programs or Activities: For any of the recipient's or its subrecipients' existing programs or activities that will be funded by these award funds, the recipient, upon specific request from BJA, agrees to cooperate with BJA in any preparation by BJA of a national or program environmental assessment of that funded program or activity.

38. Establishment of trust fund

If award funds are being drawn down in advance, the recipient (or a subrecipient, with respect to a subaward) is required to establish a trust fund account. (The trust fund may or may not be an interest-bearing account.) The fund, including any interest, may not be used to pay debts or expenses incurred by other activities beyond the scope of the Edward Byrne Memorial Justice Assistance Grant Program (JAG). The recipient also agrees to obligate the award funds in the trust fund (including any interest earned) during the period of performance for the award and expend within 90 days thereafter. Any unobligated or unexpended funds, including interest earned, must be returned to OJP at the time of closeout.



| U.S. Department of Justice<br>Office of Justice Programs<br>**Bureau of Justice Assistance** | **AWARD CONTINUATION SHEET**<br>**Grant** | PAGE 13 OF 20 |
|---|---|---|

| PROJECT NUMBER | 2017-DJ-BX-0001 | AWARD DATE | 08/23/2017 |
|---|---|---|---|

*SPECIAL CONDITIONS*

39. Prohibition on use of award funds for match under BVP program

JAG funds may be used to purchase vests for an agency, but they may not be used as the 50% match for purposes of the DOJ Bulletproof Vest Partnership (BVP) program.

40. Certification of body armor "mandatory wear" policies

The recipient agrees to submit a signed certification that all law enforcement agencies receiving body armor purchased with funds from this award have a written "mandatory wear" policy in effect. The recipient must keep signed certifications on file for any subrecipients planning to utilize funds from this award for ballistic-resistant and stab-resistant body armor purchases. This policy must be in place for at least all uniformed officers before any funds from this award may be used by an agency for body armor. There are no requirements regarding the nature of the policy other than it be a mandatory wear policy for all uniformed officers while on duty.

41. Body armor - compliance with NIJ standards

Ballistic-resistant and stab-resistant body armor purchased with JAG award funds may be purchased at any threat level, make or model, from any distributor or manufacturer, as long as the body armor has been tested and found to comply with applicable National Institute of Justice ballistic or stab standards and is listed on the NIJ Compliant Body Armor Model List (https://nij.gov/). In addition, ballistic-resistant and stab-resistant body armor purchased must be American-made. The latest NIJ standard information can be found here: https://nij.gov/topics/technology/body-armor/pages/safety-initiative.aspx.

42. Required monitoring of subawards

The recipient must monitor subawards under this JAG award in accordance with all applicable statutes, regulations, award conditions, and the DOJ Grants Financial Guide, and must include the applicable conditions of this award in any subaward. Among other things, the recipient is responsible for oversight of subrecipient spending and monitoring of specific outcomes and benefits attributable to use of award funds by subrecipients. The recipient agrees to submit, upon request, documentation of its policies and procedures for monitoring of subawards under this award.

43. Reporting requirements

The recipient must submit quarterly Federal Financial Reports (SF-425) and semi-annual performance reports through OJP's GMS (https://grants.ojp.usdoj.gov). Consistent with the Department's responsibilities under the Government Performance and Results Act (GPRA) and the GPRA Modernization Act of 2010, the recipient must provide data that measure the results of its work. The recipient must submit quarterly performance metrics reports through BJA's Performance Measurement Tool (PMT) website (www.bjaperformancetools.org). For more detailed information on reporting and other JAG requirements, refer to the JAG reporting requirements webpage. Failure to submit required JAG reports by established deadlines may result in the freezing of grant funds and future High Risk designation.

44. Required data on law enforcement agency training

Any law enforcement agency receiving direct or sub-awarded funding from this JAG award must submit quarterly accountability metrics data related to training that officers have received on the use of force, racial and ethnic bias, de-escalation of conflict, and constructive engagement with the public.

OJP FORM 4000/2 (REV 4-88)



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION
SHEET
Grant**

PAGE 14 OF 20

| PROJECT NUMBER | 2017-DJ-BX-0001 | AWARD DATE | 08/23/2017 |
|---|---|---|---|

*SPECIAL CONDITIONS*

45. Prohibited Expenditures List

Award funds may not be used for items that are listed on the Prohibited Expenditure List at the time of purchase or acquisition, including as the list may be amended from time to time. The Prohibited Expenditure List may be accessed here: https://www.bja.gov/funding/JAGControlledPurchaseList.pdf

46. Controlled expenditures - prior written approval required

Award funds may not be used for items that are listed on the Controlled Expenditure List at the time of purchase or acquisition, including as the list may be amended from time to time, without explicit written prior approval from BJA. The Controlled Expenditure List, and instructions on how to request approval for purchase or acquisitions are set out at https://www.bja.gov/funding/JAGControlledPurchaseList.pdf

47. Controlled expenditures - incident reporting

If an agency uses award funds to purchase or acquire any item on the Controlled Expenditure List at the time of purchase or acquisition, including as the list may be amended from time to time, the agency must collect and retain (for at least 3 years) certain information about the use of-- (1) any federally-acquired Controlled Equipment in the agency's inventory, and (2) any other controlled equipment in the same category as the federally-acquired controlled equipment in the agency's inventory, regardless of source; and the agency must make that information available to BJA upon request. Details about what information must be collected and retained are set out at https://ojp.gov/docs/LE-Equipment-WG-Final-Report.pdf.

48. Sale of items on Controlled Expenditure List

Notwithstanding the provision of the Part 200 Uniform Requirements set out at 2 C.F.R. 200.313, no equipment listed on the Controlled Expenditure List that is purchased with award funds may be transferred or sold to a third party, except as described below:

a. Agencies may transfer or sell any controlled equipment, except riot helmets and riot shields, to a Law Enforcement Agency (LEA) after obtaining prior written approval from BJA. As a condition of that approval, the acquiring LEA will be required to submit information and certifications to BJA as if it were requesting approval to use award funds for the initial purchase of items on the Controlled Expenditure List.

b. Agencies may not transfer or sell any riot helmets or riot shields purchased under this award.

c. Agencies may not transfer or sell any Controlled Equipment purchased under this award to non-LEAs, with the exception of fixed wing aircraft, rotary wing aircraft, and command and control vehicles. Before any such transfer or sale is finalized, the agency must obtain prior written approval from BJA. All law enforcement-related and other sensitive or potentially dangerous components, and all law enforcement insignias and identifying markings must be removed prior to transfer or sale.

The recipient must notify BJA prior to the disposal of any items on the Controlled Expenditure List purchased with award funds, and must abide by any applicable laws (including regulations) in such disposal.

49. Prohibited or controlled expenditures - Effect of failure to comply

Failure to comply with an award condition related to prohibited or controlled expenditures may result in denial of any further approvals of controlled expenditures under this or other federal awards.

OJP FORM 4000/2 (REV 4-88)



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION
SHEET
Grant**

PAGE 15 OF 20

| PROJECT NUMBER | 2017-DJ-BX-0001 | AWARD DATE | 08/23/2017 |
|---|---|---|---|

*SPECIAL CONDITIONS*

50. Controlled expenditures - Standards

Consistent with recommendation 2.1 of Executive Order 13688, a law enforcement agency that acquires controlled equipment with award funds must adopt robust and specific written policies and protocols governing General Policing Standards and Specific Controlled Equipment Standards. General Policing Standards includes policies on (a) Community Policing; (b) Constitutional Policing; and (c) Community Input and Impact Considerations. Specific Controlled Equipment Standards includes policies specifically related to (a) Appropriate Use of Controlled Equipment; (b) Supervision of Use; (c) Effectiveness Evaluation; (d) Auditing and Accountability; and (e) Transparency and Notice Considerations. Upon OJP's request, the recipient must provide a copy of the General Policing Standards and Specific Controlled Equipment Standards, and any related policies and protocols.

51. Authorization to obligate (federal) award funds to reimburse certain project costs incurred on or after October 1, 2016

The recipient may obligate (federal) award funds only after the recipient makes a valid acceptance of the award. As of the first day of the period of performance for the award (October 1, 2016), however, the recipient may choose to incur project costs using non-federal funds, but any such project costs are incurred at the recipient's risk until, at a minimum-- (1) the recipient makes a valid acceptance of the award, and (2) all applicable withholding conditions are removed by OJP (via a Grant Adjustment Notice). (A withholding condition is a condition in the award document that precludes the recipient from obligating, expending, or drawing down all or a portion of the award funds until the condition is removed.)

Except to the extent (if any) that an award condition expressly precludes reimbursement of project costs incurred "at-risk," if and when the recipient makes a valid acceptance of this award and OJP removes each applicable withholding condition through a Grant Adjustment Notice, the recipient is authorized to obligate (federal) award funds to reimburse itself for project costs incurred "at-risk" earlier during the period of performance (such as project costs incurred prior to award acceptance or prior to removal of an applicable withholding condition), provided that those project costs otherwise are allowable costs under the award.

Nothing in this condition shall be understood to authorize the recipient (or any subrecipient at any tier) to use award funds to "supplant" State or local funds in violation of the recipient's certification (executed by the chief executive of the State or local government) that federal funds will be used to increase the amounts of such funds that would, in the absence of federal funds, be made available for law enforcement activities.

52. "Certification of Compliance with 8 U.S.C. 1373" required for valid award acceptance by a unit of local government

In order validly to accept this award, the applicant local government must submit the required "Certification of Compliance with 8 U.S.C. 1373" (executed by the chief legal officer of the local government). Unless that executed certification either-- (1) is submitted to OJP together with the fully-executed award document, or (2) is uploaded in OJP's GMS no later than the day the signed award document is submitted to OJP, any submission by a unit of local government that purports to accept the award is invalid.

If an initial award-acceptance submission by the recipient is invalid, once the unit of local government does submit the necessary certification regarding 8 U.S.C. 1373, it may submit a fully-executed award document executed by the unit of local government on or after the date of that certification.

For purposes of this condition, "local government" does not include any Indian tribes.

OJP FORM 4000/2 (REV 4-88)



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION SHEET**

**Grant**

PAGE  16  OF  20

| PROJECT NUMBER | 2017-DJ-BX-0001 | AWARD DATE | 08/23/2017 |
|---|---|---|---|

*SPECIAL CONDITIONS*

53. Ongoing compliance with 8 U.S.C. 1373 is required

1. With respect to the "program or activity" funded in whole or part under this award (including any such "program or activity" of any subrecipient at any tier), throughout the period of performance for the award, no State or local government entity, -agency, or -official may prohibit or in any way restrict-- (1) any government entity or -official from sending or receiving information regarding citizenship or immigration status as described in 8 U.S.C. 1373(a); or (2) a government entity or -agency from sending, requesting or receiving, maintaining, or exchanging information regarding immigration status as described in 8 U.S.C. 1373(b).  For purposes of this award, any prohibition (or restriction) that violates this condition is an "information-communication restriction."

2. Certifications from subrecipients.  The recipient may not make a subaward to a State or local government or a "public" institution of higher education, unless it first obtains a certification of compliance with 8 U.S.C. 1373, properly executed by the chief legal officer of the jurisdiction or institution that would receive the subaward, using the appropriate form available at https://ojp.gov/funding/Explore/SampleCertifications-8USC1373.htm.  Similarly, the recipient must require that no subrecipient (at any tier) may make a further subaward to a State or local government or a "public" institution of higher education, unless it first obtains a certification of compliance with 8 U.S.C. 1373, properly executed by the chief legal officer of the jurisdiction or institution that would receive the further subaward, using the appropriate OJP form.

3. The recipient's monitoring responsibilities include monitoring of subrecipient compliance with the requirements of this condition.

4. Allowable costs.  Compliance with these requirements is an authorized and priority purpose of this award.  To the extent that such costs are not reimbursed under any other federal program, award funds may be obligated (including for authorized reimbursements) for the reasonable, necessary, and allocable costs (if any) that the recipient, or any subrecipient at any tier that is a State or local government or a "public" institution of higher education, incurs to implement this condition.

5. Rules of Construction

A. For purposes of this condition:

(1) "State" and "local government" include any agency or other entity thereof, but not any institution of higher education or any Indian tribe.

(2) A "public" institution of higher education is one that is owned, controlled, or directly funded by a State or local government.

(3) "Program or activity" means what it means under title VI of the Civil Rights Act of 1964 (see 42 U.S.C. 2000d-4a).

(4) "Immigration status" means what it means for purposes of 8 U.S.C. 1373 (Illegal Immigration Reform and Immigrant Responsibility Act of 1996); and terms that are defined in 8 U.S.C. 1101 (Immigration and Nationality Act) mean what they mean under that section 1101, except that the term "State" also shall include American Samoa (cf. 42 U.S.C. 901(a)(2)).

(5) Pursuant to the provisions set out at (or referenced in) 8 U.S.C. 1551 note ("Abolition … and Transfer of Functions"), references to the "Immigration and Naturalization Service" in 8 U.S.C. 1373 are to be read as references to particular components of the Department of Homeland Security (DHS).

B. Nothing in this condition shall be understood to authorize or require any recipient, any subrecipient at any tier, any State or local government, any "public" institution of higher education, or any other entity (or individual) to violate any federal law, including any applicable civil rights or nondiscrimination law.

| | U.S. Department of Justice<br>Office of Justice Programs<br>**Bureau of Justice Assistance** | **AWARD CONTINUATION<br>SHEET**<br>**Grant** | PAGE 17 OF 20 |
|---|---|---|---|



| PROJECT NUMBER | 2017-DJ-BX-0001 | AWARD DATE | 08/23/2017 |
|---|---|---|---|

*SPECIAL CONDITIONS*

IMPORTANT NOTE: Any questions about the meaning or scope of this condition should be directed to OJP, before award acceptance.

54. Authority to obligate award funds contingent on compliance with 8 U.S.C. 1373; unallowable costs; obligation to notify

1. If the recipient is a State or local government--

A. The recipient may not obligate award funds if, at the time of the obligation, the "program or activity" of the recipient (or of any subrecipient at any tier that is a either a State or unit of local government or a "public" institution of higher education) that is funded in whole or in part with award funds is subject to any "information-communication restriction."

B. In addition, with respect to any project costs it incurs "at risk," the recipient may not obligate award funds to reimburse itself if -- at the time it incurs such costs -- the "program or activity" of the recipient (or of any subrecipient at any tier that is a either a State or unit of local government or a "public" institution of higher education) that would be reimbursed in whole or in part with award funds was subject to any "information-communication restriction."

C. Any drawdown of award funds by the recipient shall be considered, for all purposes, to be a material representation by the recipient to OJP that, as of the date the recipient requests the drawdown, the recipient and all subrecipients (regardless of tier) are in compliance with 8 U.S.C. 1373.

D. The recipient must promptly notify OJP (in writing) if the recipient, from its requisite monitoring of compliance with award conditions or otherwise, has credible evidence that indicates that the funded "program or activity" of the recipient, or of any subrecipient at any tier that is either a State or a local government or a "public" institution of higher education, may be subject to any "information-communication restriction." In addition, any subaward (at any tier) to a subrecipient that is either a State or a local government or a "public" institution of higher education must require prompt notification to the entity that made the subaward, should the subrecipient such credible evidence regarding an "information-communication restriction."

2. Any subaward (at any tier) to a subrecipient that is either a State or a local government or a "public" institution of higher education must provide that the subrecipient may not obligate award funds if, at the time of the obligation, the "program or activity" of the subrecipient (or of any further such subrecipient at any tier) that is funded in whole or in part with award funds is subject to any "information-communication restriction."

3. Absent an express written determination by DOJ to the contrary, based upon a finding by DOJ of compelling circumstances (e.g., a small amount of award funds obligated by the recipient at the time of a subrecipient's minor and transitory non-compliance, which was unknown to the recipient despite diligent monitoring), any obligations of award funds that, under this condition, may not be made shall be unallowable costs for purposes of this award. In making any such determination, DOJ will give great weight to evidence submitted by the recipient that demonstrates diligent monitoring of subrecipient compliance with the requirements set out in the award condition entitled "Ongoing compliance with 8 U.S.C. 1373 is required."

4. Rules of Construction

A. For purposes of this condition "information-communication restriction" has the meaning set out in the award condition entitled "Ongoing compliance with 8 U.S.C. 1373 is required."

B. Both the "Rules of Construction" and the "Important Note" set out in the award condition entitled "Ongoing compliance with 8 U.S.C. 1373 is required" are incorporated by reference as though set forth here in full.

OJP FORM 4000/2 (REV 4-88)



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION SHEET**

**Grant**

PAGE 18 OF 20

| PROJECT NUMBER | 2017-DJ-BX-0001 | AWARD DATE | 08/23/2017 |
|---|---|---|---|

*SPECIAL CONDITIONS*

55.  Required State-level rules or practices related to aliens; allowable costs

The following provisions apply to the recipient of this award, if the recipient is a State government, and also apply to any State-government subrecipient at any tier (whether or not the recipient is a State government).

1. Requirements

With respect to the "program or activity" that is funded (in whole or in part) by this award, as of the date the recipient accepts this award, and throughout the remainder of the period of performance for the award--

A. A State statute, or a State rule, -regulation, -policy, or -practice, must be in place that is designed to ensure that agents of the United States acting under color of federal law in fact are given to access any State (or State-contracted) correctional facility for the purpose of permitting such agents to meet with individuals who are (or are believed by such agents to be) aliens and to inquire as to such individuals' right to be or remain in the United States.

B. A State statute, or a State rule, -regulation, -policy, or -practice, must be in place that is designed to ensure that, when a State (or State-contracted) correctional facility receives from DHS a formal written request authorized by the Immigration and Nationality Act that seeks advance notice of the scheduled release date and time for a particular alien in such facility, then such facility will honor such request and -- as early as practicable (see para. 4.B. of this condition) -- provide the requested notice to DHS.

2. Monitoring

The recipient's monitoring responsibilities include monitoring of subrecipient compliance with the requirements of this condition.

3. Allowable costs

Compliance with these requirements is an authorized and priority purpose of this award. To the extent that such costs are not reimbursed under any other federal program, award funds may be obligated (including for authorized reimbursements) for the reasonable, necessary, and allocable costs (if any) of-- (1) developing and putting into place statutes, rules, regulations, policies, and practices to satisfy this condition, and (2) permitting access as described in para. 1.A. above, and (3) honoring any request from DHS that is encompassed by para. 1.B. above.

4. Rules of construction

A. For purposes of this condition--

(1) the term "alien" means what it means under section 101 of the Immigration and Nationality Act (see 8 U.S.C. 1101(a)(3)).

(2) the term "correctional facility" means what it means under the Title I of the Omnibus Crime Control and Safe Streets Act of 1968 (see 42 U.S.C. 3791(a)(7)).

B. Nothing in this condition shall be understood to authorize or require any recipient, any subrecipient at any tier, any State or local government, or any other entity or individual to maintain (or detain) any individual in custody beyond the date and time the individual would have been released in the absence of this condition.

Current DHS practice is ordinarily to request advance notice of scheduled release "as early as practicable (at least 48 hours, if possible)." (See DHS Form I-247A (3/17)). In the event that (e.g., in light of the date DHS made such request) the scheduled release date and time for an alien are such as not to permit the advance notice that DHS has requested, it shall not be a violation of this condition to provide only as much advance notice as practicable.



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION SHEET**

**Grant**

PAGE 19 OF 20

| PROJECT NUMBER | 2017-DJ-BX-0001 | AWARD DATE | 08/23/2017 |
|---|---|---|---|

*SPECIAL CONDITIONS*

NOTE: Current DHS practice is to use one form (DHS Form I-247A (3/17)) for two distinct purposes -- to request advance notice of scheduled release, and to request that an individual be detained for up to 48 hours AFTER the scheduled release. This condition imposes NO requirements as to such DHS requests for detention.

C. Both the "Rules of Construction" and the "Important Note" set out in the award condition entitled "Ongoing compliance with 8 U.S.C. 1373 is required" are incorporated by reference as though set forth here in full.

56.   Required local-government-level rules or practices related to aliens; allowable costs

The following provisions apply to the recipient of this award, if the recipient is a unit of local government, and also apply to any local-government subrecipient of this award at any tier (whether or not the recipient itself is a unit of local government).

1.   Requirements

With respect to the "program or activity" that is funded (in whole or in part) by this award, as of the date the recipient accepts this award, and throughout the remainder of the period of performance for the award--

A.   A local ordinance, -rule, -regulation, -policy, or -practice (or an applicable State statute, -rule, -regulation, -policy, or -practice) must be in place that is designed to ensure that agents of the United States acting under color of federal law in fact are given access a local-government (or local-government-contracted) correctional facility for the purpose of permitting such agents to meet with individuals who are (or are believed by such agents to be) aliens and to inquire as to such individuals' right to be or remain in the United States.

B.   A local ordinance, -rule, -regulation, -policy, or -practice (or an applicable State statute, -rule, -regulation, -policy, or -practice) must be in place that is designed to ensure that, when a local-government (or local-government-contracted) correctional facility receives from DHS a formal written request authorized by the Immigration and Nationality Act that seeks advance notice of the scheduled release date and time for a particular alien in such facility, then such facility will honor such request and -- as early as practicable (see "Rules of Construction" incorporated by para. 4.B. of this condition) -- provide the requested notice to DHS.

2.   Monitoring

The recipient's monitoring responsibilities include monitoring of subrecipient compliance with the requirements of this condition.

3.   Allowable costs

Compliance with these requirements is an authorized and priority purpose of this award.  To the extent that such costs are not reimbursed under any other federal program, award funds may be obligated (including for authorized reimbursements) for the reasonable, necessary, and allocable costs (if any) of-- (1) developing and putting into place statutes, ordinances, rules, regulations, policies, and practices to satisfy this condition, (2) permitting access as described in para. 1.A. above, and (3) honoring any request from DHS that is encompassed by para. 1.B. above.

4.   Rules of construction

A.   The "Rules of Construction" and the "Important Note" set out in the award condition entitled "Ongoing compliance with 8 U.S.C. 1373 is required" are incorporated by reference as though set forth here in full.

B.   The "Rules of Construction" set out in the award condition entitled "Required State-level rules or practices related to aliens; allowable costs" are incorporated by reference as though set forth here in full.

OJP FORM 4000/2 (REV  4-88)



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION
SHEET**

**Grant**

PAGE 20 OF 20

| PROJECT NUMBER | 2017-DJ-BX-0001 | AWARD DATE | 08/23/2017 |
|---|---|---|---|

*SPECIAL CONDITIONS*

57. Use of funds for DNA testing; upload of DNA profiles

If award funds are used for DNA testing of evidentiary materials, any resulting eligible DNA profiles must be uploaded to the Combined DNA Index System ("CODIS," the DNA database operated by the FBI) by a government DNA laboratory with access to CODIS.

No profiles generated under this award may be entered or uploaded into any non-governmental DNA database without prior express written approval from BJA.

Award funds may not be used for the purchase of DNA equipment and supplies unless the resulting DNA profiles may be accepted for entry into CODIS.

58. Encouragement of submission of "success stories"

BJA strongly encourages the recipient to submit annual (or more frequent) JAG success stories. To submit a success story, sign in to a My BJA account at https://www.bja.gov/Login.aspx to access the Success Story Submission form. If the recipient does not yet have a My BJA account, please register at https://www.bja.gov/profile.aspx. Once registered, one of the available areas on the My BJA page will be "My Success Stories." Within this box, there is an option to add a Success Story. Once reviewed and approved by BJA, all success stories will appear on the BJA Success Story web page at https://www.bja.gov/SuccessStoryList.aspx.

59. Initial period of performance; requests for extension

The recipient understands that the initial period of performance for this award is two years. The recipient further understands that any requests for an extension of the period of performance for this award will be approved automatically for up to a total of two additional years, pursuant to 42 U.S.C. 3751(f) and in accordance with the program solicitation associated with this award.

Any request for an extension of the period of performance beyond a four-year award period will require approval, and the approval (if any) will be at the discretion of the Director of BJA.

60. Withholding of funds: Budget narrative

The recipient may not obligate, expend, or draw down any award funds until the recipient submits, and OJP has reviewed and accepts, the budget narrative for the award, and a Grant Adjustment Notice (GAN) has been issued to remove this condition.

61. Withholding of funds: Program narrative

The recipient may not obligate, expend, or draw down any award funds until the recipient submits, and OJP has reviews and accepts, the program narrative for this award, and a Grant Adjustment Notice (GAN) has been issued to remove this condition.

62. Withholding of funds: Memorandum of Understanding

The recipient may not obligate, expend, or draw down any award funds until OJP has reviewed and approved the Memorandum of Understanding (MOU), and a Grant Adjustment Notice (GAN) has been issued to remove this condition.

OJP FORM 4000/2 (REV 4-88)

# EXHIBIT K

# 2015 DOJ Grants Financial Guide











**UNITED STATES DEPARTMENT OF JUSTICE**

OFFICE OF JUSTICE PROGRAMS   |   OFFICE ON VIOLENCE AGAINST WOMEN
COMMUNITY ORIENTED POLICING SERVICES

Table of Contents

FOREWORD ......................................................................................................II

I. GENERAL INFORMATION ............................................................................1
1.1 Users.......................................................................................................1
1.2 Resources ..............................................................................................3

II. PREAWARD REQUIREMENTS ....................................................................5
2.1 Application Process ...............................................................................5
2.2 Acceptance of Award and Award Conditions.....................................16
2.3 Standards For Financial Management Systems.................................21

III. POSTAWARD REQUIREMENTS ..............................................................27
3.1 Payments..............................................................................................27
3.2 Period of Availability of Funds...........................................................33
3.3 Matching or Cost Sharing Requirements...........................................38
3.4 Program Income ...................................................................................43
3.5 Adjustments to Awards.......................................................................47
3.6 Costs Requiring Prior Approval .........................................................52
3.7 Property Standards..............................................................................56
3.8 Procurement Under Awards of Federal Assistance ..........................63
3.9 Allowable Costs ...................................................................................69
3.10 Conference Approval, Planning, and Reporting ..............................76
3.11 Indirect Costs .....................................................................................99
3.12 OJP's Confidential Funds ................................................................103
3.13 Unallowable Costs ...........................................................................110
3.14 Subrecipient Management and Monitoring ....................................114
3.15 Reporting Requirements..................................................................120
3.16 Retention and Access Requirements for Records .........................125
3.17 Remedies for Noncompliance .........................................................127
3.18 Closeout ...........................................................................................129
3.19 Audit Requirements.........................................................................133
3.20 Grant Fraud, Waste, and Abuse .....................................................140
3.21 OJP's Payment Programs ................................................................145

IV. ORGANIZATION STRUCTURE ..............................................................150
4.1 Organization Charts...........................................................................150

V. APPENDICES ...........................................................................................151
5.1 Acronyms ...........................................................................................151
5.2 Glossary of Terms..............................................................................153
5.3 Appendices I and II ............................................................................158

## II. Preaward Requirements

### 2.2 ACCEPTANCE OF AWARD AND AWARD CONDITIONS

#### Award Notification and Acceptance Procedures

Your application has gone through the review process and you have just been approved for an award. The next step in this process is award notification. Here are the details:

- The Office of Justice Programs (OJP) and the Office on Violence Against Women (OVW) send award notifications by email through the Grants Management System (GMS) to the individuals listed in the application as the point of contact and the authorizing official.

- GMS automatically issues the notifications at 9:00 p.m. eastern time on the award date.

- The email notification includes detailed instructions on how to access and view the award documents and how to accept the award in GMS.

- The Office of Community Oriented Policing Services (COPS Office) sends award notifications by email to the law enforcement and government executives (and financial official if applicable) listed in the application.

- The email notification contains information on how to access and view the award on the COPS Agency Portal.

- The COPS Office provides detailed instructions for accepting the award in the COPS Grant and Award Owner's Manuals available through the COPS Office website.

The award document serves as the official document binding the recipient and DOJ to the grant agreement. A sample award document is included in Appendix I. It includes the name of the recipient, project title, award period, budget period, type of Federal funds (awards and cooperative agreements), amount of Federal funds, award number, and special conditions that must be met during the award period.

> **☑ ACTION ITEM**
>
> You have 45 days from the award date to accept the OJP or OVW award document or the award may be rescinded. The COPS Office awards have a 90-day acceptance time frame.
>
> To accept an award from OJP or OVW, you must log into GMS and designate a Financial Point of Contact (FPOC). You can find instructions for designating a FPOC in the GMS User Guide.

Here are some important points about the FPOC:

- The FPOC must be the individual(s) the recipient has designated as responsible for the financial administration of the award.

- He or she may be the same as the Principal Point of Contact (PPOC). Alternatively, the FPOC may be one or more separate individuals designated by the recipient.

- The designation of the FPOC must be completed in GMS before the award acceptance documents can be printed.

Once the FPOC has been designated, recipients should:

- Print and read the award document carefully.

- Have the award document signed and dated by the authorized recipient official designated in the application

# EXHIBIT L

## JUSTICE NEWS

**Department of Justice**

Office of Public Affairs

FOR IMMEDIATE RELEASE                                    Monday, October 23, 2017

# Department of Justice Awards Nearly $9 Million to Advance Community Policing Efforts and Increase First Responder Safety through Active Shooter Training

Attorney General Jeff Sessions today announced nearly $9 million in funding through the Department of Justice, Office of Community Oriented Policing Services (COPS Office) to advance the practice of community policing in law enforcement and to provide critical training to help law enforcement officers prepare for active shooter situations. The announcement was made during the Attorney General's remarks at the International Association of Chiefs of Police (IACP) conference in Philadelphia.  The IACP will also be receiving over $200,000 for its Institute for Community and Police Relations.

"Community policing builds trust and mutual respect between communities and law enforcement, and that helps us reduce crime," Sessions said. "Over the last 23 years, the Department of Justice has invested more than $14 billion in community policing—and I have no doubt that it has saved lives across America.  The investment the Department makes today builds on those efforts, and it underscores the Trump Administration's commitment to support law enforcement.  This investment will be put to good use: providing better training and safety for law enforcement officers and better relations with communities.  That will benefit all of us.  Under President Trump's strong leadership, this Department of Justice will continue to provide law enforcement officers with the resources and tools they need to make this country safe."

Through the Community Policing Development (CPD) Program, the COPS Office will fund approximately $3.6 million to grantees that will provide training and technical assistance and develop innovative community policing strategies, applied research, guidebooks, and best practices. Grant awards were made in the following categories:

- Field-Initiated Law Enforcement Microgrants;
- Officer Safety and Wellness Resources;
- Enhancing Officer Safety through Increased Respect for Law Enforcement; and
- Online Training Development.

A full list of grant awardees is available on the COPS Office website: http://www.cops.usdoj.gov/default.asp?Item=2895

Additionally, the COPS Office is awarding approximately $5.4 million in grant funding through the Preparing for Active Shooter Situations (PASS) Training Program to the Advanced Law Enforcement Rapid Response Training (ALERRT) Center at Texas State University. This funding is intended to increase law enforcement and public safety through scenario-based training that prepares officers and other first responders to safely and effectively handle active-shooter and other violent threats. Additional details on the PASS grant awardee are available on the COPS Office website: http://www.cops.usdoj.gov/default.asp?Item=2946

---

**Component(s):**                                    Office of the Attorney General

Case 3:17-cv-04701-WHO   Document 27-3   Filed 11/07/17   Page 52 of 107

**Press Release Number:**          17-1179

*Updated October 23, 2017*

# EXHIBIT M

## JUSTICE NEWS

**Department of Justice**

Office of Public Affairs

FOR IMMEDIATE RELEASE                                              Friday, April 21, 2017

## Department of Justice Sends Letter to Nine Jurisdictions Requiring Proof of Compliance with 8 U.S.C. § 1373

Today, the Department of Justice sent the attached letters to nine jurisdictions which were identified in a May 2016 report by the Department of Justice's Inspector General as having laws that potentially violate 8 U.S.C. § 1373.

Additionally, many of these jurisdictions are also crumbling under the weight of illegal immigration and violent crime. The number of murders in Chicago has skyrocketed, rising more than 50 percent from the 2015 levels. New York City continues to see gang murder after gang murder, the predictable consequence of the city's "soft on crime" stance. And just several weeks ago in California's Bay Area, after a raid captured 11 MS-13 members on charges including murder, extortion and drug trafficking, city officials seemed more concerned with reassuring illegal immigrants that the raid was unrelated to immigration than with warning other MS-13 members that they were next.

The letters remind the recipient jurisdictions that, as a condition for receiving certain financial year 2016 funding from the Department of Justice, each of these jurisdictions agreed to provide documentation and an opinion from legal counsel validating that they are in compliance with Section 1373. The Department of Justice expects each of these jurisdictions to comply with this grant condition and to submit all documentation to the Office of Justice Programs by June 30, 2017, the deadline imposed by the grant agreement.

Proof of Compliance with 8 U.S.C. § 1373 Letters

---

**Component(s):**                                    **Press Release Number:**
Office of the Attorney General                        17-436
Office of the Deputy Attorney General

*Updated May 16, 2017*

# EXHIBIT N

## JUSTICE NEWS

**Attorney General Jeff Sessions Delivers Remarks Before Media Availability in San Diego, California**

San Diego, CA ~ Friday, April 21, 2017

---

***Remarks as prepared for delivery***

First, I want to thank Secretary John Kelly of the Department of Homeland Security (DHS) and his team for organizing these briefings today. This is a partnership. Yesterday, we were in El Paso, Texas, where we met with federal law enforcement and immigration officials there. Today, we have already had briefings from HSI and the Otay Mesa Detention facility. All of this has been informative and renewed our commitment to ensure our men and women in law enforcement know we have their back and that our prosecutors here and around the country know that this administration is serious about ending lawlessness at the border. DHS and Department of Justice work hand in glove on these issues and I'm so pleased to have General Kelly as a partner in this fight. Because it is a fight we will win.

The Secretary and I have both spoken extensively about the dangers posed by transnational gangs like MS-13 – whose motto "murder, rape and control" encapsulates why they must be eradicated. We have also spoken about the dangers posed by lax immigration policies that allow these gang members to return even after being deported. It ends now.

Today, I think it's important to talk about sanctuary jurisdictions. It was nearly two years ago that Kate Steinle was shot and killed, dying in her father's arms, along Pier 14 in San Francisco. The alleged shooter was an illegal immigrant with seven felony convictions who had been deported five times. Only weeks earlier, the city had released him from custody, even though federal immigration authorities had filed a detainer requesting he be kept in custody until they could remove him for deportation proceedings. Even worse, this man admitted he came to San Francisco in part because of its sanctuary policies.

Today, the Department of Justice sent letters to nine jurisdictions that were identified (by the Obama administration) as having policies that potentially violate federal law to receive millions in federal grants. These jurisdictions have until June 30 to send their legal justifications for why they are not in violation of federal law and the state of California is one of these jurisdictions.

California is no stranger to transnational gangs. MS-13 was founded in Los Angles and is on the rise now across the country, enriching themselves by pedaling poison in our communities, trafficking children for sexual exploitation and inflicting horrific violence in the communities where they operate. As you know too well here, Escondido's gang violence has jumped recently between two rival gangs warring for turf – more shootings, more guns, more neighborhoods terrorized.

Sanctuary jurisdictions put known gang members back on the streets of Escondido to rejoin the West Side gang. Just the other day it was reported that a local prosecutor in California went so far as to intentionally lower violent and heinous domestic abuse charges against a repeat offender so that the abuser wouldn't be deported. Think about the message that sends: If you are an alien and you commit domestic violence, prosecutors will charge you with a lesser crime so you can stay in the country. Enough is enough.

Forcing local law enforcement to release criminal aliens only helps violent gangs and criminals. Sanctuary jurisdictions put criminals back on your streets. They help these gangs to refill their ranks and puts innocent life – including the lives of countless law-abiding immigrants – in danger by refusing to share vital information with federal law enforcement.

I urge California to reconsider. Our federal law enforcement officers and prosecutors stand ready to work with you because every neighborhood, every street corner deserves to be free from gang violence. Thank you again to Secretary Kelly for being a partner in this effort. Now I'll turn it over to U.S. Senator Ron Johnson of Wisconsin who has been such a great partner in these efforts over the years, and I look forward to continue working with him to keep our communities safe.

---

**Speaker:**
Attorney General Jeff Sessions

**Component(s):**
Office of the Attorney General

**Topic(s):**
Immigration

*Updated April 21, 2017*

# EXHIBIT O

**U.S. Department of Justice**

Office of the Inspector General

The "Law Enforcement Sensitive" markings on this document were removed as a result of a sensitivity review and determination by the U.S. Department of Homeland Security, Immigration and Customs Enforcement.

~~LAW ENFORCEMENT SENSITIVE~~

May 31, 2016 [Re-posted to oig.justice.gov on September 23, 2016, due to a corrected entry in the Appendix, see page 12.]

MEMORANDUM FOR KAROL V. MASON
ASSISTANT ATTORNEY GENERAL
FOR THE OFFICE OF JUSTICE PROGRAMS

FROM:           MICHAEL E. HOROWITZ
                INSPECTOR GENERAL

SUBJECT:        Department of Justice Referral of Allegations of Potential
                <u>Violations of 8 U.S.C. § 1373 by Grant Recipients</u>

This is in response to your e-mail dated April 8, 2016, wherein you advised the Office of the Inspector General (OIG) that the Office of Justice Programs (OJP) had "received information that indicates that several jurisdictions [receiving OJP and Office of Violence Against Woman (OVW) grant funds] may be in violation of 8 U.S.C. § 1373." With the e-mail, you provided the OIG a spreadsheet detailing Department grants received by over 140 state and local jurisdictions and requested that the OIG "investigate the allegations that the jurisdictions reflected in the attached spreadsheet, who are recipients of funding from the Department of Justice, are in violation of 8 U.S.C. Section 1373." In addition to the spreadsheet, you provided the OIG with a letter, dated February 26, 2016, to Attorney General Loretta E. Lynch from Congressman John Culberson, Chairman of the House Appropriations Subcommittee on Commerce, Justice, Science, and Related Agencies, regarding whether Department grant recipients were complying with federal law, particularly 8 U.S.C. § 1373 (Section 1373). Attached to Chairman Culberson's letter to the Attorney General was a study conducted by the Center for Immigration Studies (CIS) in January 2016, which concluded that there are over 300 "sanctuary" jurisdictions that refuse to comply with U.S. Immigration and Customs Enforcement (ICE) detainers or otherwise impede information sharing with federal immigration officials.[1]

---

[1] Your e-mail also referenced and attached the OIG's January 2007 report, *Cooperation of SCAAP [State Criminal Alien Assistance Program] Recipients in the Removal of Criminal Aliens from the United States.* In that Congressionally-mandated report, the OIG was asked, among other things, to assess whether entities receiving SCAAP funds were "fully cooperating" with the Department of Homeland Security's efforts to remove undocumented criminal aliens from the United States, and whether SCAAP recipients had in effect policies that violated Section

~~LAW ENFORCEMENT SENSITIVE~~

The purpose of this memorandum is to update you on the steps we have undertaken to address your question and to provide you with the information we have developed regarding your request. Given our understanding that the Department's grant process is ongoing, we are available to discuss with you what, if any, further information you and the Department's leadership believe would be useful in addressing the concerns reflected in your e-mail.

## OIG Methodology

At the outset, we determined it would be impractical for the OIG to promptly assess compliance with Section 1373 by the more than 140 jurisdictions that were listed on the spreadsheet accompanying your referral. Accordingly, we judgmentally selected a sample of state and local jurisdictions from the information you provided for further review. We started by comparing the specific jurisdictions cited in the CIS report you provided to us with the jurisdictions identified by ICE in its draft *Declined Detainer Outcome Report,* dated December 2, 2014.[2] Additionally, we compared these lists with a draft report prepared by ICE that identified 155 jurisdictions and stated that "all jurisdictions on this list contain policies that limit or restrict cooperation with ICE and, as of Q3 FY 2015, have declined detainers."[3] From this narrowed list of jurisdictions, we determined, using the spreadsheet provided with your e-mail, which jurisdictions had active OJP and OVW awards as of March 17, 2016, the date through which you provided award information, and received fiscal year (FY) 2015 State Criminal Alien Assistance Program (SCAAP) payments. Lastly, we considered, based on the spreadsheet, the total dollars awarded and the number of active grants and payments made as of March 17,

---

1373. As we describe later in this memorandum, the information we have learned to date during our recent work about the present matter differs significantly from what OIG personnel found nearly 10 years ago during the earlier audit. Specifically, during the 2007 audit, ICE officials commented favorably to the OIG with respect to cooperation and information flow they received from the seven selected jurisdictions, except for the City and County of San Francisco. As noted in this memorandum, we heard a very different report from ICE officials about the cooperation it is currently receiving. Additionally, our 2007 report found that the SCAAP recipients we reviewed were notifying ICE in a timely manner of aliens in custody, accepting detainers from ICE, and promptly notifying ICE of impending releases from local custody. By contrast, as described in this memorandum, all of the jurisdictions we reviewed had ordinances or policies that placed limits on cooperation with ICE in connection with at least one of the three areas assessed in 2007.

[2] At the time of our sample selection we only had a draft version of this report. We later obtained an updated copy which was provided to Congress on April 16, 2016. Although it was provided to Congress, this report was also marked "Draft." The updated draft version of the report did not require us to alter our sample selection.

[3] This version of the declined detainer report covered declined detainers from January 1, 2014 through June 30, 2015.

~~LAW ENFORCEMENT SENSITIVE~~

2016, and sought to ensure that our list contained a mix of state and local jurisdictions.

Using this process, we judgmentally selected 10 state and local jurisdictions for further review: the States of Connecticut and California; City of Chicago, Illinois; Clark County, Nevada; Cook County, Illinois; Miami-Dade County, Florida; Milwaukee County, Wisconsin; Orleans Parish, Louisiana; New York, New York; and Philadelphia, Pennsylvania. These 10 jurisdictions represent 63 percent of the total value of the active OJP and OVW awards listed on the spreadsheet as of March 17, 2016, and FY 2015 SCAAP payments made by the Department.

Section 1373 states in relevant part:

(a) **In General**.  Notwithstanding any other provision of Federal, State, or local law, a Federal, State, or local government entity or official may not prohibit, or in any way restrict, any government entity or official from sending to, or receiving from, the Immigration and Naturalization Service information regarding the citizenship or immigration status, lawful or unlawful, of any individual.

(b) **Additional authority of government entities.**  Notwithstanding any other provision of Federal, State, or local law, no person or agency may prohibit, or in any way restrict, a Federal, State, or local government entity from doing any of the following with respect to information regarding the immigration status, lawful or unlawful, of any individual:

(1) Sending such information to, or requesting or receiving such information from, the Immigration and Naturalization Service.

(2) Maintaining such information.

(3) Exchanging such information with any other Federal, State, or local government entity.

According to the legislative history contained in the House of Representatives Report, Section 1373 was intended "to give State and local officials the authority to communicate with the Immigration and Naturalization Service (INS) regarding the presence, whereabouts, and activities of illegal aliens.  This section is designed to prevent any State or local law, ordinance, executive order, policy, constitutional provision, or decision of any Federal or State court that prohibits or in any way restricts any communication between State and local officials and the INS."[4]

---

[4] House of Representatives Report, *Immigration in the National Interest Act of 1995*, (H.R. 2202), 1996, H. Rept. 104-469, https://www.congress.gov/104/crpt/hrpt469/CRPT-

LAW ENFORCEMENT SENSITIVE

For the 10 selected jurisdictions, we researched the local laws and policies that govern their interactions with ICE – particularly those governing the ability of the jurisdictions' officers to receive or share information with federal immigration officials. We then compared these local laws and policies to Section 1373 in order to try to determine whether they were in compliance with the federal statute. We also spoke with ICE officials in Washington, D.C., to gain their perspective on ICE's relationship with the selected jurisdictions and their views on whether the application of these laws and policies was inconsistent with Section 1373 or any other federal immigration laws.

The sections that follow include our analysis of the selected state and local laws and policies.

## State and Local Cooperation with ICE

A primary and frequently cited indicator of limitations placed on cooperation by state and local jurisdictions with ICE is how the particular state or local jurisdiction handles immigration detainer requests issued by ICE, although Section 1373 does not specifically address restrictions by state or local entities on cooperation with ICE regarding detainers.[5]  A legal determination has been made by the Department of Homeland Security (DHS) that civil immigration detainers are voluntary requests.[6]  The ICE officials with whom we spoke stated that since the detainers are considered to be voluntary, they are not enforceable against jurisdictions which do not comply, and these ICE officials stated further that state and local jurisdictions throughout the United States vary significantly on how they handle such requests.

In our selected sample of state and local jurisdictions, as detailed in the Appendix, each of the 10 jurisdictions had laws or policies directly related to how those jurisdictions could respond to ICE detainers, and each limited in some way the authority of the jurisdiction to take action with regard to ICE detainers.   We found that while some honor a civil immigration detainer request when the subject meets certain conditions, such as prior felony

---

104hrpt469-pt1.pdf (accessed May 24, 2016).

[5] A civil immigration detainer request serves to advise a law enforcement agency that ICE seeks custody of an alien presently in the custody of that agency, for the purpose of arresting and removing the alien.  8 C.F.R. § 287.7(a)

[6] Several courts have reached a similar conclusion about the voluntary nature of ICE detainers.  See *Galarza v, Szalczyk et al*, 745 F.3d 634 (3rd Cir. 2014) (noting that all Courts of Appeals to have considered the character of ICE detainers refer to them as "requests," and citing numerous such decisions); and *Miranda-Olivares v. Clackamas County*, 2014 1414305 (D. Or. 2014).

~~LAW ENFORCEMENT SENSITIVE~~

convictions, gang membership, or presence on a terrorist watch list, others will not honor a civil immigration detainer request, standing alone, under any circumstances. ICE officials told us that because the requests are voluntary, local officials may also consider budgetary and other considerations that would otherwise be moot if cooperation was required under federal law.

We also found that the laws and policies in several of the 10 jurisdictions go beyond regulating responses to ICE detainers and also address, in some way, the sharing of information with federal immigration authorities. For example, a local ordinance for the City of Chicago, which is entitled "Disclosing Information Prohibited," states as follows:

> Except as otherwise provided under applicable federal law, no agent or agency shall disclose information regarding the citizenship or immigration status of any person unless required to do so by legal process or such disclosure has been authorized in writing by the individual to whom such information pertains, or if such individual is a minor or is otherwise not legally competent, by such individual's parent or guardian. *Chicago Code, Disclosing Information Prohibited § 2-173-030.*

The ordinance's prohibition on a city employee providing immigration status information "unless required to do so by legal process" is inconsistent with the plain language of Section 1373 prohibiting a local government from restricting a local official from sending immigration status information to ICE. The "except as otherwise provided under applicable federal law" provision, often referred to as a "savings clause," creates a potential ambiguity as to the proper construction of the Chicago ordinance and others like it because to be effective, this "savings clause" would render the ordinance null and void whenever ICE officials requested immigration status information from city employees. Given that the very purpose of the Chicago ordinance, based on our review of its history, was to restrict and largely prohibit the cooperation of city employees with ICE, we have significant questions regarding any actual effect of this "savings clause" and whether city officials consider the ordinance to be null and void in that circumstance.[7]

---

[7] The New Orleans Police Department's (NOPD) policy dated February 28, 2016, and entitled "Immigration Status" also seemingly has a "savings clause" provision, but its language likewise presents concerns. In your April 8 e-mail to me, you attached questions sent to the Attorney General by Sen. Vitter regarding whether the NOPD's recent immigration policy was in compliance with Section 1373. Paragraph 12 of the NOPD policy is labeled "Disclosing Immigration Information" and provides that "Members shall not disclose information regarding the citizenship or immigration status of any person unless:

    (a) Required to do so by federal or state law; or
    (b) Such disclosure has been authorized in writing by the person who is the subject of the request for information; or

~~LAW ENFORCEMENT SENSITIVE~~

In addition, whatever the technical implication of the clause generally referencing federal law, we have concerns that unless city employees were made explicitly aware that the local ordinance did not limit their legal authority to respond to such ICE requests, employees likely would be unaware of their legal authority to act inconsistently with the local ordinance.  We noted that in connection with the introduction of this local ordinance the Mayor of Chicago stated, "[w]e're not going to turn people over to ICE and we're not going to check their immigration status, we'll check for criminal background, but not for immigration status."[8]  We believe this stated reason for the ordinance, and its message to city employees, has the potential to affect the understanding of

---

(c) The person is a minor or otherwise not legally competent, and disclosure is authorized in writing by the person's parent or guardian.

Sub-section (a) applies only when an NOPD employee has an affirmative obligation, i.e., is "required" by federal law, to disclose information regarding citizenship or immigration status. Section 1373, however, does not "require" the disclosure of immigration status information; rather, it provides that state and local entities shall not prohibit or restrict the sharing of immigration status information with ICE.  Accordingly, in our view, sub-section (a) of the NOPD policy would not serve as a "savings clause" in addressing Section 1373.  Thus, unless the understanding of NOPD's employees is that they are not prohibited or restricted from sharing immigration status information with ICE, the policy would be inconsistent with Section 1373. We did not consider selecting the City of New Orleans to evaluate in this memorandum because it was not listed as a grant recipient on the spreadsheet you provided.

Similarly, the City and County of San Francisco, CA administrative code, Section 12H.2, is entitled "Immigration Status" and provides, "No department, agency, commission, officer or employee of the City and County of San Francisco shall use any City funds or resources to assist in the enforcement of federal immigration law or to gather or disseminate information regarding the immigration status of individuals in the City and County of San Francisco unless such assistance is required by federal or State statute, regulation or court decision."  As with the NOPD policy, a "savings clause" that only applies when a city employee is "required" by federal law to take some action would not seem to be effective in precluding the law from running afoul of Section 1373, which "requires" nothing, but instead mandates that state and local entities not prohibit, or in any way restrict, the sharing of immigration status information with ICE.  Thus, as with the NOPD policy, unless the understanding of San Francisco employees is that they are permitted to share immigration status information with ICE, the policy would be inconsistent with Section 1373.  According to news reports, last week the San Francisco Board of Supervisors reaffirmed its policy restricting local law enforcement's authority to assist ICE, except in limited circumstances.  Curtis Skinner, "San Francisco Lawmakers Vote to Uphold Sanctuary City Policy," *Reuters*, May 24, 2016, http://www.reuters.com/article/us-sanfrancisco-immigration-idUSKCN0YG065 (accessed May 26, 2016).  We did not consider selecting the City and County of San Francisco to evaluate in this memorandum because it was not listed as a grant recipient on the spreadsheet you provided.

[8] Kristen Mack, "Emanuel Proposes Putting Nondetainer Policy On Books," *Chicago Tribune*, July 11, 2012, http://articles.chicagotribune.com/2012-07-11/news/ct-met-rahm-emanuel-immigrants-0711-2012 (accessed May 24, 2017).

6

LAW ENFORCEMENT SENSITIVE

local officials regarding the performance of their duties, including the applicability of any restrictions on their interactions and cooperation with ICE.

Similarly, we have concerns that other local laws and policies, that by their terms apply to the handling of ICE detainer requests, may have a broader practical impact on the level of cooperation afforded to ICE by these jurisdictions and may, therefore, be inconsistent with at least the intent of Section 1373.[9]  Specifically, local policies and ordinances that purport to be focused on civil immigration detainer requests, yet do not explicitly restrict the sharing of immigration status information with ICE, may nevertheless be affecting ICE's interactions with the local officials regarding ICE immigration status requests.   We identified several jurisdictions with policies and ordinances that raised such concerns, including Cook County, Orleans Parish, Philadelphia, and New York City.

For example, the Cook County, Illinois, detainer policy states, "unless ICE agents have a criminal warrant, or County officials have a legitimate law enforcement purpose that is not related to the enforcement of immigration laws, ICE agents shall not be given access to individuals or allowed to use County facilities for investigative interviews or other purposes, and County personnel shall not expend their time responding to ICE inquiries or communicating with ICE regarding individuals' incarceration status or release dates while on duty."  Although this policy falls under the heading "Section 46-37 – Policy for responding to ICE Detainers" and does not explicitly proscribe sharing immigration status information with ICE, the portion of the prohibition relating to personnel expending their time responding to ICE inquiries could easily be read by Cook County officials and officers as more broadly prohibiting them from expending time responding to ICE requests relating to immigration status.  This possibility was corroborated by ICE officials who told us that Cook County officials "won't even talk to us [ICE]."

In Orleans Parish, Louisiana, Orleans Parish Sheriff's Office (OPSO) policy on "ICE Procedures" states that, "OPSO officials shall not initiate any immigration status investigation into individuals in their custody or affirmatively provide information on an inmate's release date or address to ICE."  While the latter limitation applies by its terms to information related to release date or address, taken in conjunction with the prior ban on initiating immigration status investigations, the policy raises a similar concern as to the

---

[9] A reasonable reading of Section 1373, based on its "in any way restrict" language, would be that it applies not only to the situation where a local law or policy specifically prohibits or restricts an employee from providing citizenship or immigration status information to ICE, but also where the actions of local officials result in prohibitions or restrictions on employees providing such information to ICE.

LAW ENFORCEMENT SENSITIVE

limits it places on the authority of OPSO officials to share information on that topic with ICE.

In Philadelphia, Pennsylvania, the Mayor, on January 4, 2016, issued an executive order that states, in part, that notice of the pending release of the subject of an ICE immigration detainer shall not be provided to ICE "unless such person is being released after conviction for a first or second degree felony involving violence and the detainer is supported by a judicial warrant." According to news reports, the purpose of the order was to bar almost all cooperation between city law enforcement and ICE.[10]

In New York City (NYC), a law enacted in November 2014 restricts NYC Department of Corrections personnel from communicating with ICE regarding an inmate's release date, incarceration status, or upcoming court dates unless the inmate is the subject of a detainer request supported by a judicial warrant, in which case personnel may honor the request.  The law resulted in ICE closing its office on Riker's Island and ceasing operations on any other NYC Department of Corrections property.

Although the Cook County, Orleans Parish, Philadelphia, and New York City local policies and ordinances purport to be focused on civil immigration detainer requests, and none explicitly restricts the sharing of immigration status with ICE, based on our discussions with ICE officials about the impact these laws and policies were having on their ability to interact with local officials, as well as the information we have reviewed to date, we believe these policies and others like them may be causing local officials to believe and apply the policies in a manner that prohibits or restricts cooperation with ICE in all respects.[11]   That, of course, would be inconsistent with and prohibited by Section 1373.[12]

---

[10]   Michael Matza, "Kenney restores 'sanctuary city' status," *Philadelphia Inquirer*, January 6, 2016, http://articles.philly.com/2016-01-06/news/69541175_1_south-philadelphia-secure-communities-ice (accessed May 24, 2016) and "Kenney rejects U.S. request to reverse 'sanctuary city' status," *Philadelphia Inquirer, May 4, 2016,* http://www.philly.com/philly/news/20160504_Kenney_rejects_Homeland_Security_s_request_to_reverse_Philadelphia_s__sanctuary_city__status.html (accessed May 24, 2016)

[11]   For example, the Newark, NJ police department issued a "Detainer Policy" instructing all police personnel that "There shall be no expenditure of any departmental resources or effort by on-duty personnel to comply with an ICE detainer request."   More generally, Taos County, NM detention center policy states: "There being no legal authority upon which the United States may compel expenditure of country resources to cooperate and enforce its immigration laws, there shall be no expenditure of any county resources or effort by on-duty staff for this purpose except as expressly provided herein."

[12]   The ICE officials we spoke with noted that no one at DHS or ICE has made a formal legal determination whether certain state and local laws or policies violate Section 1373, and we are unaware of any Department of Justice decision in that regard.   These ICE officials were

LAW ENFORCEMENT SENSITIVE

## Effect on Department of Justice 2016 Grant Funding

We note that, in March 2016, OJP notified SCAAP and JAG applicants about the requirement to comply with Section 1373, and advised them that if OJP receives information that an applicant may be in violation of Section 1373 (or any other applicable federal law) that applicant may be referred to the OIG for investigation.  The notification went on to state that if the applicant is found to be in violation of an applicable federal law by the OIG, the applicant may be subject to criminal and civil penalties, in addition to relevant OJP programmatic penalties, including cancellation of payments, return of funds, participation in the program during the period of ineligibility, or suspension and debarment.

In light of the Department's notification to grant applicants, and the information we are providing in this memorandum, to the extent the Department's focus is on ensuring that grant applicants comply with Section 1373, based on our work to date we believe there are several steps that the Department can consider taking:

- Provide clear guidance to grant recipients regarding whether Section 1373 is an "applicable federal law" that recipients would be expected to comply with in order to satisfy relevant grant rules and regulations;[13]

- Require grant applicants to provide certifications specifying the applicants' compliance with Section 1373, along with documentation sufficient to support the certification.

- Consult with the Department's law enforcement counterparts at ICE and other agencies, prior to a grant award, to determine whether, in their view, the applicants are prohibiting or restricting employees from sharing with ICE information regarding the citizenship or immigration status of individuals, and are therefore not in compliance with Section 1373.

- Ensure that grant recipients clearly communicate to their personnel the provisions of Section 1373, including those

---

also unaware of any legal action taken by the federal government against a state or local jurisdiction to require cooperation.

[13] We note that AAG Kadzik's letter to Chairman Culberson dated March 18, 2016, states that Section 1373 "could" be an applicable federal law that with which grant recipients must comply in order to receive grant funds, not that it is, in fact, an applicable federal law.

LAW ENFORCEMENT SENSITIVE

employees cannot be prohibited or restricted from sending citizenship or immigration status information to ICE.

These steps would not only provide the Department with assurances regarding compliance with Section 1373 prior to a grant award, but also would be helpful to the OIG if the Department were to later refer to the OIG for investigation a potential Section 1373 violation (as the Department recently warned grant applicants it might do in the future).

We would be pleased to meet with you and Department's leadership to discuss any additional audit or investigative efforts by the OIG that would further assist the Department with regard to its concerns regarding Section 1373 compliance by state and local jurisdictions. Such a meeting would allow us to better understand what information the Department's management would find useful so that the OIG could assess any request and consult with our counterparts at the Department of Homeland Security Office of the Inspector General, which would necessarily need to be involved in any efforts to evaluate the specific effect of local policies and ordinances on ICE's interactions with those jurisdictions and their compliance with Section 1373.

Thank you for referring this matter to the OIG. We look forward to hearing from you regarding a possible meeting.

LAW ENFORCEMENT SENSITIVE

APPENDIX

## OIG Approach

At the outset, we determined it would be impractical for the OIG to promptly assess compliance with Section 1373 by the more than 140 jurisdictions that were listed on the spreadsheet accompanying your referral. Accordingly, we judgmentally selected a sample of state and local jurisdictions from the information you provided for further review. We started by comparing the specific jurisdictions cited in the CIS report you provided to us with the jurisdictions identified by ICE in its draft *Declined Detainer Outcome Report,* dated December 2, 2014.[14] Additionally, we compared these lists with a draft report prepared by ICE that identified 155 jurisdictions and stated that "all jurisdictions on this list contain policies that limit or restrict cooperation with ICE and, as of Q3 FY 2015, have declined detainers."[15] From this narrowed list of jurisdictions, we determined, using the spreadsheet that you provided with your e-mail, which jurisdictions had active OJP and OVW awards as of March 17, 2016, the date through which you provided award information, and received fiscal year (FY) 2015 State Criminal Alien Assistance Program (SCAAP) payments. Lastly, we considered, based on the spreadsheet, the total dollars awarded and the number of active grants and payments made as of March 17, 2016, and sought to ensure that our list contained a mix of state and local jurisdictions. Using this process we selected the 10 jurisdictions listed in the following table for further review. The dollar figure represents 63 percent of the active OJP awards as of March 17, 2016, and FY 2015 SCAAP payments made by the Department.

| Jurisdiction | Total Award Amounts Reported by OJP |
|---|---|
| State of Connecticut | $69,305,444 |
| State of California | $132,409,635 |
| Orleans Parish, Louisiana | $4,737,964 |
| New York, New York | $60,091,942 |
| Philadelphia, Pennsylvania | $16,505,312 |
| Cook County, Illinois | $6,018,544 |
| City of Chicago, Illinois | $28,523,222 |
| Miami-Dade County, Florida | $10,778,815 |
| Milwaukee, Wisconsin | $7,539,572 |
| Clark County, Nevada | $6,257,951 |
| **TOTAL** | **$342,168,401** |

Source: OJP

---

[14] At the time of our sample selection we only had a draft version of this report. We later obtained an updated copy which was provided to Congress on April 16, 2016. Although it was provided to Congress, this report was also marked "Draft." The updated draft version of the report did not require us to alter our sample selection.

[15] This version of the declined detainer report covered declined detainers from January 1, 2014 through June 30, 2015.

LAW ENFORCEMENT SENSITIVE

The following table lists each of the jurisdictions selected for review by the OIG and the key provisions of its laws or policies related to ICE civil immigration detainer requests and the sharing of certain information with ICE, if applicable.

| Jurisdiction | Provisions of Key Local Laws or Policies Related to Civil Immigration Detainer Requests or Information Sharing with ICE [16] |
|---|---|
| State of Connecticut<br><br>**The statement of Connecticut law has been corrected from a prior version of this memorandum.  This correction does not affect the analysis or conclusions of this memorandum.  We regret the error, and have notified those to whom we sent the memorandum of the correction.** | *Public Act No. 13-155, An Act Concerning Civil Immigration Detainers …*<br><br>(b) No law enforcement officer who receives a civil immigration detainer with respect to an individual who is in the custody of the law enforcement officer shall detain such individual pursuant to such civil immigration detainer unless the law enforcement official determines that the individual:<br>(1) Has been convicted of a felony;<br>(2) Is subject to pending criminal charges in this state where bond has not been posted;<br>(3) Has an outstanding arrest warrant in this state;<br>(4) Is identified as a known gang member in the database of the National Crime Information Center or any similar database or is designated as a Security Risk Group member or a Security Risk Group Safety Threat member by the Department of Correction;<br>(5) Is identified as a possible match in the federal Terrorist Screening Database or similar database;<br>(6) Is subject to a final order of deportation or removal issued by a federal immigration authority; or<br>(7) Presents an unacceptable risk to public safety, as determined by the law enforcement officer.<br><br>(c) Upon determination by the law enforcement officer that such individual is to be detained or released, the law enforcement officer shall immediately notify United States Immigration and Customs Enforcement.  If the individual is to be detained, the law enforcement officer shall inform United States Immigration and Customs Enforcement that the individual will be held for a maximum of forty-eight hours, excluding Saturdays, Sundays and federal holidays.  If United States Immigration and Customs Enforcement fails to take custody of the individual within such forty-eight-hour period, the law enforcement officer shall release the individual. In no event shall an individual be detained for longer than such forty-eight-hour period solely on the basis of a civil immigration detainer.<br>**Approved June 25, 2013** |

---

[16]  Several specific citations to various state and local laws and policies were removed for brevity.

~~LAW ENFORCEMENT SENSITIVE~~

| Jurisdiction | Provisions of Key Local Laws or Policies Related to Civil Immigration Detainer Requests or Information Sharing with ICE [16] |
|---|---|
| State of California | *An act to add Chapter 17.1 (commencing with Section 7282) to Division 7 of Title I of the Government Code, relating to state government....*<br><br>7282.5. (a) A law enforcement official shall have discretion to cooperate with federal immigration officials by detaining an individual on the basis of an immigration hold after that individual becomes eligible for release from custody only if the continued detention of the individual on the basis of the immigration hold would not violate any federal, state, or local law, or any local policy, and only under any of the following circumstances ...<br><br>**Effective Date: October 5, 2013.** |
| Orleans Parish, Louisiana | The Orleans Parish Sheriff's Office (OPSO) shall decline all voluntary ICE detainer requests unless the individual's charge is for one or more of the following offenses: First Degree Murder; Second Degree Murder; Aggravated Rape; Aggravated Kidnapping; Treason; or Armed Robbery with Use of a Firearm.  If a court later dismisses or reduces the individual's charge such that the individual is no longer charged with one of the above offenses or the court recommends declining the ICE hold request, OPSO will decline the ICE hold request on that individual.<br><br>**Orleans Parish Sheriff's Office Index No. 501.15, Updated June 21, 2013.** |
| New York, New York | Title: *A Local Law to amend the administrative code of the city of New York, in relation to persons not to be detained by the department of correction.*<br><br>Bill Summary: ... The DOC would only be permitted to honor an immigration detainer if it was accompanied by a warrant from a federal judge, and also only if that person had not been convicted of a "violent or serious" crime during the last five years or was listed on a terrorist database. Further, the bill would prohibit DOC from allowing ICE to maintain an office on Rikers Island or any other DOC property and would restrict DOC personnel from communicating with ICE regarding an inmate's release date, incarceration status, or court dates, unless the inmate is the subject of a detainer request that DOC may honor pursuant to the law.<br><br>**Enacted Date: November 14, 2014, Law No. 2014/058.** |

~~LAW ENFORCEMENT SENSITIVE~~

| Jurisdiction | Provisions of Key Local Laws or Policies Related to Civil Immigration Detainer Requests or Information Sharing with ICE [16] |
|---|---|
| Philadelphia, Pennsylvania | *Executive Order No. 5-16 - Policy Regarding U.S. Immigration and Customs Enforcement Agency Detainer Requests…*<br><br>NOW, THEREFORE, I, JAMES F. KENNEY, Mayor of the City of Philadelphia, by the powers vested in me by the Philadelphia Home Rule Charter, do hereby order as follows:<br><br>SECTION 1. No person in the custody of the City who otherwise would be released from custody shall be detained pursuant to an ICE civil immigration detainer request pursuant to 8 C.F.R. § 287.7, nor shall notice of his or her pending release be provided, unless such person is being released after conviction for a first or second degree felony involving violence and the detainer is supported by a judicial warrant.<br><br>**Signed by Philadelphia Mayor, January 4, 2016.** |
| Cook County, Illinois | *Sec. 46-37- Policy for responding to ICE detainers …*<br><br>(b) Unless ICE agents have a criminal warrant, or County officials have a legitimate law enforcement purpose that is not related to the enforcement of immigration laws, ICE agents shall not be given access to individuals or allowed to use County facilities for investigative interviews or other purposes, and County personnel shall not expend their time responding to ICE inquiries or communicating with ICE regarding individuals' incarceration status or release dates while on duty.<br><br>**Approved and adopted by the President of the Cook County Board of Commissioners on September 7, 2011.** |
| City of Chicago, Illinois | *Civil Immigration Enforcement Actions – Federal Responsibility §2-173-042 …*<br><br>(b)(1) Unless an agent or agency is acting pursuant to a legitimate law enforcement purpose that is unrelated to the enforcement of a civil immigration law, no agency or agent shall:<br>    (A)  permit ICE agents access to a person being detained by, or in the custody of, the agency or agent;<br>    (B)  permit ICE agents use of agency facilities for investigative interviews or other investigative purpose; or<br>    (C)  while on duty , expend their time responding to |

14

LAW ENFORCEMENT SENSITIVE

| Jurisdiction | Provisions of Key Local Laws or Policies Related to Civil Immigration Detainer Requests or Information Sharing with ICE [16] |
|---|---|
| | ICE inquiries or communicating with ICE regarding a person's custody status or release date … <br><br> *Disclosing Information Prohibited § 2-173-030* <br><br> Except as otherwise provided under applicable federal law, no agent or agency shall disclose information regarding the citizenship or immigration status of any person unless required to do so by legal process or such disclosure has been authorized in writing by the individual to whom such information pertains, or if such individual is a minor or is otherwise not legally competent, by such individual's parent or guardian. <br><br> **Updated November 8, 2012.** |
| Miami-Dade County, Florida | *Resolution No. R-1008-13:  Resolution directing the mayor or mayor's designee to implement policy on responding to detainer requests from the United States Department of Homeland Security Immigration and Customs Enforcement* <br><br> NOW, THEREFORE, BE IT RESOLVED BY THE BOARD OF COUNTY COMMISSIONERS OF MIAMI-DADE COUNTY, FLORIDA, that the Mayor or Mayor's designee is directed to implement a policy whereby Miami-Dade Corrections and Rehabilitations Department may, in its discretion, honor detainer requests issued by United States Immigration and Customs Enforcement only if the federal government agrees in writing to reimburse Miami-Dade County for any and all costs relating to compliance with such detainer requests and the inmate that is the subject of such a request has a previous conviction for a Forcible Felony, as defined in Florida Statute section 776.08, or the inmate that is the subject of such a request has, at the time the Miami-Dade Corrections and Rehabilitations Department receives the detainer request, a pending charge of a non-bondable offense, as provided by Article I, Section 14 of the Florida Constitution, regardless of whether bond is eventually granted. <br><br> **Resolution passed and adopted by Miami-Dade Mayor, December 3, 2013.** |
| Milwaukee County, Wisconsin | Amended Resolution - File No. 12-135 <br><br> BE IT RESOLVED, that the Milwaukee County Board of Supervisors hereby adopts the following policy with regard to detainer requests from the U.S. Department of |

15

~~LAW ENFORCEMENT SENSITIVE~~

| Jurisdiction | Provisions of Key Local Laws or Policies Related to Civil Immigration Detainer Requests or Information Sharing with ICE [16] |
|---|---|
| | Homeland Security - Immigrations and Customs Enforcement:<br><br>1. Immigration detainer requests from Immigrations and Customs Enforcement shall be honored only if the subject of the request:<br>a) Has been convicted of at least one felony or two non-traffic misdemeanor offenses<br>b) Has been convicted or charged with any domestic violence offense or any violation of a protective order<br>c) Has been convicted or charged with intoxicated use of a vehicle<br>d) Is a defendant in a pending criminal case, has an outstanding criminal warrant, or is an identified gang member<br>e) Is a possible match on the US terrorist watch list<br><br>**Enacted: June 4, 2012** |
| Clark County, Nevada | "Recent court decisions have raised Constitutional concerns regarding detention by local law enforcement agencies based solely on an immigration detainer request from the Immigration and Customs Enforcement (ICE).  Until this areas of the law is further clarified by the courts, effective immediately the Las Vegas Metropolitan Police Department will no longer honor immigration detainer requests unless one of the following conditions are met:<br><br>1.  Judicial determination of Probable Cause for that detainer; or<br>2.  Warrant from a judicial officer.<br><br>… The Las Vegas Metropolitan Police Department continues to work with our federal law enforcement partners and will continue to provide professional services to the Las Vegas community regardless of their immigration status in United States.<br><br>**Via Press Release on: July 14, 2014.** |

# EXHIBIT P



**U.S. Department of Justice**

Office of Justice Programs

*Washington, D.C. 20531*

November 1, 2017

Kathleen Howard
Executive Director
California Board of State and Community Corrections
2590 Venture Oaks Way, Ste. 200
Sacramento, CA 95833

Dear Ms. Howard,

Your FY 2016 Byrne JAG grant award required you to comply with 8 U.S.C. § 1373; to undertake a review to validate your jurisdiction's compliance with 8 U.S.C. § 1373; and to submit documentation, including an official legal opinion from counsel, adequately supporting the validation. Thank you for your recent submission. The Department of Justice has reviewed your submission, all attached documentation, and your jurisdiction's laws, policies, and practices relating to compliance with section 1373, to the extent they were provided or are readily available.

This letter is to inform you that, based on a preliminary review, the Department has determined that the following laws, policies, or practices may violate 8 U.S.C. § 1373, depending on how your jurisdiction interprets and applies them. These laws, policies, or practices include, but may not be limited to:

- SB 54/CA Code § 7284.6. Part (a)(1)(C) and (D) state that California law enforcement agencies shall not provide "information regarding a person's release date . . . [or] home address." Part (e), however, states that this law does not "prohibit or restrict . . . sending . . . information regarding . . . immigration status" to federal immigration authorities. In order to comply with 8 U.S.C. § 1373, the Department has determined that California would need to certify that it interprets and applies these provisions to not restrict California officers from sharing information regarding immigration status with federal immigration officers, including information regarding release date and home address. The Department has determined that California would also need to certify that it has communicated this interpretation to its officers and employees. If California cannot provide this certification, the Department has determined that these provisions violate section 1373(a).

1

- <u>SB 54/CA Code § 7284.6.</u> Part (a)(1)(A) states that California law enforcement agencies "shall not . . . inquir[e] into an individual's immigration status." Under 8 U.S.C. § 1373(b)(1), however, California may not "in any way restrict" the "requesting" of "information regarding . . . immigration status" from federal immigration officers. Part (e) states that this does not "prohibit or restrict . . . requesting from federal immigration authorities immigration status information." In order to comply with 8 U.S.C. § 1373, the Department has determined that California would need to certify that it interprets and applies this provision to not restrict California officers and employees from requesting information regarding immigration status from federal immigration officers. The Department has determined that California would also need to certify that it has communicated this interpretation to its officers and employees. If California cannot provide this certification, the Department has determined that this provision violates section 1373(b).

Your jurisdiction may submit a response to this preliminary assessment, as well as any additional evidence you would like the Department to consider, before it reaches its final determination. Please submit all additional documentation by November 13, 2017. Once the Department has had an opportunity to review your submission, the Department will notify you of its final determination.

This letter reflects the Department's preliminary assessment of your jurisdiction's compliance with 8 U.S.C. § 1373. This letter does not constitute final agency action and nothing in this letter creates any right or benefit enforceable at law against the United States. Additionally, as the United States continues to collect information about your jurisdiction, it reserves the right to identify additional bases of potential violations of 8 U.S.C. § 1373.

Sincerely,

Alan Hanson
Acting Assistant Attorney General

2

# EXHIBIT Q

## JUSTICE NEWS

**Department of Justice**

Office of Public Affairs

FOR IMMEDIATE RELEASE                                        Thursday, October 12, 2017

## Justice Department Provides Last Chance for Cities to Show 1373 Compliance

The Justice Department today responded to seven jurisdictions following a preliminary assessment of the jurisdictions' compliance with 8 U.S.C. 1373. These jurisdictions were identified in a May 2016 report by the Department of Justice's Inspector General as having laws that potentially violate 8 U.S.C. 1373.

The following jurisdictions have preliminarily been found to have laws, policies, or practices that may violate 8 U.S.C. 1373:

- Cook County, Illinois;

- Chicago, Illinois;

- New Orleans, Louisiana;

- New York, New York; and

- Philadelphia, Pennsylvania.

The department found no evidence that the following jurisdictions are currently out of compliance with 8 U.S.C. 1373:

- Milwaukee County, Wisconsin; and

- the State of Connecticut.

The department also previously sent letters to the following jurisdictions notifying them that the department found no evidence that they are currently out of compliance with 8 U.S.C. 1373:

- Clark County, Nevada; and

- Miami-Dade County, Florida.

Jurisdictions that were found to have possible violations of 8 U.S.C 1373 will have until Oct. 27, 2017 to provide additional evidence that the interpretation and application of their laws, policies, or practices comply with the statute.

"Jurisdictions that adopt so-called 'sanctuary policies' also adopt the view that the protection of criminal aliens is more important than the protection of law-abiding citizens and of the rule of law," said Attorney General Jeff Sessions. "I commend the Milwaukee County Sheriff's Office and the State of Connecticut on their commitment to complying with Section 1373, and I urge all jurisdictions found to be out of compliance in this preliminary review to reconsider their policies that undermine the safety of their residents. We urge jurisdictions to not only comply with Section 1373 but to establish sensible and effective partnerships to properly process criminal aliens."

---

**Attachment(s):**
Download Chicago 1373 Compliance Determination Letter
Download Connecticut 1373 Compliance Determination Letter
Download Cook County 1373 Compliance Determination Letter
Download Milwaukee County 1373 Compliance Determination Letter
Download New Orleans 1373 Compliance Determination Letter
Download New York 1373 Compliance Determination

Letter
Download Philadelphia 1373 Compliance Determination Letter

**Topic(s):**
Immigration

**Component(s):**
Office of the Attorney General

**Press Release Number:**
17-1140

*Updated October 12, 2017*

# EXHIBIT R



**U.S. Department of Justice**

Office of Justice Programs

*Washington, D.C. 20531*

October 11, 2017

The Honorable Jim Kenney
City of Philadelphia
1401 JFK Blvd., Room 1430
Philadelphia, PA  19102-1687

Dear Mayor Kenney,

Your FY 2016 Byrne JAG grant award, required you to comply with 8 U.S.C. § 1373; to undertake a review to validate your jurisdiction's compliance with 8 U.S.C. § 1373; and to submit documentation, including an official legal opinion from counsel, adequately supporting the validation.  Thank you for your recent submission. The Department of Justice has reviewed your submission, all attached documentation, and your jurisdiction's laws, policies, and practices relating to compliance with section 1373, to the extent they were provided or are readily available.

This letter is to inform you that, based on a preliminary review, the Department has determined that your jurisdiction appears to have laws, policies, or practices that violate 8 U.S.C. § 1373.  These laws, policies, or practices include, but may not be limited to:

- Executive Order No. 5-16.  Section 1 of the Executive Order states that notice of a person's release from custody shall not be provided, "unless such person is being released after conviction for a first or second degree felony involving violence and the detainer is supported by a judicial warrant."[1]  The Department has determined that this section restricts the sharing of information regarding immigration status in violation of 8 U.S.C. § 1373(a).

- Police Commissioner Memorandum No. 01-06. Section III.C of the Memorandum states that "immigrants who are victims of crimes will not have their status as an immigrant transmitted in any manner."  The Department has determined that this Memorandum restricts the sharing of information regarding immigration status in violation of 8 U.S.C.

---

[1] An ICE detainer form ordinarily requests that a jurisdiction (1) provide advance notice of the alien's release; and (2) maintain custody of the alien for up to 48 hours beyond the scheduled time of release.  The Department is not relying on Philadelphia's restriction of the latter form of cooperation in this preliminary assessment.

§ 1373(a).  It is not the Department of Justice's nor the Department of Homeland Security's policy or practice to request information from state and local jurisdictions regarding the immigration status of victims.  There are, however, instances where the Department finds that requesting this information could be appropriate, such as where a person is both a perpetrator and a victim.

Additionally, based on this preliminary review, the Department has noted that the following laws, policies or practices may violate 8 U.S.C. § 1373, depending on how your jurisdiction interprets and applies them.  These laws, policies, or practices include, but may not be limited to:

- <u>Executive Order No. 8-09</u>. Section 2(b) of the Executive Order states that police officers "shall not . . . inquire about a person's immigration status," unless certain limited exceptions apply.  Under 8 U.S.C. § 1373(b)(1), however, Philadelphia may not "in any way restrict" the "requesting" of "information regarding . . . immigration status" from federal immigration officers.  On its face, the Department has determined that the Executive Order appears to bar Philadelphia officers from requesting information regarding immigration status from federal immigration officers.  In order to comply with 8 U.S.C. § 1373, the Department has determined that Philadelphia would need to certify that it interprets and applies this Executive Order to not restrict Philadelphia officers and employees from requesting information regarding immigration status from federal immigration officers.  The Department is thus requesting Philadelphia to certify that it has communicated this interpretation to its officers and employees.  If Philadelphia cannot provide this certification, the Department has determined that this provision violates section 1373(b).

- <u>Executive Order No. 8-09</u>.  Section 3 of the Executive Order states that Philadelphia officers and employees "shall [not] disclose" information "relating to an individual's immigration status."  Section 3(b)(2), however, allows disclosure when "required by law."  In order to comply with 8 U.S.C. § 1373, the Department has determined that Philadelphia would need to certify that it interprets and applies this Executive Order to not restrict Philadelphia officers from sharing information regarding immigration status with federal immigration officers.  The Department has also determined that Philadelphia would need to certify that it has communicated this interpretation to its officers and employees.  If Philadelphia cannot provide this certification, the Department has determined that this provision violates section 1373(a).

- <u>Police Commissioner Memorandum No. 01-06</u>.  Section III.A of the Memorandum states that officers shall not transmit "information relating to an immigrant" unless "required by law" or certain other exceptions apply.  In order to comply with 8 U.S.C. § 1373, the Department has determined that Philadelphia would need to certify that it interprets and applies this policy to not restrict Philadelphia officers and employees from sharing

2

information regarding immigration status with federal immigration officers.  The Department has also determined that Philadelphia would need to certify that it has communicated this interpretation to its officers and employees.  If Philadelphia cannot provide this certification, the Department has determined that this provision violates section 1373(a).

Your jurisdiction may submit a response to this preliminary assessment, as well as any additional evidence you would like the Department to consider, before it reaches its final determination.  Please submit all additional documentation by October 27, 2017.  Once the Department has had an opportunity to review your submission, the Department will notify you of its final determination.

This letter reflects the Department's preliminary assessment of your jurisdiction's compliance with 8 U.S.C. § 1373.  This letter does not constitute final agency action and nothing in this letter creates any right or benefit enforceable at law against the United States. Additionally, as the United States continues to collect information about your jurisdiction, it reserves the right to identify additional bases of potential violations of 8 U.S.C. § 1373.

Sincerely,

Alan Hanson
Acting Assistant Attorney General

3

# EXHIBIT S

**News**Room

6/13/17 Fed. News Serv. Transcripts (Pg. Unavail. Online)
2017 WLNR 18737622

Federal News Service Transcripts
Copyright (c) 2017 Federal News Service

June 13, 2017

H Approps, Subcommittee on Homeland Security Hearing on the ICE and CBP F.Y. 2018 budget

Witnesses: ICE Acting Director Thomas Homan; CBP Executive Assistant Commissioner Todd Owen; and U.S. Border Patrol Acting Chief Carla Provost testify Time: 10:00:00 Date: 2017-06-13

CARTER: I'm going to call this subcommittee to order. Welcome, everybody. We're glad everyone's here.

And I want to welcome our panel of witnesses. Today we have John Wagner, executive assistant commissioner of CBP for field operations. Chief Carla Provost, acting chief of the Border Patrol. And Thomas Homan, acting director of ICE. Welcome each and every one of you. We appreciate very much your coming here on this important issue.

This subcommittee is holding a hearing on the budget request of two DHS components, ICE and CBP. And this is for couple of reasons. The first is practical. Chairman Frelinghuysen wants all appropriations bills reported out the full committee before the August recess. And given the late submissions from -- these are late submissions for 2018 budget request, we are operating on a compressed schedule in order to meet this objective.

Having both components also provides an opportunity to hear how they operate jointly, and how those operations have a direct impact on the assumptions underlying their budget requests.

Let me state at the outset that I support the proposed budget increases for both CBP and ICE. Thankfully, illegal immigration is down. However, the border is still vulnerable and gaining operational control remains an imperative.

In my opinion, technology solutions that improve situational awareness and infrastructure that slows illegal crossings makes the country safer. Too often the discussion about border security revolves around illegal immigration, which is certainly part of the story.

The rest of the story is that illegal immigrants can exploit vulnerabilities in the nation's border, and if they can do it, so can the terrorist, drug smuggling and human trafficking organizations. This is unacceptable. It's time to change the dynamic and the budget request for CBP and ICE is a start in the right direction. The fiscal year 2018 budget request for CBP is $13.9 billion, an increase of $1.7 billion over the amount provided in fiscal year 2017. This includes $1.7 billion for new physical infrastructure.

CARTER: Thank you, Mr. Price. I'm going to go to Mr. Culberson next. And I'm going to have to surrender the chair to Mr. Culberson. I've got to leave. We've gone over. Everybody but Mr. Fleischmann has gone over today our five minutes. And I intended that. You are a very important part of what we do in this department. And thank you for what you do, all of you. I can tell you from experience of 35 years that it is dangerous for an officer to approach a resident. In fact, I believe more officers are killed or injured going to domestic disturbances than probably any other single events, when they're just fighting in the house, and yet the officer gets killed.

And so when you make it unfortunate that the only way they can do their job is go interfere with families, they are at higher risk sometimes than any other place where they go and do their job. So -- in defense of what Mr. Homan is saying, I agree with him. And it makes absolutely no sense to me over my experience of multiple jails that I had oversight over, that they don't allow people to interview in jails.

But that's a different question. And I wanted to end by saying I agree with everything you had to say. I've got to go. God bless you. Thank you for what you do.

Mr. Culberson, thank you.

CULBERSON: Thank you, Judge. Director Homan, Commissioner Wagner, Chief Provost, I want to thank you on behalf of the people of the United States for your service in protecting us. Director Homan, you're exactly right. We're a nation of laws. And if the law is not enforced, if there's no consequence to illegal activity, there's no way to get it under control.

I'm reminded of the very first inscription on the first coin ever minted in the Republic of Mexico was liberty and law, because our liberty does depend on law enforcement. And deeply appreciate the commitment of each and every one of your officers have to keeping us all safe by enforcing the law.

And a great example of that is the fact that I've seen just from the president's open and very close direction that the law is going to be enforced and the border secured that I've seen numbers that illegal crossings have declined by as much as 70 percent since January. Is that accurate?

PROVOST: Those numbers have declined dramatically. The lowest numbers we've seen in several years.

CULBERSON: It is encouraging that the president's executive order -- that the border will be secured and the laws enforced and that countries that refuse to issue travel documents to people that are in the United States illegally that are going to be deported, that countries that will not issue travel documents to those individuals, that that's going to be a pre-condition to any negotiation or discussion with those countries.

And I heard you mention, Director Homan, that there used to be 23 to 24 recalcitrant countries, and that's now down to about 11, just enforcing the law, just common sense. Works.

And the definition of sanctuary cities is actually very clear cut. There was a law passed, David, in 1996 that the -- was passed for the specific purpose of stopping sanctuary cities from shielding people in the country illegally. It's title eight of the U.S. Code, section 1373, and it says in pertinent part that federal, state or local government entity or official may not prohibit or -- and here's the key part -- in any way restrict sharing information about people in their custody, their immigration status, with federal authorities.

When Kate Steinle was murdered last summer, it affected me and I know everyone in the country very, very deeply. I chair the Commerce, Justice, Science Appropriations Subcommittee. Have worked for years to see that our border is secured and our law is enforced. And when I discovered 1373, I worked quietly and very effectively with Attorney General Loretta Lynch -- and this is not widely known -- but I persuaded her last summer to change Department of Justice policy last July, and the Department of Justice issued new guidelines that they notified -- DOJ notified every county, city, and state in the country that if they did not comply with 1373, they were considered a sanctuary jurisdiction and they would forfeit all their federal law enforcement grant money.

PRICE: Will the gentleman yield?

CULBERSON: Yes, sir.

PRICE: I understand very well what's in the law. And I understand very well the obligation of local jurisdictions to share information with immigration authorities about criminals who have been in custody who are being released. And the whole origin of the focus on dangerous criminals, you may remember years ago came when we found that tens of thousands of people were being released from America's prisons at all levels without immigration even knowing who they were. This was with -- I remember ICE Commissioner Julie Myers' testimony and the aftermath of that, this was the beginning of this effort.

But when I say sanctuary cities is a very porous definition, I'm referring to some pretty significant experience in the state of North Carolina and other places where people use that term to cover all sorts of exercises of discretion by local law enforcement that local law enforcement testifies very convincingly that it needs.

CULBERSON: Yeah, we're not talking about making local law enforcement that arm of federal law enforcement. And specifically this is a very narrow and precise definition that local and state jurisdictions cannot interfere in any way with sharing information with federal authorities about illegals in their custody.

So I made certain that the previous administration, Attorney General Lynch, changed the Department of Justice's federal grant policy and notified every jurisdiction in the country that unless they comply 100 percent of the time with 1373, that they would lose their eligibility for federal law enforcement grants and that policy with all the jurisdictions were notified last summer. They had a chance to cure it. They did not do it.

And when the new administration came in -- and frankly, one of the principal reasons that President Trump won the election was his promise to the country that our laws would be enforced, our border would be secure, our nation will be respected again, that the flag, our men and women in uniform and the military and our men and women in uniform in law enforcement will be respected.

Law enforcement is the foundation of all our liberties. And the Department of Justice inspector general at my request certified the top 10 sanctuary jurisdictions in the country, which includes the entire state of California, so this summer, the state of California will lose a minimum of $68 million, $69 million in federal law enforcement grant money, unless they repeal their state law shielding illegal aliens in state jails, in state prisons in California.

The state of Connecticut will lose all their federal law enforcement grant money this summer unless they repeal their law. New Orleans already changed their policy. As you said, the recalcitrant countries that refused to issue travel documents have already changed their policy. New Orleans has folded, and they have changed their sanctuary policy.

Miami-Dade changed their policy, so they agreed that if -- they didn't want to lose the federal money. New York City will lose $15 million this summer. Philadelphia will lose $1.7 million this summer. Cook County will lose a minimum of $3.7 million this summer. Milwaukee will lose about $1 million. And Clark County, Nevada, will lose $1.7 million.

Receiving federal money is not -- you know, receiving federal model is optional. And the policy that I was able to institute as chairman of the CGS Subcommittee and that President Trump and Attorney General Sessions and the president of the United States have now broadened to homeland security grants, as well, if you want federal money, follow federal law. It's very simple. We do this with our kids. My money, my rules. This is very simple.

So, Director Homan, I wanted to ask you. I've given you a copy of the memo that I'm prepared to list the initial 10 sanctuary jurisdictions that I already had certified as ineligible for federal law enforcement grants. Under the president's executive order, how many additional jurisdictions are you -- do you believe that you could identify that are in violation of 1373 that would no longer be eligible for federal law enforcement grants or homeland security grants?

HOMAN: I don't have that number in front of me, but I think it's well over 100 that have some sort of policy where they don't honor detainers or allow us access to the jails. I have to get back to you on the exact number.

CULBERSON: And you're in the process of identifying those right now so that they could be certified by the attorney general?

HOMAN: Yes. We got what we call the decline detainer report, which was a requirement through the executive order that we started. We pulled it back because there was some data issues with it. We've been meeting with the National Sheriff's Association last few weeks. We're really close to a final product. And that will help us identify those jurisdictions that don't cooperate.

CULBERSON: And it's important to note that the California judge that blocked temporarily President Trump's executive order on enforcing our immigration laws, who was appointed by President Obama, this judge in California explicitly upheld the ability of the administration to enforce section 1373, this law that the attorney general, at my request, used to certify these initial 10. There's about -- you say 100 sanctuary jurisdictions that you're working on right now to -- if I could, as soon as you have that list available, if you'd share it with me, I'd be grateful, because I'll be sure to help you expedite the certification of those jurisdictions so they don't -- it's their choice.

If they want to shield criminal illegal aliens in their custody from being deported from the United States, don't ask for federal money. Those days are over. You cannot receive federal money and shield dangerous criminals from being deported. I very grateful to you for the good work that you do to protect people of the United States and your officers and doing all that you can to help ensure that there are no more Kate Steinles. It means a great deal. HOMAN: Thank you very much for the comments and thank you for your work, but I'd be remiss if -- it's not really me. It's the 20,000 American patriots that work for ICE that put their lives on the line every day to uphold the laws of this country. So thanks to them.

CULBERSON: We deeply appreciate each and every one of you. And we've got your back. Thank you very much.

Dr. Harris?

HARRIS: Thank you very much. And also, you know, thanks to you as members of the law enforcement community of the United States, you don't get as much appreciation some days as you deserve.

CULBERSON: Thank you, Mr. Price. I can tell you that the 1373, the definition of sanctuary cities is, in the first instance, very clear under 1373 that local and state jurisdictions cannot interfere in any way. So it is a 100 percent compliance requirement that 100 percent of the time state and local jurisdictions have to share information with ICE.

Under the directive that the president has issued, the -- this is all designed to encourage cooperation. And all of us I know respect law enforcement. All the laws that we pass are designed to encourage local and federal law enforcement officers to communicate, cooperate, because the goal is public safety, which we're all devoted to. We're all here to make sure that our constituents and our fellow citizens are safe and secure. And we deeply appreciate your commitment to that and, again, it's the local jurisdiction's decision to walk away from the federal money. If they choose to -- if they want to be a sanctuary city, that's their decision. Just don't ask for federal money. Those days are over.

Yes, ma'am?

ROYBAL-ALLARD: I just want to emphasize what's being said. We really do need clarification as to what is going to be considered a sanctuary city, because I know that, for example, some of the cities in California may cooperate if somebody is in jail, just as Mr. Homan has said, they will do that, but they have refused to -- when they stop somebody for other reasons, a traffic violation or something, they have refused to ask if that person or anybody that happens to be in the vehicle or wherever they're at, if -- for their immigration status. And in some cases, where police have said, no, we're not going to ask people about their immigration status because it -- then they're not going to want to work with us with crimes, they have been tagged as a sanctuary city, where they may cooperate in the jails, but they will not cooperate by asking immigration status when they stop.

So to me, that's just another example of why we need clarity as to what designates a sanctuary city.

CULBERSON: Director Homan?

HOMAN: I understand the confusion. And, sir, I'm not trying to avoid the question. DHS leadership is working with DOJ leadership to try to come up with an operational meaning of what we're going to consider for operational reasons the sanctuary cities. So that's still in discussion.

As soon as we, you know, get some closer to clarity, we certainly will share it with you, but that's something that we're struggling with, right? We all understand 1373, but operationally what does it mean to us? So DHS is working with DOJ to come up with some sort of clear operational instructions to law enforcement agency on what a sanctuary city is and how we define it.

CULBERSON: But it begins with cooperation.

HOMAN: It begins with cooperation. And one thing I can, sir, to 1373, not only sharing the information, but allow us access to the jails.

CULBERSON: Right.

HOMAN: Because secure communications -- if someone gets arrested and they take their fingerprints, those fingerprints are bounced off DHS databases. We'll drop a detainer on someone we have a record on. However, if you're illegally in the United States, you never were encountered by the Border Patrol or ICE before, we're not going to get a feedback from DHS database. So you can be in the country illegally, and we won't have your fingerprints.

That's why we need access to the jails to talk about people who when they came into custody they claim they were foreign born. We need to talk to those folks and find out, do you have status or not have status? Because a lot of criminal aliens we have not encouraged before, so we need to make sure we get into the jails and talk to these folks who are lacking the biometric information to make sure we don't release those folks to the street, too.

So information sharing has to include access to the jails, because a lot of people -- we call them foreign born no match. We don't know who they are. We need to get in there and do an interview and find out who they are.

CULBERSON: So I think it's fair to say we all agree that the starting point is cooperation and sharing information 100 percent of the time. Director Homan, is that basically accurate?

HOMAN: Yes.

CULBERSON: So if jurisdiction fails to cooperate, fails to share information 100 percent of the time, they're going to be considered a sanctuary jurisdiction under the guidelines issued by the DOJ last summer. I had this done last summer. I just didn't make a lot of waves about it.

And by the way, the other part of the policy that DOJ put in place at my request is that local law enforcement agencies have to certify under oath that they are cooperating 100 percent of the time or they're in violation of the False Claims Act, which is a felony punishable by five years in prison. Therefore, the city of Santa Clara -- Santa Clara County, which was a party to the litigation that led to the order of the judge in San Francisco, did not even apply for SCAAP funding, COPS funding, or Byrne JAG funding. They dropped their application because they knew they were a sanctuary jurisdiction. They didn't even bother to ask for the federal money. And that's their decision. If you want to protect criminal illegal aliens in your custody, don't ask for federal money, because you're not going to get it.

One final question, if you could, Director Holman. In addition to identifying for all of us those 100 jurisdictions that you consider sanctuaries -- because the goal here is to protect lives, so there's no more Kate Steinles. How many jurisdictions like Santa Clara County either did not apply for federal funding or changed their policy, like Miami-Dade or New Orleans? And I want to thank for the record the county commissioners in Miami-Dade County and the city council in New Orleans for changing their policy to cooperate, because that's saving lives, isn't it?

HOMAN: Yes, I have to get back to the information. I know we've had some jurisdictions come back to the table and are now cooperating, especially after the first iteration of the declined detainer report went out. So we'll definitely get back to you that information, who's now cooperating, when they weren't, and what changed since the executive order.

I know we track that, because we report on the declined detainer report, at least the last iteration, so I'll get back to you as soon as we can on that information.

CULBERSON: And I want to stress, Ms. Roybal-Allard and Mr. Price, the goal is for these jurisdictions to change their policy. We don't want them to walk away from their federal money. We want them to protect lives and property by changing their policy and cooperating. That's the goal. It's the goal we all share.

HOMAN: Absolutely. And my goal is, again, protecting lives. I mean, I need to do everything I can to every law enforcement agent and officer that works for ICE to lessen the risk of their jobs. If they can arrest a criminal alien inside the safety of a jail rather than knocking on a door, that's the right thing to do, not only for public safety, but for the officer safety.

# EXHIBIT T

 

March 29, 2017

The Honorable Tani G. Cantil-Sakauye
Chief Justice
Supreme Court of California
350 McAllister Street
San Francisco, California  94102

Dear Chief Justice Cantil-Sakauye:

Thank you for your March 16, 2017 letter regarding concern about reports from some California trial courts that suggest law enforcement officers, engaged in the performance of their duties with U.S. Immigration and Customs Enforcement (ICE), are "stalking" individuals at courthouses to make arrests.

As the chief judicial officer of the State of California, your characterization of federal law enforcement officers is particularly troubling.  As you are aware, stalking has a specific legal meaning in American law, which describes criminal activity involving repetitive following or harassment of the victim with the intent to produce fear of harm.  The arrest of persons in a public place based upon probable cause has long been held by the United States Supreme Court as constitutionally permissible.  *See U.S. v. Watson*, 432 U.S. 411 (1976).  Further, ICE officers and agents are authorized by federal statute to make arrests of aliens where probable cause exists to believe that such aliens are in violation of immigration laws.  *See* 8 U.S.C. § 1357.

To be clear, the arrest of individuals by ICE officers and agents is predicated on investigation and targeting of specific persons who have been identified by ICE and other law enforcement agencies as subject to arrest for violations of federal law.  ICE does not engage in "sweeps" or other indiscriminate arrest practices.

The Honorable Tani G. Cantil-Sakauye
Page 2

Some jurisdictions, including the State of California and many of its largest counties and cities, have enacted statutes and ordinances designed to specifically prohibit or hinder ICE from enforcing immigration law by prohibiting communication with ICE, and denying requests by ICE officers and agents to enter prisons and jails to make arrests. Such policies threaten public safety, rather than enhance it. As a result, ICE officers and agents are required to locate and arrest these aliens in public places, rather than in secure jail facilities where the risk of injury to the public, the alien, and the officer is significantly increased because the alien can more readily access a weapon, resist arrest, or flee. Because courthouse visitors are typically screened upon entry to search for weapons and other contraband, the safety risks for the arresting officers and persons being arrested are substantially decreased.

We agree with you that the enforcement of our country's immigration laws is necessary, and that we should strive to ensure public safety and the efficient administration of justice. Therefore, we would encourage you to express your concerns to the Governor of California and local officials who have enacted policies that occasionally necessitate ICE officers and agents to make arrests at courthouses and other public places.

The men and women of federal law enforcement perform their duties with the highest degree of professionalism and public service. As ICE undertakes the necessary enforcement of our country's immigration laws, its officers and agents will continually improve their operations to meet the challenges to effective enforcement, including state and local policies that hinder their efforts. While these law enforcement personnel will remain mindful of concerns by the public and governmental stakeholders regarding enforcement activities, they will continue to take prudent and reasonable actions within their lawful authority to achieve their mission.

Sincerely,

Jefferson B. Sessions III
Attorney General

John F. Kelly
Secretary of Homeland Security

# EXHIBIT U

**U.S. Citizenship and
Immigration Services**

# Frequently Asked Questions

*FAQs updated April 25, 2017*

**General Information for All Requestors**

- **What is Deferred Action for Childhood Arrivals?**
- **DACA Process**
- **Background Checks**
- **After USCIS Makes a Decision**

**Initial Requests for DACA**
**Renewal of DACA**
**Travel**
**Criminal Convictions**
**Miscellaneous**

## I. General Information for All Requestors

### A. What is Deferred Action for Childhood Arrivals?

As the Department of Homeland Security (DHS) continues to focus its enforcement resources on the removal of individuals who pose a danger to national security or a risk to public safety, DHS will exercise prosecutorial discretion as appropriate to ensure that enforcement resources are not expended on low priority cases, such as individuals who came to the United States as children and meet other key guidelines. Individuals who demonstrate that they meet the guidelines below may request consideration of deferred action for childhood arrivals (DACA) for a period of two years, subject to renewal for a period of two years, and may be eligible for employment authorization.

You may request consideration of DACA if you:

1. Were under the age of 31 as of June 15, 2012;
2. Came to the United States before reaching your 16th birthday;
3. Have continuously resided in the United States since June 15, 2007, up to the present time;
4. Were physically present in the United States on June 15, 2012, and at the time of making your request for consideration of deferred action with USCIS;
5. Had no lawful status on June 15, 2012, meaning that:

A11: No. If you are not in removal proceedings but believe that you meet the guidelines, you should submit your DACA request to USCIS under the process outlined below.

**Q12: Can I request consideration of DACA from USCIS if I am in immigration detention under the custody of ICE?**
A12: No. If you are currently in immigration detention, you may not request consideration of DACA from USCIS. If you think you may meet the guidelines of this process, you should identify yourself to your deportation officer or Jail Liaison. You may also contact the ICE Field Office Director. For more information, visit ICE's website at www.ice.gov/daca.

**Q13: If I am about to be removed by ICE and believe that I meet the guidelines for consideration of DACA, what steps should I take to seek review of my case before removal?**
A13: If you believe you can demonstrate that you meet the guidelines and are about to be removed, you should immediately contact the Law Enforcement Support Center's hotline at 1-855-448-6903 (staffed 24 hours a day, 7 days a week).

**Q14: What should I do if I meet the guidelines of this process and have been issued an ICE detainer following an arrest by a state or local law enforcement officer?**
A14: If you meet the guidelines and have been served a detainer, you should immediately contact the Law Enforcement Support Center's hotline at 1-855-448-6903 (staffed 24 hours a day, 7 days a week).

**Q15: If I accepted an offer of administrative closure under the case-by-case review process or my case was terminated as part of the case-by-case review process, can I be considered for deferred action under this process?**
A15: Yes. If you can demonstrate that you meet the guidelines, you will be able to request consideration of DACA even if you have accepted an offer of administrative closure or termination under the case-by-case review process.

**Q16: If I declined an offer of administrative closure under the case-by-case review process, can I be considered for deferred action under this process?**
A16: Yes. If you can demonstrate that you meet the guidelines, you will be able to request consideration of DACA even if you declined an offer of administrative closure under the case-by-case review process.

**Q17: If my case was reviewed as part of the case-by-case review process but I was not offered administrative closure, can I be considered for deferred action under this process?**
A17: Yes. If you can demonstrate that you meet the guidelines, you will be able to request consideration of DACA even if you were not offered administrative closure following review of your case as part of the case-by-case review process.

**Q18: Can I request consideration of DACA under this process if I am currently in a nonimmigrant status (e.g. F-1, E-2, H-4) or have Temporary Protected Status (TPS)?**
A18: No. You can only request consideration of DACA under this process if you currently have no immigration status and were not in any lawful status on June 15, 2012.

**Q19: Will the information I share in my request for consideration of DACA be used for immigration enforcement purposes?**
A19: Information provided in this request is protected from disclosure to ICE and CBP for the purpose of immigration enforcement proceedings unless the requestor meets the criteria for the issuance of a Notice To Appear or a referral to ICE under the criteria set forth in USCIS' Notice to Appear guidance (www.uscis.gov/NTA). Individuals whose cases are deferred pursuant to DACA will not be referred to ICE. The information may be shared with national security and law enforcement agencies, including ICE and CBP, for purposes other than removal, including for assistance in the consideration of DACA, to identify or prevent fraudulent claims, for national security purposes, or for the investigation or prosecution of a criminal offense. The above information sharing policy covers family members and guardians, in addition to the requestor. This policy, which may be modified, superseded, or rescinded at any time without notice, is not intended to, does not, and may not be relied upon to create any right or benefit, substantive or procedural, enforceable by law by any party in any

# EXHIBIT V

 **Los Angeles** Police Department



Official Site of **The LOS ANGELES POLICE DEPARTMENT**

home (/home)

# News Release

Tuesday, March 21, 2017



# Decline in Reporting of Crime Among Hispanic Population NR17083ma

**Los Angeles:** Today during a press conference which Los Angeles Police Department Chief Charlie Beck attended, he voiced a concern over statistics collected by the LAPD which indicate there has been a decline in the reporting of crime among Hispanic populations. Chief Beck specifically mentioned a nearly 10% decline in the reporting of spousal abuse and 25% decline in the reporting of rape. While there is no direct evidence that the decline is related to concerns within the Hispanic community regarding immigration, the Department believes deportation fears may be preventing Hispanic members of the community from reporting when they are victimized. Chief Beck wants to reiterate the importance of reporting crime to the LAPD and assure the community the focus of our investigations is to create a safer community for everyone.

**Los Angeles Police Department**
**Rape (Rape I & Rape II) by Victim Descent**
**2017 vs 2016 (thru 3/18)**

| Rape I & Rape II | YTD '17 | YTD '16 | Difference | % Change |
|---|---|---|---|---|
| Other Asian (A) | 6 | 5 | 1 | 20.0% |
| Black (B) | 102 | 100 | 2 | 2.0% |
| Chinese (C) | 1 | 0 | 1 | NC |
| Filipino (F) | 0 | 1 | -1 | -100.0% |
| Guamanian (G) | 0 | 0 | 0 | NC |
| Hispanic/Latin/Mexican (H) | 123 | 164 | -41 | -25.0% |
| American Indian/Alaskan Native (I) | 0 | 0 | 0 | NC |
| Japanese (J) | 0 | 0 | 0 | NC |
| Korean (K) | 0 | 0 | 0 | NC |
| Other (O) | 17 | 19 | -2 | -10.5% |
| Pacific Islander (P) | 0 | 0 | 0 | NC |
| Vietnamese (V) | 0 | 0 | 0 | NC |
| White (W) | 93 | 102 | -9 | -8.8% |
| Unknown (X) | 2 | 1 | 1 | 100.0% |
| Total Rape I & Rape II | 344 | 392 | -48 | -12.2% |

**Los Angeles Police Department**
**Spousal Abuse (Agg & Simple) Assaults by Victim Descent**
**YTD '17 vs '16 (Thru February)**

| Spousal Abuse (Agg & Simple) Assaults | YTD '17 | YTD '16 | Difference | % Change |
|---|---|---|---|---|
| Other Asian (A) | 34 | 33 | 1 | 3.0% |
| Black (B) | 617 | 662 | -45 | -6.8% |
| Filipino (F) | 2 | 2 | 0 | 0.0% |
| Hispanic/Latin/Mexican (H) | 1,092 | 1,210 | -118 | -9.8% |
| American Indian/Alaskan Native (I) | 1 | 0 | 1 | NC |
| Korean (K) | 3 | 4 | -1 | -25.0% |
| Other (O) | 113 | 122 | -9 | -7.4% |
| Pacific Islander (P) | 1 | 0 | 1 | NC |
| White (W) | 391 | 391 | 0 | 0.0% |
| Unknown (X) | 3 | 3 | 0 | 0.0% |
| Total Spousal Abuse (Agg & Simple) Assaults | 2,257 | 2,427 | -170 | -7.0% |

During non-business hours or on weekends, calls should be directed to 1-877-LAPD-24-7 (1-877-527-3247). Anyone wishing to remain anonymous should call the L.A. Regional Crime Stoppers at 1-800-222-TIPS (800-222-8477) or go directly to www.lacrimestoppers.org.

Tipsters may also visit www.lapdonline.org, and click on "Anonymous Web Tips" under the "Get Involved-Crime Stoppers" menu to submit an online tip. Lastly, tipsters may also download the "P3 Tips" mobile application and select the L.A. Regional Crime Stoppers as their local program.

 Follow @LAPDHQ (http://twitter.com/LAPDHQ)     LAPD on Facebook

(http://www.facebook.com/thelapd?sk=info)     Follow @lapolicefdtn

(http://twitter.com/lapolicefdtn)

 (/iwatchla)

## Contact **Us**

LAPD Contacts (/contact_us)

Emergency: 911
Non-Emergency: 877-ASK-LAPD

100 West 1st Street
Los Angeles, CA 90012

▯ File a commendation or
Complaint (/our_communities
/content_basic_view/9217)

## Stay Connected



(htt
p://
ww
w.fa
ceb
ook.
com
/the
lapd
?sk=
info)

(htt
p://t
witt
er.c
om/
)

(htt
p://i
nsta
gra
m.c
om
/lap
dhq)

## Get **Involved**

- iWatch (/iwatchla)
- Joint Regional Intelligence
  Center (http://jric.org
  /default.aspx?AspxAutoDetectC
  ookieSupport=1)
- LA Regional Crime Stoppers
  (/la_regional_crime_stoppers)
- LA Metro Task Force On Human
  Trafficking (800-655-4095)
- Volunteer (/our_communities
  /content_basic_view/733)
- Reward Bulletin
  (/reward_bulletin_listing)
- DHS.gov/alerts (http://DHS.gov
  /alerts)




(https://itunes.ap
ple.com/us/app
/lapd/id9526816
77?ls=1&mt=8)

(https://play.goo
gle.com/store
/apps/details?id=
com.lapd)

## Our **Galleries**



10/18/2017 1:14:57PM
Translate this page:

| Select Language | ▼ |

Site by Radar Blue, Inc. (http://www.radarblue.com)

Copyright © 2017 Los Angeles Police Foundation
(http://lapolicefoundation.org/) and the LAPD (/). All Rights
Reserved

# EXHIBIT W

SENATE THIRD READING
SB 54 (De León)
As Amended July 10, 2017
Majority vote

SENATE VOTE: 27-12

| Committee | Votes | Ayes | Noes |
|---|---|---|---|
| Public Safety | 5-2 | Jones-Sawyer, Gonzalez Fletcher, Quirk, Rubio, Santiago | Lackey, Flora |
| Judiciary | 8-3 | Mark Stone, Chau, Chiu, Cristina Garcia, Holden, Kalra, Reyes, Ting | Gallagher, Kiley, Maienschein |
| Appropriations | 11-5 | Gonzalez Fletcher, Bloom, Bocanegra, Bonta, Calderon, Chau, Eggman, Friedman, Eduardo Garcia, Jones-Sawyer, Reyes | Bigelow, Brough, Fong, Gallagher, Obernolte |

**SUMMARY**: Limits the involvement of state and local law enforcement agencies in federal immigration enforcement.  Specifically, **this bill**:

1) States that law enforcement agencies shall not do any of the following:

   a) Use agency or department moneys, facilities, property, equipment, or personnel to investigate, interrogate, detain, detect, or arrest persons for immigration enforcement purposes, including, but not limited to, any of the following:

      i) Inquiring into an individual's immigration status;

      ii) Detaining an individual on the basis of a hold request;

      iii) Responding to requests for notification by providing release dates or other information unless that information is available to the public;

      iv) Providing information regarding a person's release date unless that information is available to the public;

      v) Providing personal information about an individual, including, but not limited to, the individual's home address or work address unless that information is available to the public;

      vi) Making, assisting, or participating in arrests based on civil immigration warrants;

      vii) Giving federal immigration authorities access to interview an individual in agency or department custody, except pursuant to a judicial warrant, and in accordance with this bill;

Alien Assistance Program (SCAAP) for housing individuals in prison who do not have documentation. This bill could potentially put this annual funding source at risk if CDCR is not able to share information for the purposes of applying for the program.

**COMMENTS**: According to the author, "The President's Executive Orders and the accompanying Department of Homeland Security memorandums outline a mass deportation strategy that will encompass a broad category of immigrants. These documents describe the federal government's plan to use local law enforcement as 'force multipliers' of immigration agents, relying heavily on police to help them deport the greatest number of people possible. Aggressive federal immigration enforcement strategies are already underway. ICE arrests in courthouses and outside of schools are alarming new trends that have had chilling effects in the immigrant community. Under the Trump administration, deportations have increased 40%, including 10,800 non-criminals whose only violation was to enter the country.

"When local police enforce immigration laws, they rapidly lose the trust of the undocumented community. Crimes go unreported for fear of deportation. The perpetrators roam free to strike again. Our communities become less – not more – safe.

"A report by the University of Illinois published in 2013 found that '70% of undocumented immigrants reported they are less likely to contact law enforcement authorities if they were victims of a crime.' Furthermore, according to the Los Angeles Times, Los Angeles Chief of Police Charlie Beck has stated that 'sexual assault reports have dropped 25% among the city's Latino population since the beginning of 2017 compared with the same period last year, adding that reports of domestic violence have fallen by 10%. Similar decreases were not seen in reports of those crimes by other ethnic groups.'

"California is familiar with the harmful effects of entangling local law enforcement agencies with immigration enforcement. Prior to its termination, the discredited 'Secure Communities' program (S-Comm) operated in California as an indiscriminate mass deportation program at great cost to California both financially and otherwise. According to a report prepared by Justice Strategies in 2012, when the Secure Communities program was still active, California taxpayers spent an estimated $65 million annually to detain people for Ice.

"Senate Bill 54, the California Values Act, will prevent state and local law enforcement agencies from acting as agents of Immigration and Customs Enforcement. Instead, it will keep them focused on community policing, rather than rounding up hardworking, honest immigrants who in many instances assist police in solving crimes rather than committing them."

**Analysis Prepared by**: David Billingsley / PUB. S. / (916) 319-3744          FN: 0001650

# EXHIBIT X

**SENATE RULES COMMITTEE**                                            SB 54
Office of Senate Floor Analyses
(916) 651-1520   Fax: (916) 327-4478

---

THIRD READING

---

Bill No:    SB 54
Author:     De León (D), et al.
Amended:    3/29/17
Vote:       21

---

SENATE PUBLIC SAFETY COMMITTEE:  5-2, 1/31/17
AYES:  Skinner, Bradford, Jackson, Mitchell,  Wiener
NOES:  Anderson, Stone

SENATE APPROPRIATIONS COMMITTEE: 5-2, 3/13/17
AYES:  Lara, Beall,  Bradford, Hill,  Wiener
NOES:  Bates, Nielsen

---

**SUBJECT:**  Law enforcement:  sharing data

**SOURCE:**   Author

---

**DIGEST:** This bill limits state and local law enforcement agencies involvement in immigration enforcement and ensures that eligible individuals are able to seek services from and engage with state agencies without regard to their immigration status.

*Senate Floor Amendments* of 3/29/17 make numerous changes to address issues raised by law enforcement, including 1) allowing local law enforcement to contact Immigration and Customs Enforcement (ICE) and transfer people of ICE, without a warrant, if the person was previously deported for a violent felony; 2) allowing response to notification request from ICE and releasing date information if that information is available to the public; 3) allowing ICE to interview people in custody or transfer to federal immigration authorities if there is a judicial warrant; 4) clarifying that local law enforcement can participate in a joint task force so long as immigration enforcements not the "primary" purpose; and 5) adding public libraries to the list of places that are safe zones.

**Comments**

According to the author:

> The purpose of this bill is to protect the safety and well-being of all Californians by ensuring that state and local resources are not used to fuel mass deportations, separate families, and ultimately hurt California's economy.
>
> The President has stated publicly that he will order the increased deportation of a broad category of immigrants and that doing so will be a top priority. Any expansion of federal deportation efforts will have a significant effect on California's economy and society.
>
> A relationship of trust between California's immigrant residents and our state and local agencies, including police, schools, and hospitals, is essential to carrying out basic state and local functions. That trust is threatened when state and local agencies are involved in immigration enforcement.
>
> According to the President Obama's Taskforce on 21st Century Policing, "immigrants often fear approaching police officers when they are victims of and witnesses to crimes and when local police are entangled with federal immigration enforcement. At all levels of government, it is important that laws, policies, and practices not hinder the ability of local law enforcement to build the strong relationships necessary to public safety and community well-being. It is the view of this task force that whenever possible, state and local law enforcement should not be involved in immigration enforcement."[1] A study conducted by the University of Illinois similarly found that 44 percent of Latinos are less likely to contact police officers if they have been the victim of a crime because they fear that police officers will use this interaction as an opportunity to inquire about their immigration status or that of people they know.[2]
>
> California is already familiar with the harmful effects of entangling local law enforcement agencies with immigration enforcement. Prior to its termination, the discredited "Secure Communities" program (S-Comm) operated in California as an indiscriminate mass

---

[1] Final Report of the President's Taskforce on 21st Century Policing (May 2016).
[2] Insecure Communities: Latino Perceptions of Police Involvement in Immigration Enforcement, Nik Theodore, Dep't of Urban Planning and Policy, University of Illinois at Chicago (May 2013)