CHAD A.  READLER
Acting Assistant Attorney General
ALEX G. TSE
United States Attorney
JOHN R.  TYLER
Assistant Director
W.  SCOTT SIMPSON (Va.  Bar #27487)
Senior Trial Counsel
ANTONIA KONKOLY
Trial Attorney
Department of Justice, Room 7210
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, NW
Washington, D.C.  20530
Telephone:      (202) 514-3495
Facsimile:      (202) 616-8470
E-mail:          scott.simpson@DOJ.gov
COUNSEL FOR DEFENDANTS
JEFFERSON B.  SESSIONS III, Attorney
General of the United States; ALAN R.
HANSON, Principal Deputy Assistant Attorney
General; and U.S. DEPARTMENT OF JUSTICE

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| STATE OF CALIFORNIA, ex rel.  XAVIER BECERRA, Attorney General of the State of California, <br><br> Plaintiff, <br><br> v. <br><br> JEFFERSON B.  SESSIONS III, Attorney General of the United States, *et al.*, <br><br> Defendants. | No.  3:17-cv-04701-WHO <br><br> **DEFENDANTS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION TO DISMISS** <br><br> Date:      February 28, 2018 <br> Time:      2:00 p.m. |

1

**TABLE OF CONTENTS**

2    INTRODUCTION ............................................................................................................. 1

3    ARGUMENT .................................................................................................................... 2

4    I.    THE CHALLENGED IMMIGRATION-RELATED BYRNE JAG CONDITIONS
        ARE LAWFUL ....................................................................................................... 2

        A.    The Access and Notice Conditions Are Authorized by Statute ................................ 2

        B.    The Challenged Conditions Comply with the Spending Clause ............................ 4

               1.   The Notice and Access Conditions are Unambiguous ...................................... 5

               2.   The Conditions Are Related to the Byrne JAG Program .................................. 6

        C.    Plaintiff's APA Claims Must Be Dismissed for Additional Reasons ...................... 8

               1.   The APA Claims Do Not Challenge Final Agency Action .............................. 8

               2.   The Challenged Conditions Are Not Arbitrary or Capricious ....................... 10

    II.   California's Claim for a Declaration Regarding its Statutes' Compliance with
        Section 1373 Should Be Dismissed .................................................................... 12

        A.    The Claim Regarding Compliance with Section 1373 Is Non-Justiciable ............. 12

               1.   California Lacks Standing to Seek a Ruling Regarding Any State

                    Statute Other Than the Values Act ................................................................... 12

               2.   California's Request for a Ruling Regarding the Values Act Is Unripe .......... 13

        B.    Alternatively, the Court Should Dismiss California's Claim for

             Declaratory Relief Regarding the Values Act on Its Merits ................................. 14

    III.   SECTION 1373 IS CONSISTENT WITH THE TENTH AMENDMENT ..................... 16

    CONCLUSION ............................................................................................................... 17

i

Defs.' Reply Re Motion to Dismiss
No. 3:17-cv-04701-WHO

# TABLE OF AUTHORITIES

**CASES**                                                                   **PAGE(S)**

*Abbott Labs. v. Gardner*,
    387 U.S. 136 (1967)................................................................................................ 9

*Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*,
    570 U.S. 205 (2013)........................................................................................... 2, 4

*All. for Open Soc'y Int'l, Inc. v. U.S. Agency for Int'l Dev.*,
    651 F.3d 218 (2d Cir. 2011) ................................................................................ 4

*All. for the Wild Rockies v. Peña*,
    865 F.3d 1211 (9th Cir. 2017) .......................................................................... 11

*Arizona v. United States*,
    567 U.S. 387 (2012)................................................................................. 1, 11, 16

*Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*,
    548 U.S. 291 (2006)............................................................................................ 4

*Bennett v. Spear*,
    520 U.S. 154 (1997)............................................................................................ 8

*Citizens to Preserve Overton Park, Inc. v. Volpe*,
    401 U.S. 402 (1971).......................................................................................... 10

*City of New York v. United States*,
    179 F.3d 29 (2d Cir. 1999) ............................................................................... 17

*City of San Diego v. Whitman*,
    242 F.3d 1097 (9th Cir. 2001) ............................................................................ 9

*Clinton v. City of New York*,
    524 U.S. 417 (1998)............................................................................................ 3

*Columbia Riverkeeper v. U.S. Coast Guard*,
    761 F.3d 1084 (9th Cir. 2014) ............................................................................ 9

ii

Defs.' Reply Re Motion to Dismiss
No. 3:17-cv-04701-WHO

*Commodity Futures Trading Comm'n v. Monex Deposit Co.*,

   824 F.3d 690 (7th Cir. 2016) ................................................................................... 9

*Davis v. Michigan Dep't of Treasury*,

   489 U.S. 803 (1989) ............................................................................................... 14

*FCC v. Fox Television Stations, Inc.*,

   556 U.S. 502 (2009) ............................................................................................... 11

*Freilich v. Upper Chesapeake Health, Inc.*,

   313 F.3d 205 (4th Cir. 2002) ................................................................................. 17

*FTC v. Standard Oil Co. of Cal.*,

   449 U.S. 232 (1980) ............................................................................................... 10

*Gregory v. Ashcroft*,

   501 U.S. 452 (1991) .......................................................................................... 15, 16

*Holistic Candlers & Consumers Ass'n v. FDA*,

   664 F.3d 940 (D.C. Cir. 2012) ............................................................................... 9

*Impro Prods., Inc. v. Block*,

   722 F.2d 845 (D.C. Cir. 1983) ............................................................................... 8

*Indep. Acceptance Co. v. California*,

   204 F.3d 1247 (9th Cir. 2000) ............................................................................. 11

*Invention Submission Corp. v. Rogan*,

   357 F.3d 452 (4th Cir. 2004) ................................................................................. 8

*Mayweathers v. Newland*,

   314 F.3d 1062 (9th Cir. 2002) ........................................................................... 6, 8

*Nat'l Ass'n of Home Builders v. Norton*,

   415 F.3d 8 (D.C. Cir. 2005) ................................................................................... 9

*Nat'l Fed'n of Indep. Bus. v. Sebelius*,

   567 U.S. 519 (2012) ............................................................................................... 17

Defs.' Reply Re Motion to Dismiss
No. 3:17-cv-04701-WHO

*New York v. United States*,

    505 U.S. 144 (1992).............................................................................................. 5

*Norton v. S. Utah Wilderness All.*,

    542 U.S. 55 (2004)............................................................................................... 9

*Or. Nat. Desert Ass'n v. U.S. Forest Serv.*,

    465 F.3d 977 (9th Cir. 2006) ................................................................................ 8

*Pierce v. SEC*,

    786 F.3d 1027 (D.C. Cir. 2015) .......................................................................... 10

*Pollution Denim & Co. v. Pollution Clothing Co.*,

    No. CV 07-05208 MMM, 2009 WL 10672270 (C.D. Cal. Feb. 9, 2009) ................................. 12

*Preap v. Johnson*,

    831 F.3d 1193 (9th Cir. 2016) ............................................................................ 14

*Printz v. United States*,

    521 U.S. 898 (1997)........................................................................................... 16

*Providence Yakima Med. Ctr. v. Sebelius*,

    611 F.3d 1181 (9th Cir. 2010) ............................................................................ 10

*Quechan Tribe of Ft. Yuma Indian Reservation v. U.S. Dep't of the Interior*,

    927 F. Supp. 2d 921 (S.D. Cal. 2013),

    *aff'd*, 673 F. App'x 709 (9th Cir. 2016).............................................................. 10

*Rattlesnake Coal. v. EPA*,

    509 F.3d 1095 (9th Cir. 2007) .............................................................................. 8

*Reno v. Condon*,

    528 U.S. 141 (2000)........................................................................................... 17

*Rust v. Sullivan*,

    500 U.S. 173 (1991)............................................................................................. 5

*S. Dakota v. Dole*,

    483 U.S. 203 (1987)....................................................................................... 4, 5

iv

*San Francisco Herring Ass'n v. U.S. Dep't of Interior*,

    683 F. App'x 579 (9th Cir. 2017) ................................................................... 9

*Steel Co. v. Citizens for a Better Env't*,

    523 U.S. 83 (1998) ........................................................................................ 12

*Steinle v. San Francisco*,

    230 F. Supp. 3d 994 (N.D. Cal. 2017) ......................................................... 16

*Texas v. United States*,

    523 U.S. 296 (1998) ...................................................................................... 13

*Thomas v. Anchorage Equal Rights Comm'n*,

    220 F.3d 1134 (9th Cir. 2000) ..................................................................... 14

*United States v. Elkins*,

    683 F.3d 1039 (9th Cir. 2012) ....................................................................... 7

*United States v. Kebodeaux*,

    570 U.S. 387 (2013) ........................................................................................ 7

*Yates v. United States*,

    --- U.S. ---, 135 S. Ct. 1074 (2015) ............................................................... 4


**STATUTES**

5 U.S.C. § 551 ....................................................................................................... 8

5 U.S.C. § 704 ....................................................................................................... 8

8 U.S.C. § 1226 ......................................................................................... 7, 11, 14

8 U.S.C. § 1227 ......................................................................................... 7, 10, 17

8 U.S.C. § 1228 ................................................................................................... 17

8 U.S.C. § 1231 ............................................................................................... 7, 14

8 U.S.C. § 1252c ................................................................................................... 7

8 U.S.C. § 1324 ..................................................................................................... 7

8 U.S.C. § 1357 ............................................................................................. 11, 17

Defs.' Reply Re Motion to Dismiss
No. 3:17-cv-04701-WHO

8 U.S.C. § 1373 .................................................................................................................. *passim*

20 U.S.C. § 1411 ............................................................................................................................ 4

20 U.S.C. § 6332 ............................................................................................................................ 4

20 U.S.C. § 6333 ............................................................................................................................ 4

34 U.S.C. § 10102 ................................................................................................................. 3, 4, 10

34 U.S.C. § 10152 ................................................................................................................... 6, 10

34 U.S.C. § 10153 ..................................................................................................................... 2, 3

34 U.S.C. § 10251 ................................................................................................................... 6, 10

34 U.S.C. § 20901 ......................................................................................................................... 7

34 U.S.C. § 20927 ......................................................................................................................... 7

42 U.S.C. § 5301 ........................................................................................................................... 4

Cal. Gov't Code § 7284.2 ............................................................................................................. 17

Cal. Gov't Code § 7284.6 ..................................................................................................... 14, 15

Cal. Gov't Code §§ 7284-7284.12 ............................................................................................. 12

**LEGISLATIVE MATERIALS**

H.R. Rep. No. 109-233 (2005) ...................................................................................................... 3

Defs.' Reply Re Motion to Dismiss
No. 3:17-cv-04701-WHO

**INTRODUCTION**

Law enforcement in this country is a cooperative endeavor. Criminal acts often implicate the jurisdiction of more than one agency, and thus local, state, tribal, and federal officials work together in a variety of ways to fight crime and ensure public safety. Not surprisingly, then, federal law often contemplates, and is premised upon, such cooperation. This is true for the Immigration and Nationality Act, and it is true for the Edward Byrne Memorial Justice Assistance Grant Program ("Byrne JAG Program"). Both statutes explicitly contemplate and encourage effective law enforcement by promoting cooperation between the Federal Government on the one hand and local, state, and tribal governments on the other. Unfortunately, California has in recent years adopted policies of non-cooperation with respect to law enforcement involving aliens who have committed serious crimes. And in this suit, California seeks to further that policy by claiming that the Federal Government cannot condition its own law enforcement grants on such cooperation—even when the express statutory purpose of that funding is to promote cooperation.

As explained in detail in previous briefing in this case, at the core of this suit are three conditions that the DOJ has notified applicants that Fiscal Year ("FY") 2017 Byrne JAG awards will include. Specifically, the challenged conditions will require grantees to (1) have a policy of providing DHS with advance notice of the scheduled release date of certain individuals held in state or local correctional facilities (the "Notice Condition"); (2) have a policy permitting federal agents to access state or local correctional facilities for certain immigration enforcement purposes (the "Access Condition"); and (3) comply with a federal statute, 8 U.S.C. § 1373, that prohibits state and local government and law enforcement entities from restricting certain communications with DHS (the "Section 1373 Condition"). *See* Dkt. No. 71-1 (Defendants' Request for Judicial Notice ("Def. RJN")), Ex. B (2017 Greenville Award) ¶¶ 53, 55, 56. The call for the modest intergovernmental law enforcement cooperation embodied in these three grant conditions follows from recognition that "[c]onsultation between federal and state officials is an important feature of the immigration system." *Arizona v. United States*, 567 U.S. 387, 411 (2012). And the conditions are consonant with the Byrne JAG Program's purposes of ensuring that grantees "report such data

1    … and information … as the Attorney General may reasonably require" and undertake

2    "appropriate coordination with affected agencies." 34 U.S.C. § 10153(a)(4), (5).

3         California's suit nevertheless attacks the prospective imposition of these conditions, and

4    seeks a declaration that the State complies with Section 1373. The Amended Complaint warrants

5    dismissal in its entirety, as the claims set forth therein contravene clear statutory language

6    authorizing the Department to condition Byrne JAG funding; ignore the close relationship

7    between the grant conditions, federal law enforcement prerogatives, and the purposes of the

8    Byrne JAG Program; and otherwise suffer from various legal defects. Further, California's

9    alternative request for an injunction prohibiting any DOJ finding that any of several state laws

10   violate the Section 1373 Condition in either the Byrne JAG Program or two other programs fails to

11   present a justiciable controversy—and, in any event, further fails on its merits, as set forth below.

12        At bottom, California cannot sustain its counterintuitive theory that Byrne JAG applicants

13   can insist on their entitlement to a federal law enforcement grant even as they refuse to provide

14   basic cooperation on law enforcement related to criminal aliens, which the Department has

15   identified as a federal priority and which plainly intersects with criminal justice under the

16   framework of the INA. *Cf. Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 570 U.S. 205,

17   214 (2013) ("As a general matter, if a party objects to a condition on the receipt of federal

18   funding, its recourse is to decline the funds."). For all of these reasons, and as discussed in more

19   detail below, the Court should dismiss this action in its entirety.

20                                          **ARGUMENT**

21   **I.    The Challenged Immigration-Related Byrne JAG Conditions Are Lawful**

22         **A.    The Access and Notice Conditions Are Authorized by Statute**

23         California's first contention is that DOJ lacks the statutory authority to impose either the

24   Access or the Notice Condition,[1] because there is "no provision of the JAG authorizing statute

25   that affirmatively supports the imposition" of these conditions. Dkt. No. 80 ("Opp.") at 5. But the

26   

---

27   [1] California makes no such argument with respect to the Section 1373 condition. Thus, California
     concedes that this condition is indeed within the statutory parameters of the Byrne JAG Program.

28                                              2
     Defs.' Reply Re Motion to Dismiss
     No. 3:17-cv-04701-WHO

relevant question is not whether the JAG authorizing statute *requires* the imposition of the Notice and Access Conditions. Rather, it is whether the statute *delegates to the DOJ* the authority to add conditions to Byrne JAG funds in order to further Departmental policies and priorities. As explained in Defendants' opening memorandum, *see* Dkt. No. 77 ("Def. Mem.") at 9, Congress may, of course, delegate to the executive branch the authority to attach specific conditions on the receipt of federal funds, just as it may delegate other types of legislative authority. *See*, *e.g.*, *Clinton v. City of New York*, 524 U.S. 417, 488 (1998) ("Congress has frequently delegated the President the authority to spend, or not to spend, particular sums of money.") (citation omitted).

Here, as relevant to the administration of the Byrne JAG Program, Congress expressly authorized the Department to "*plac[e] special conditions* on all grants," 34 U.S.C. § 10102(a)(6), to "*determin[e] priority purposes* for formula grants," *id*. (emphasis added), and to ensure that grantees "comply with . . . all other applicable Federal laws." *Id*. § 10153(a)(5)(D); *see also* H.R. Rep. No. 109-233, at 101 (2005). These capacious delegations of authority plainly empower the Department to impose the Notice and Access Conditions to promote intergovernmental law enforcement cooperation, so that grantee policies do not impair federal policies.

In an attempt to evade this conclusion, California contends that, as it is used in 34 U.S.C. § 10102(a)(6), the phrase "special conditions" constitutes a "narrow" "term of art" that is necessarily—and strictly—limited in scope to such conditions as may be placed "on particular high-risk grantees that have struggled or failed to comply with grant conditions in the past," Opp. at 8 (citing, *inter alia*, two expired regulations), and DOJ must accordingly award all appropriated Byrne JAG funds to any entity that merely satisfies certain "ministerial requirements and certifications" set forth by the Byrne JAG authorizing statute. Preliminarily, however, California's purported limitation has no support in the Byrne JAG authorizing statute itself. Further, as Defendants have explained at length, *see* Def. Mem. at 5-6, the Department has long employed its "special conditions" authority to impose a number of conditions applicable to *all* grantees—including, to cite but two recent examples, limitations on research using human subjects, and an "American-made" requirement for body armor purchases. Def. RJN, Ex. A ¶¶

Defs.' Reply Re Motion to Dismiss
No. 3:17-cv-04701-WHO

30, 39; *see generally* Def. Mem. at 5-6 (discussing other conditions); Def. RJN, Ex. A (setting forth more than 50 "special conditions" of general applicability). California fails to explain how its narrow reading of "special circumstances" is compatible with any of the across-the-board conditions the Department has historically imposed pursuant to this delegated authority.[2]

Finally, California argues that were the Court to find delegated authority for the Notice and Access Conditions, it would necessarily bestow Defendants with "unfettered discretion" to impose any condition(s) at all on the receipt of Byrne JAG funds, no matter how remote or irrational. *Id.* This argument, too, is a straw man. The Byrne JAG Program is indisputably an exercise of the Congressional Spending authority. Thus, in exercising its delegated authority to impose "special conditions on," and "determin[e] priority purposes for," Bryne JAG grants, 34 U.S.C. § 10102(a)(6), there is no dispute that the Department must adhere to the Spending Clause. While the spending authority is undoubtedly "broad," *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 296 (2006), it is "of course not unlimited," *S. Dakota v. Dole*, 483 U.S. 203, 207 (1987) (citation omitted). However, as set forth below, the Notice and Access Conditions fall easily within the scope of the Spending authority.[3]

**B.     The Challenged Conditions Comply with the Spending Clause**

The Spending Clause authorizes Congress—or, where relevant, its agency delegee—may "further broad policy objectives by conditioning receipt of federal moneys upon compliance by the recipient with federal statutory *and administrative* directives." *Dole*, 483 U.S. at 206 (emphasis

---

[2] To the extent California contends that the use of the "special conditions" term in other contexts requires its ahistorical interpretation here, the Supreme Court has "several times affirmed" that "identical language may convey varying content when used in different statutes, sometimes even in different provisions of the same statute." *Yates v. United States*, --- U.S. ---, 135 S. Ct. 1074, 1082 (2015) (collecting cases).

[3] Because this is so, California's contentions that the Notice and Access Conditions run afoul of federalism principles, *see* Opp. at 5, 7, are similarly misplaced, as "[i]t is well settled that Congress is entitled to further policy goals indirectly through its spending power that it might not be able to achieve by direct regulation." *All. for Open Soc'y Int'l, Inc. v. U.S. Agency for Int'l Dev.*, 651 F.3d 218, 230 (2d Cir. 2011), *aff'd sub nom. Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 570 U.S. 205 (2013). Indeed, federal grants routinely further federal policy in areas within the traditional purview of state or local governments, such as education and community development. *See, e.g.*, 20 U.S.C. §§ 1411, 6332-33 (grants under the Individuals with Disabilities Education Act and Elementary and Secondary Education Acts, respectively); 42 U.S.C. § 5301 *et seq.* (Community Development Block Grant Program).

Defs.' Reply Re Motion to Dismiss
No. 3:17-cv-04701-WHO

added); *cf.*, *e.g.*, *Rust v. Sullivan*, 500 U.S. 173, 194 (1991) ("[W]hen the Government

appropriates public funds to establish a program it is entitled to define the limits of that

program."). Consistent with these principles (and as relevant to this suit), any terms attached to the

receipt of federal funds must be "unambiguous[]," *Dole*, 483 U.S. at 207, and also bear "some

relationship" to "the purpose of the federal spending," *New York v. United States*, 505 U.S. 144,

167 (1992). The challenged conditions easily satisfy these standards.

### 1.    The Notice and Access Conditions are Unambiguous

There is nothing "ambiguous" about the Notice and Access Conditions, and California can

determine whether to accept FY 17 Byrne JAG funds "knowingly, cognizant of the consequences

of [its] participation." *Dole*, 483 U.S. at 207 (citation omitted). As Defendants have explained, both

conditions are clearly and straightforwardly stated, and do not plausibly fail to give the State

adequate notice of the terms to which it would need to commit in order to participate in the FY 17

Byrne JAG Program. *See* Def. Mem. at 12-13 (discussing the challenged grant terms in detail).

Further, although California complains that there is no "federal statute that provides

guidance on the Access or Notification Conditions," Opp. at 13, this argument ignores the

opportunity for administrative consultation that the Byrne JAG Program invites. The FY 2017

Byrne JAG solicitation invited any prospective grantee with a question about "any . . .

requirement of this solicitation" to contact the Office of Justice Program's ("OJP") Response

Center (customer service center) by telephone, email, fax, or online chat. *See* Dkt. No. 1-16 at 2.

A prospective grantee could also contact the appropriate "State Policy Advisor"—that is, a

specific, named OJP employee assigned to work with jurisdictions within a specified

geographical area. *Id*. Beyond this invitation in the FY 2017 solicitation, in each of the challenged

conditions that appears in the award document for a prospective grantee to consider accepting, the

Department has invited submission of "[a]ny questions about the meaning or scope of this

condition . . . before award acceptance." Def. RJN, Ex. B (2017 Greenville Award) ¶¶ 53, 55, 56.

Indeed, while California complains that "[t]he Access Condition … fails to provide … notice of

whether a law or policy that requires local jurisdictions to inform inmates of their right to have a

Defs.' Reply Re Motion to Dismiss
No. 3:17-cv-04701-WHO

1    lawyer present or to decline an interview with ICE would violate the condition," Opp. at 13, had

2    California simply availed itself of this consultation process, litigation of this issue could have been

3    avoided altogether. As Defendants would have made clear to California, the Department does not

4    understand either the Notice or the Access Condition to forbid a jurisdiction from informing

5    detainees, where required by law, that they may choose not to meet with immigration authorities.

6          Accordingly, and for the additional reasons set forth in Defendants' motion, *see* Def.

7    Mem. at 11-13, the Notice and Access Conditions satisfy the *Dole* clear statement rule.

8                    **2.      The Conditions Are Related to the Byrne JAG Program**

9          California also argues that the Notice, Access, and Section 1373[4] Conditions "do not have

10   a sufficient nexus" to the goals of the Byrne JAG Program. Opp. at 10. But this aspect of *Dole*

11   does not impose an "exacting standard":

12          The Supreme Court has suggested that federal grants conditioned on compliance
            with federal directives *might* be illegitimate if the conditions share no relationship
13          to the federal interest in particular national projects or programs. This possible
            ground for invalidating a Spending Clause statute, which only suggests that the
14          legislation *might* be illegitimate without demonstrating a nexus between the
            conditions and a specified national interest, is a far cry from imposing an exacting
15          standard for relatedness.

16   *Mayweathers v. Newland*, 314 F.3d 1062, 1067 (9th Cir. 2002).

17         The challenged conditions easily satisfy this standard. The Byrne JAG Program's

18   authorizing statute specifies that Byrne JAG funds are designed to provide resources "for criminal

19   justice," 34 U.S.C. § 10152(a)(1), defined broadly as "activities pertaining to crime prevention,

20   control, or reduction, or the enforcement of the criminal law, including, *but not limited to*, police

21   efforts to prevent, control, or reduce crime *or to apprehend criminals*, …  activities of courts

22   having criminal jurisdiction, and *related agencies*," *id.* § 10251(a)(1) (emphasis added). Thus,

23   contrary to California's view that the Byrne JAG Program's "overarching goal" is to promote

24   State and local flexibility, Opp. at 6, the program's overall goals are much broader: to support and

25   strengthen law enforcement and criminal justice. And, because the challenged conditions relate to

26   ───────────────
     [4] California does not dispute that the Section 1373 Condition, at least, is statutorily authorized. California
27   does not, however, explain how a condition that is concededly within the statutory parameters of the Byrne
     JAG Program can be wholly "unrelated" to that Program.

28
                                                      6
     Defs.' Reply Re Motion to Dismiss
     No. 3:17-cv-04701-WHO

*specifically* to aliens who are under detention and who have either committed crimes or are suspected of having committed crimes, the conditions plainly intersect with these broad programmatic purposes. Relatedly, the INA's authorization of removal of aliens who commit any of a wide array of criminal offenses, 8 U.S.C. § 1227(a)(2), is part and parcel of law enforcement and criminal justice, if for no other reason than that removal is one of the means by which the Federal Government protects the public and prevents recidivism by criminal aliens. And even if that basic point were not enough, numerous other provisions of the INA also intertwine these two subjects, and/or contemplate cooperation among state and local officers and federal officials on immigration enforcement.[5]

Tellingly, California's assertion that "immigration law has nothing to do with enforcement of local criminal laws," Opp. at 11 (citation omitted), is belied by the connection that the State itself draws between its immigration enforcement policies and its crime rates. *See id.* at 16 (arguing that "law enforcement policies that collaborate and build trust with immigrant communities result in positive criminal enforcement and safety outcomes"). Thus, while California may disagree with the *substance* of the federal policy choices embodied by the challenged conditions, the undeniable *relationship* between these subjects is evident from the State's own arguments.[6]

In sum, the challenged conditions relate only to aliens who are under detention and who

---

[5] *See, e.g.*, 8 U.S.C. § 1226(a), (c) (authorizing detention of criminal alien during removal proceedings and requiring detention for certain criminal aliens); *id.* § 1231 (providing for continued detention during removal period); *id.* § 1357(g) (providing for formal agreements under which local officers may perform specified immigration functions relating to the investigation, apprehension, or detention of aliens); *id.* § 1324(c) (authorizing state and local officers to make arrests for violations of INA's prohibition against smuggling, transporting, or harboring aliens); *id.* § 1252c (authorizing state and local officers to arrest certain felons who have unlawfully returned).

[6] Further, insofar as California's argument that immigration enforcement cannot bear even "some relationship" to criminal justice relies on the civil nature of the former, *see* Opp. at 11, this argument fails to account for the federal Sex Offender Registration and Notification Act ("SORNA"), 34 U.S.C. § 20901 *et seq.*, which is also "a civil regulatory scheme rather than a criminal one." *United States v. Elkins*, 683 F.3d 1039, 1044-45 (9th Cir. 2012). Yet notwithstanding SORNA's civil nature, a state's compliance with the same is directly tied to its entitlement to its full allotment of Byrne JAG funding. 34 U.S.C. § 20927(a); *see, e.g.*, *United States v. Kebodeaux*, 570 U.S. 387 (2013) (observing with approval that SORNA "used Spending Clause grants to encourage States to adopt its uniform definitions and requirements."). The relatedness inquiry under the Spending Clause thus plainly allows for the linkage of civil and criminal subject areas.

7

Defs.' Reply Re Motion to Dismiss
No. 3:17-cv-04701-WHO

1    have either committed crimes or are suspected of having committed crimes. State and local

2    cooperation with the Federal Government through the provision of basic information and access

3    allows for effective enforcement of federal immigration law against aliens who are criminals or

4    suspected criminals—and thus makes communities safer. The challenged conditions thus *directly*

5    advance the purposes of the Byrne JAG Program, and easily clear the low bar of bearing "some

6    relationship" to the Program's purposes. *Mayweathers*, 314 F.3d at 1067.

7          **C.**     **Plaintiff's APA Claims Must Be Dismissed for Additional Reasons**

8               **1.**     **The APA Claims Do Not Challenge Final Agency Action**

9         "[T]he Administrative Procedure Act does not provide judicial review for everything done

10   by an administrative agency." *Invention Submission Corp. v. Rogan*, 357 F.3d 452, 459 (4th Cir.

11   2004) (citation omitted). One limitation, which is jurisdictional in nature, is that "[t]o obtain

12   judicial review under the APA, [a plaintiff] must challenge a final agency action." *Or. Nat. Desert*

13   *Ass'n v. U.S. Forest Serv.*, 465 F.3d 977, 982 (9th Cir. 2006) (citing 5 U.S.C. § 704). As a

14   preliminary matter, "[f]or there to be 'final' agency action, there must, of course, be 'agency

15   action,'" as defined by 5 U.S.C. § 551(13). *Impro Prods., Inc. v. Block*, 722 F.2d 845, 848-49

16   (D.C. Cir. 1983). Once an appropriate "agency action" is identified, finality is reached only when

17   the action in question (1) "marks the consummation of the agency's decisionmaking process,"

18   and (2) is "one by which rights or obligations have been determined, or from which legal

19   consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (citations omitted).

20        California fails to identify an "agency action" within the meaning of the APA, much less

21   one that is "final." As relevant here, the APA defines "agency action" as "the whole or a part" of,

22   *inter alia*, agency "relief … or [the] denial thereof," 5 U.S.C. § 551(13), and "relief," in turn, as

23   including an agency "grant of money [or] assistance …," *id.* § 551(11)(A). In comportment with

24   these definitions, the Ninth Circuit has held that in the context of agency grant-making in

25   particular, "the congressional appropriation to [an agency] of funds for a particular project *does*

26   *not constitute a final agency action* by the [agency] until the [agency] has *reviewed a grant*

27   *application and decided to disburse the funds*." *Rattlesnake Coal. v. EPA*, 509 F.3d 1095, 1103-

28

                          8

04 (9th Cir. 2007) (emphasis added). As there is no dispute that DOJ has not yet determined whether to grant FY 17 Byrne JAG funds to California, or deny its pending application, it follows that there is, as of yet, no final agency action for this Court to review.

California responds that "by requiring the [state's] chief legal officer to certify compliance under penalty of perjury with the Section 1373 condition, and the [state] to certify compliance with all three conditions … Defendants have committed to a view that requires California to act." Opp. at 14-15. However, as the Ninth Circuit recently explained, this argument "confuses the issue of whether an agency action is final with that of whether a case is ripe for judicial review." *San Francisco Herring Ass'n v. U.S. Dep't of Interior*, 683 F. App'x 579, 581 (9th Cir. 2017) (explaining that an interlocutory step in an ongoing administrative process may require an entity to make "'an immediate and significant change in [its] conduct of [its] affairs with serious penalties attached to noncompliance'" and yet not be "final" for purposes of APA review) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 153 (1967)). Similarly, although California is correct that the "practical effects" of an agency decision can be relevant to the "final agency action" analysis, *see* Opp. at 14 (citing *Columbia Riverkeeper v. U.S. Coast Guard*, 761 F.3d 1084, 1094-95 (9th Cir. 2014)), where, as here, "the practical effect of the agency action is not a *certain change* in the legal obligations of a party, the action is non-final for the purpose of judicial review." *Nat'l Ass'n of Home Builders v. Norton,* 415 F.3d 8, 15 (D.C. Cir. 2005) (emphasis added); *see also, e.g.*, *Holistic Candlers & Consumers Ass'n v. FDA*, 664 F.3d 940, 941-946 (D.C. Cir. 2012) (FDA letters requesting that the plaintiffs cease, on potential penalty of "regulatory action," the marketing and distribution of certain products which the FDA considered to be misbranded medical devices was not "final agency action"); *City of San Diego v. Whitman*, 242 F.3d 1097, 1102 (9th Cir. 2001) (EPA letter providing requested opinion on whether it would apply certain conditions to a permit application had no legal consequences).

In sum, it is for good reason that "[t]he propriety of an agency's action is reviewed after the final administrative decision." *Commodity Futures Trading Comm'n v. Monex Deposit Co.*, 824 F.3d 690, 692 (7th Cir. 2016) (citation omitted). "The principal purpose of the APA['s]

9

limitations . . . is to protect agencies from undue judicial interference with their lawful discretion, and to avoid judicial entanglement in abstract policy disagreements which courts lack both expertise and information to resolve." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 66 (2004). "[T]he effect of the judicial review sought by [California] is likely to be interference with the proper functioning of the agency and a burden for the courts." *FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 242 (1980); *id.* at 243 (cautioning that APA review is not "a means of turning prosecutor into defendant before adjudication concludes"). California's APA claims falter on this threshold ground, apart from the failure of those claims on their merits.

### 2.      The Challenged Conditions Are Not Arbitrary or Capricious

It is well-established that when a court reviews an agency's action under the "arbitrary or capricious" standard, it is "required to be highly deferential," and to "presum[e] the agency action to be valid" as long as it is supported by a rational basis. *Providence Yakima Med. Ctr. v. Sebelius*, 611 F.3d 1181, 1190 (9th Cir. 2010) (citation omitted). Thus, in an APA action, the burden is on the plaintiff to show that the challenged action is arbitrary and capricious, not on the defendant agency to disprove the plaintiff's claim. *See Pierce v. SEC*, 786 F.3d 1027, 1035 (D.C. Cir. 2015); *Quechan Tribe of Ft. Yuma Indian Reservation v. U.S. Dep't of the Interior*, 927 F. Supp. 2d 921, 928 (S.D. Cal. 2013), *aff'd*, 673 F. App'x 709 (9th Cir. 2016). The APA standard of review is "narrow," and does not authorize a district court "to substitute its judgment for that of the agency." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971).

The challenged conditions easily meet this standard. As detailed above, Congress established the Byrne JAG Program to further "criminal justice"-related purposes, 34 U.S.C. § 10152(a)(1), broadly defined, *id.* § 10251(a)(1). And, as also explained above, such purposes are rationally advanced by facilitating federal access to aliens who have violated, or are suspected of violating, state or local criminal laws—if for no other reason than that once removed, an alien who has committed a removable criminal offense is undeniably no longer present in this country with the potential to re-offend. *See* 8 U.S.C. § 1227(a)(2) (providing that a criminal conviction for any of a wide array of criminal offenses renders an alien removable).

Defs.' Reply Re Motion to Dismiss
No. 3:17-cv-04701-WHO

1  Further, the challenged conditions rationally promote interests in "maintain[ing] liaison"

2  among tiers of government "in matters relating to criminal justice," 34 U.S.C. § 10102(a)(2), and

3  comport with the intergovernmental cooperation that Congress contemplates in immigration

4  enforcement—which cooperation the May 2016 Office of Inspector General ("OIG") report found

5  decidedly lacking in various jurisdictions around the country. Def. RJN, Ex. P at 1-2 n.1 (OIG

6  report finding deteriorating local cooperation with "efforts to remove undocumented criminal

7  aliens from the United States," including in California, among other jurisdictions); *see also*, *e.g.*,

8  8 U.S.C. §§ 1226(d), 1357(g), 1373; *Arizona*, 567 U.S. at 411-12 ("Consultation between federal

9  and state officials is an important feature of the immigration system" and Congress "has

10  encouraged the sharing of information about possible immigration violations.") (citation omitted).

11  As the Department explained in its July 25, 2017 "Backgrounder on Grant Requirements,"

12  "[i]mproving the flow of information between federal and state law enforcement authorities is

13  paramount to ensuring that federal immigration authorities have the information they need to

14  enforce the law and keep our communities safe"). Def. RJN, Ex. Q. Thus, the challenged

15  conditions have more than a "reasonable basis" and easily satisfy the "deferential and narrow"

16  APA standard. *Indep. Acceptance Co. v. California*, 204 F.3d 1247, 1251 (9th Cir. 2000).

17  In response, California argues that none of the challenged conditions were incorporated

18  into Byrne JAG grants prior to 2016 (the Section 1373 Condition) or 2017 (the Access and Notice

19  Conditions). *See* Opp. at 15. But where the agency action in question represents a shift in policy,

20  the agency "need not demonstrate to a court's satisfaction that the reasons for the new policy are

21  better than the reasons for the old one; it suffices that the new policy is permissible under the

22  statute, that there are good reasons for it, and that the agency believes it to be better." *FCC v. Fox

23  Television Stations, Inc.*, 556 U.S. 502, 515 (2009) (emphasis omitted). Further, California's

24  additional argument, that certain unidentified "evidence from jurisdictions around the country"

25  purportedly demonstrates that "law enforcement policies that collaborate and build trust with

26  immigrant communities result in positive criminal enforcement and safety outcomes," Opp. at 16,

27  reflects only a "difference in view" with the Federal Government regarding how best to promote

28  

11

public safety. *See All. for the Wild Rockies v. Peña*, 865 F.3d 1211, 1217 (9th Cir. 2017). While California is entitled to its views, its disagreement does not establish a violation of the APA.

## II.     California's Claim for a Declaration Regarding its Statutes' Compliance with Section 1373 Should Be Dismissed

### A.     The Claim Regarding Compliance with Section 1373 Is Non-Justiciable

#### 1.     California Lacks Standing to Seek a Ruling Regarding Any State Statute Other Than the Values Act

Defendants have not withheld or threatened to withhold grant funding based on any California statute other than the Values Act, Cal. Gov't Code §§ 7284-7284.12. Thus, there is no "live controversy" regarding whether any other state statute violates Section 1373 and no foresee-able "injury in fact" arising from Defendants' application of Section 1373 to any other statutes, such that California lacks standing to seek a ruling on any statute other than the Values Act. *See Pollution Denim & Co. v. Pollution Clothing Co*., 2009 WL 10672270, at *8-10 (C.D. Cal. Feb. 9, 2009); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102-03 (1998). California makes essen-tially two arguments to the contrary:  that the Federal Government has "called out" other California laws, and that Defendants have asserted that "similar" laws and policies in other jurisdictions violate Section 1373. Opp. at 17-18. Neither of these arguments establishes a "live controversy" regarding any California laws other than the Values Act.

California's assertion that Defendants have "called out" other California laws for non-compliance with Section 1373 is based on very general statements from the Attorney General, the DOJ Office of Public Affairs, and the Acting Director of Immigration and Customs Enforcement. *See* Opp. at 17-18; Am. Compl. ¶¶ 109-110. None of those statements, however, referred to any specific state statutes, and some of them did not even refer to Section 1373. Moreover, as the State acknowledges, some of those statements asserted only that California had "laws that *potentially* violate[d] 8 U.S.C. § 1373," Am. Compl. ¶ 110 (emphasis added); *see* Opp. at 18. A statement regarding a "potential" violation does not create a live controversy warranting judicial intervention.

California's references to "similar" laws in other jurisdictions also does not establish

Defs.' Reply Re Motion to Dismiss
No. 3:17-cv-04701-WHO

1    standing to seek relief regarding California statutes other than the Values Act. Given the specific

2    language of Section 1373 and the great variety in the language of the various state and local laws

3    regarding cooperation with federal authorities, each such law must be evaluated on its own. Each

4    law has its own specific (or general) prohibitions, its own definitions (or lack of definitions), and its

5    own exceptions or purported saving clause. Thus, an assertion by Defendants that a "similar" law

6    elsewhere violates Section 1373 would not establish a live controversy regarding a given California

7    statute, unless the two enactments were identical or very nearly identical.

8                    **2.      California's Request for a Ruling Regarding the Values Act is Unripe**

9              As to the Values Act, although Defendants have expressed concern that the Act appears to

10   violate Section 1373, the parties have not yet completed their discussion on that subject and DOJ

11   has not yet issued any final determination that the Act violates Section 1373. Indeed, after

12   Defendants filed their motion to dismiss, OJP requested certain documents from the State to

13   facilitate that decision, and awaits the State's response. Pl. RJN, Ex. D. Thus, California's claim

14   regarding the Values Act is constitutionally unripe because it "rests upon contingent future events

15   that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S.

16   296, 300 (1998) (citation omitted).

17             When evaluating ripeness in the context of a statutory challenge, a Court may consider

18   "whether the plaintiffs have articulated a 'concrete plan' to violate the law in question, whether the

19   prosecuting authorities have communicated a specific warning or threat to initiate proceedings, and

20   the history of past prosecution or enforcement under the challenged statute." *Id.*  California argues

21   that these factors are met here because the State's November 13, 2017 letter to OJP, Def. RJN, Ex.

22   O, "articulated a clear plan" to violate Section 1373 as understood by Defendants; Defendants

23   allegedly "threatened prosecution" against the State in OJP's initial letter of November 1 (*id.*, Ex.

24   N) and in "public statements"; and Defendants "sought to enforce Section 1373 [thirty-five] times

25   since October 2017, including against California." Opp. at 20. The facts indicate, however, that OJP

26   has not yet determined whether to initiate "prosecution"—that is, withholding of funds—because of

27   the Values Act. And, as discussed, any action that OJP may take regarding the laws of any other

28

                                                                    13

1   jurisdiction cannot predict what the agency may decide regarding the laws of California, given the

2   almost infinite variety among the laws of different jurisdictions. Indeed, OJP's most recent letter to

3   California, dated January 24, 2018, stated that DOJ "remains concerned that [the State's] laws,

4   policies, or practices *may* violate section 1373, or, at a minimum, that they *may* be interpreted or

5   applied in a manner inconsistent with section 1373." Pl. RJN, Ex. D (emphasis added). In short,

6   "neither the mere existence of a proscriptive statute [here, Section 1373] nor a generalized threat of

7   prosecution [here, the ongoing correspondence between the State and OJP regarding the Values

8   Act] satisfies the 'case or controversy' requirement," *Thomas v. Anchorage Equal Rights Comm'n*,

9   220 F.3d 1134, 1139 (9th Cir. 2000) (en banc), and the Values Act claim is constitutionally unripe.

   **B.    Alternatively, the Court Should Dismiss California's Claim for
           Declaratory Relief Regarding the Values Act on Its Merits**

12          Section 1373 facilitates the INA's comprehensive and cooperative plan of first requiring

13   aliens to serve any criminal sentences imposed by state and local governments, then commencing

14   federal immigration detention immediately upon conclusion of criminal sentences. *See* 8 U.S.C.

15   §§ 1226(c)(1), 1231(a)(1)(B)(iii), (a)(4); *see also Preap v. Johnson*, 831 F.3d 1193, 1202 (9th Cir.

16   2016) (Section 1226(c) "governs the full life cycle of the criminal aliens' detention" including

17   "specifying the requirements for taking them into custody"), *pet. for cert. filed*, No. 16-1363 (May

18   11, 2017). Thus, Section 1373 forecloses "prohibit[ing], or in any way restrict[ing], any government

19   entity or official from sending to, or receiving from, [federal authorities] information regarding the

20   citizenship or immigration status … of any individual." 8 U.S.C. § 1373(a). Contrary to this

21   congressional plan, the Values Act prohibits state and local law enforcement from using "moneys

22   or personnel to investigate … persons for immigration enforcement purposes," including by

23   "[p]roviding information regarding a person's release date or responding to requests for notification

24   by providing release dates or other information unless that information is available to the public, or

25   is in response to a notification request from immigration authorities" or by "[p]roviding personal

26   information … about an individual, including, but not limited to, the individual's home address or

27   work address unless that information is available to the public." Cal. Gov't Code § 7284.6(a).

28                                                     14

1    A "fundamental canon of statutory construction" is that "the words of a statute must be read

2    in their context and with a view to their place in the overall statutory scheme." *Davis v. Michigan*

3    *Dep't of Treasury*, 489 U.S. 803, 809 (1989). Protecting the exchange of information regarding the

4    status of aliens with federal immigration authorities ensures that those authorities will be able to

5    track the status of such persons and take custody of them, as required by the INA, upon their release

6    from state and local custody. Moreover, as California acknowledges, federal immigration author-

7    ities presumably already have "definitive information" as to whether any given individual is in the

8    United States legally or illegally. Opp. at 24. Thus, limiting Section 1373 to that information would

9    render the statute essentially meaningless as applied to the transfer of information from state and

10   local authorities to federal authorities. The phrase "information *regarding* . . . citizenship or

11   immigration status" must, therefore, mean something more. And that something more logically

12   includes information needed by federal authorities to carry out their responsibilities under the INA

13   to take custody of aliens upon their release from criminal detention.

14   California also seeks to rely on the Values Act's purported saving clause, which essentially

15   quotes Section 1373, *see* Cal. Gov't Code § 7284.6(e); the State argues that that clause "permits

16   compliance with all aspects of Section 1373." Opp. at 23. In light of the State's arguments in this

17   action, however, the California Attorney General obviously reads the language of that clause too

18   narrowly, as permitting the disclosure only of an individual's citizenship or immigration status, and

19   nothing more. The saving clause does not, therefore, save the Values Act from violation of Section

20   1373, as the federal statute is properly construed.

21   Lastly, relying on *Gregory v. Ashcroft*, 501 U.S. 452, 460-61 (1991), California argues that

22   Section 1373 "alter[s] the usual constitutional balance between the States and the Federal

23   Government," such that the statute cannot encompass "release dates, home addresses, or other

24   information about a person's identity" unless that congressional intent is "unmistakably clear."

25   Opp. at 25. The situation here is decisively different from that presented in *Gregory*, however. In

26   *Gregory*, Missouri state judges argued that a state constitutional provision requiring judges to retire

27   at age seventy violated the Age Discrimination in Employment Act.  501 U.S. at 455-61. The Court

28

Defs.' Reply Re Motion to Dismiss
No. 3:17-cv-04701-WHO

1  observed that the authority to "establish a qualification for those who sit as their judges . . . goes

2  beyond an area traditionally regulated by the States; it is a decision of the most fundamental sort for

3  a sovereign entity." *Id*. at 460. In that context, the Court observed, it would not construe a federal

4  statute as overriding the State's will unless that intention were "unmistakably clear." *Id*.

5  　　　　The information covered by Section 1373 is entirely unlike the qualifications of state judges

6  involved in *Gregory*. As *Gregory* observed, state judges are among the "most important [state]

7  government officials." 501 U.S. at 463. By contrast, Section 1373 covers information regarding

8  aliens in the United States, whose admission, conduct, presence, and potential removal are

9  quintessentially the responsibility of the *Federal Government*. *See Arizona*, 567 U.S. 387.

10  Protecting the transmission information regarding such persons to federal immigration authorities,

11  far from endangering "the independence of the States," *Gregory*, 501 U.S. at 460, merely ensures

12  that federal officers can perform their duties. Thus, there is no basis for applying *Gregory*'s

13  "unmistakable clarity" rule here.[7]

14  **III.     Section 1373 Is Consistent with the Tenth Amendment**

15  　　　　Finally, California's Tenth Amendment challenge to Section 1373 is without merit. Merely

16  protecting the transmission of information to federal authorities does not "compel the State[] to

17  enact or administer a federal regulatory program" or to "act on the Federal Government's behalf,"

18  *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 575, 620 (2012). But Section 1373 *does* ensure

19  that the Federal Government can carry out its statutory responsibilities to "interrogate any alien or

20  person believed to be an alien as to his right to be or to remain in the United States" and to remove

21  the alien "upon the order of the Attorney General" after completion of criminal sentences. 8 U.S.C.

22  §§ 1227(a), 1228, 1357(a)(1).[8]

23  　　　　California relies primarily on *Printz v. United States*, 521 U.S. 898 (1997) in attempting to

24

25  [7] Plaintiff also seeks to rely on *Steinle v. San Francisco*, 230 F. Supp. 3d 994 (N.D. Cal. 2017), regarding the scope of Section 1373. Opp. at 24 & n.17). The court in that case did not, however, have the advantage of the Federal Government's briefing on that issue.

26  [8] Courts have rejected a number of Tenth Amendment challenges to federal statutes regulating the handling of information. *See Reno v. Condon*, 528 U.S. 141 (2000) (rejecting challenge to requirement that States

27  disclose certain information on motor vehicle operators); *Freilich v. Upper Chesapeake Health, Inc*., 313 F.3d 205 (4th Cir. 2002) (rejecting challenge to requirement to share certain information regarding

28

16

1   show that the Section 1373 Condition violates the Tenth Amendment. Opp. at 27-29. But the State

2   ignores crucial differences between this case and the Brady Act, challenged there. As discussed in

3   Defendants' motion, the provisions of the Brady Act at issue in *Printz* required local law

4   enforcement officers to "make a reasonable effort to ascertain within 5 business days whether

5   receipt or possession [of a handgun] would be in violation of the law" by conducting research in

6   available databases, and to provide a written statement of the reasons for any contrary

7   determination. 521 U.S. at 903. Section 1373's mere bar against prohibiting or restricting the

8   exchange of information regarding aliens is in no way comparable to the detailed instructions and

9   mandates of the Brady Act. Nor does Section 1373 require state or local agencies to "absorb" any

10   appreciable costs. *Contra* Opp. at 28.

11       Finally, California asserts that the Values Act does not "selectively restrict[] the exchange of

12   confidential information with immigration authorities." Opp. at 30. In reality, however, the Act is

13   expressly and specifically directed at preventing cooperation with federal immigration authorities,

14   stating in its "findings," among other things, that the State's interests are "threatened when state and

15   local agencies are entangled with federal immigration enforcement." Cal. Gov't Code § 7284.2(c).

16   In short, while Section 1373 does not "commandeer" the States in violation of the Tenth

17   Amendment, California itself seeks to commandeer the Federal Government's constitutional control

18   over the admission, conduct, and potential removal of aliens by preventing federal authorities from

19   securing the information they need regarding such persons.

20                                **CONCLUSION**

21       For the reasons set forth above and also in Defendants' opening memorandum, the Court

22   should dismiss plaintiff's First Amended Complaint in its entirety.

23

24   ───────────────

physicians); *see also City of New York v. United States*, 179 F.3d 29, 34-35 (2d Cir. 1999) (rejecting Tenth

25   Amendment challenge to Section 1373). California argues that the federal law at issue in *Reno* "regulate[d]
states as operators of databases and sellers of information in the same manner that Congress regulates

26   private entities." Opp. at 29. But *Reno* expressly *declined* to address the plaintiffs' argument that the
Federal Government could "only regulate the States by means of 'generally applicable' laws." 528 U.S. at

27   151. Rather, *Reno* held that the statute did not require the State "to enact any laws or regulations" or
otherwise "assist in the enforcement of federal statutes" other than by conveying information. *Id.*

28                                                                 17

1    Dated:  February 6, 2018

2
                                              Respectfully submitted,
3
                                              CHAD A.  READLER
4                                             Acting Assistant Attorney General

5
                                              ALEX G. TSE
6                                             United States Attorney

7                                             JOHN R.  TYLER
                                              Assistant Director
8
                                              /s/ Antonia Konkoly
9
                                              _____
10                                            ANTONIA KONKOLY

11                                            W. SCOTT SIMPSON
                                              Senior Trial Counsel
12
                                              Attorneys, Department of Justice
13                                            Civil Division, Room 7210
                                              Federal Programs Branch
14                                            20 Massachusetts Avenue, NW
                                              Washington, D.C.  20530
15                                            Telephone:   (202) 514-3495
                                              Facsimile:    (202) 616-8470
16                                            E-mail:       antonia.konkoly@usdoj.gov
17
                                              COUNSEL FOR DEFENDANTS
18                                            JEFFERSON B.  SESSIONS III, Attorney
                                              General of the United States; ALAN R.
19                                            HANSON, Principal Deputy Assistant Attorney
                                              General; and U.S. DEPARTMENT OF JUSTICE
20

21

22

23

24

25

26

27

28                                                    18
     Defs.' Reply Re Motion to Dismiss
     No. 3:17-cv-04701-WHO