1   XAVIER BECERRA
    Attorney General of California
2   SATOSHI YANAI
    Supervising Deputy Attorney General
3   SARAH E. BELTON
    LISA C. EHRLICH
4   LEE SHERMAN (SBN 272271)
    Deputy Attorneys General
5    300 S. Spring St., Suite 1702
     Los Angeles, CA  90013
6    Telephone:  (213) 269-6404
     Fax:  (213) 879-7605
7    E-mail:  Lee.Sherman@doj.ca.gov
    *Attorneys for Plaintiff State of California*

8

9                  IN THE UNITED STATES DISTRICT COURT

10            FOR THE NORTHERN DISTRICT OF CALIFORNIA

11                      SAN FRANCISCO DIVISION

12

13

14   **STATE OF CALIFORNIA, ex rel, XAVIER**          Case No. 17-cv-4701
     **BECERRA, in his official capacity as**
     **Attorney General of the State of California,**  **PLAINTIFF STATE OF CALIFORNIA'S**
15                                                     **NOTICE OF MOTION AND MOTION**
                                           Plaintiff,  **FOR RECONSIDERATION OF THE**
16                                                     **COURT'S MARCH 5, 2018 ORDER ON**
                                                       **THE AMENDED MOTION FOR**
17          **v.**                                     **PRELIMINARY INJUNCTION;**
                                                       **MEMORANDUM AND POINTS OF**
18   **JEFFERSON B. SESSIONS, in his official**        **AUTHORITIES IN SUPPORT THEREOF**
     **capacity as Attorney General of the United**
19   **States; ALAN R. HANSON, in his official**       Dept:        2
     **capacity as Principal Deputy Assistant**        Judge:       Honorable William H. Orrick
20   **Attorney General; UNITED STATES**               Trial Date:  December 10, 2018
     **DEPARTMENT OF JUSTICE; and DOES**               Action Filed: August 14, 2017
21   **1-100,**

22                                        Defendants.

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

Notice of Motion and Motion ..................................................................................................... 1

Memorandum of Points and Authorities ..................................................................................... 1

Introduction ................................................................................................................................. 1

Background .................................................................................................................................. 3

      I.      Defendants' Briefing And Argument In This Case .................................................. 3

      II.     This Court's March 5, 2018 Order On The Amended Motion For
            Preliminary Injunction ........................................................................................... 5

      III.    The Federal Government's Contradictory Claims In Its March 6, 2018
            Lawsuit ................................................................................................................... 6

Argument ..................................................................................................................................... 7

      I.      The Federal Government's Filing Of A Separate Lawsuit Alleging The
            Values Act Violates Section 1373 Represents A Material Change in Fact
            Supporting Reconsideration of the State's Likelihood of Success ......................... 8

      II.     These Material Changes In Fact Support Reconsideration Of The State's
            Irreparable Harm ................................................................................................... 12

Conclusion ................................................................................................................................. 14

State of California's Motion for Reconsideration; MPA in Support Thereof (17-cv-4701)

1

**TABLE OF AUTHORITIES**

2

<u>**Page**</u>

3  C<small>ASES</small>

4  *Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*
5      458 U.S. 592 (1982) ..............................................................................................13

6  *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*
       559 F.3d 1046 (9th Cir. 2009)...............................................................................12

7  *AT&T Co. v. EEOC*
8      270 F.3d 973 (D.C. Cir. 2001) .................................................................................8

9  *Bond v. United States*
10     134 S. Ct. 2077 (2014) ...........................................................................................11

11 *City of New York v. United States*
       179 F.3d 29 (2d Cir. 1999)......................................................................................11

12 *De La Torre v. CashCall, Inc.*
13     56 F. Supp. 3d 1105 (N.D. Cal. 2014) ....................................................................7

14 *Gregory v. Ashcroft*
       501 U.S. 452 (1991)...............................................................................................11
15

16 *Herman v. Excel Corp.*
       37 F. Supp. 2d 1117 (C.D. Ill. 1999).......................................................................9

17 *Kansas v. United States*
18     249 F.3d 1213 (10th Cir. 2001)..............................................................................13

19 *Kiowa Indian Tribe of Okla. v. Hoover*
       150 F.3d 1163 (10th Cir. 1998)..............................................................................13
20

21 *Leslie Salt Co. v. United States*
       789 F. Supp. 1030 (N.D. Cal. 1991) ........................................................................9

22 *Morales v. Trans World Airlines*
23     504 U.S. 374 (1992)..........................................................................................12, 13

24 *New York v. United States*
       505 U.S. 144 (1992)...............................................................................................12
25

26 *Printz v. United States*
       521 U.S. 898 (1997)..........................................................................................11, 12

27 *Roach v. Mail Handlers Ben. Plan*
28     298 F.3d 847 (9th Cir. 2002)..................................................................................11

State of California's Motion for Reconsideration; MPA in Support Thereof (17-cv-4701)

1

# **TABLE OF AUTHORITIES**
## (continued)

2

**Page**

3

*Sch. Dist. No. 1J, Multnomah Cty., Or. v. ACandS, Inc.*
   5 F.3d 1255 (9th Cir. 1993) ................................................................................................7

4

5

**FEDERAL STATUTES**

6

8 U.S.C.
   § 1229b ...............................................................................................................................10
   § 1373 ........................................................................................................................ *passim*

7

8

42 U.S.C.
   § 3796dd-3 ..........................................................................................................................14

9

10

**STATE STATUTES**

Cal. Gov't. Code
   § 7284 *et seq* .......................................................................................................................1
   § 7284.6 ...............................................................................................................................7
   § 7285.1 ...............................................................................................................................6
   § 7285.2 ...............................................................................................................................6
   § 12532 ................................................................................................................................6

11

12

13

14

Cal. Lab. Code
   § 90.2 ..................................................................................................................................6
   § 1019.2 ...............................................................................................................................6

15

16

**OTHER AUTHORITIES**

17

8 C.F.R.
   § 214.2(h) ...........................................................................................................................10

18

19

20

21

22

23

24

25

26

27

28

Type Footer Info Here 2 («Matter Primary Court Case #»)

1

**NOTICE OF MOTION AND MOTION**

2      PLEASE TAKE NOTICE that pursuant to Civil Local Rule 7-9, Plaintiff State of California

3   ("Plaintiff" or "State") hereby moves for reconsideration of the Court's Order of March 5, 2018,

4   denying Plaintiff's Amended Motion for Preliminary Injunction without prejudice.  Order Den.

5   Am. Mot. for Prelim. Inj., ECF No. 89 (Mar. 5, 2018) ("PI Order").  Specifically, the State

6   requests that this Court reconsider its decision denying the State's preliminary injunction motion

7   seeking to enjoin Defendants from interpreting or enforcing 8 U.S.C. § 1373 ("Section 1373") in

8   such a manner to withhold, terminate, or claw-back funding from, or disbar or make ineligible,

9   the State or any of its political subdivisions that apply for JAG or COPS grants on account of

10  California Government Code section 7284 *et seq.*, *i.e.*, the California Values Act.  This motion is

11  based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the

12  Request for Judicial Notice and exhibits, as well as the papers, evidence and records on file, and

13  any other written or oral evidence or argument as may be presented to the Court.

14

**MEMORANDUM OF POINTS AND AUTHORITIES**

15

**INTRODUCTION**

16      This motion is prompted by the extraordinary actions taken by Defendants *the day after* the

17  Court's orders denying the State's Motion for Preliminary Injunction and Defendants' Motion to

18  Dismiss.  Over the course of this litigation, Defendants have repeatedly represented to this Court

19  that they have yet to reach a final determination on the Values Act's compliance with Section

20  1373 due to the "ongoing" administrative process.  At the last hearing on this matter, on February

21  28, Defendants represented the existence of active "negotiations" between the parties.  On March

22  5, the Court issued its order denying the State's Motion for Preliminary Injunction, in large part

23  because the Court did not believe it was in a position under the current record to assess the

24  likelihood of success of the State's declaratory relief claim due to the uncertainty of the

25  administrative process and the "contours" of the federal government's interpretation of Section

26  1373.  PI Order at 1.  On the same day, the Court denied Defendants' Motion to Dismiss.  Order

27  Den. Mot. to Dismiss, ECF No. 88 (Mar. 5, 2018).  The Court invited the parties to conduct

28  discovery and file cross-motions for summary judgment in the upcoming months so that the Court

1    could make a decision on the Values Act's compliance with Section 1373 with a complete record.

2    *Id.* at 2; PI Order at 2.

3         Freed from the possibility of an immediately impending decision from this Court on the

4    Values Act's compliance with Section 1373, and in order to avoid this Court from being the first

5    one to make a determination, preliminary or otherwise, on the Values Act's compliance with

6    Section 1373, the next day, March 6, the federal government dramatically changed its position.  It

7    rushed to the Eastern District of California, and filed a separate lawsuit seeking a preliminary

8    determination on the Values Act's compliance with Section 1373 that days earlier it argued this

9    Court should not make.  Notwithstanding the administrative process that was represented by

10   Defendants as supposedly ongoing less than a week earlier, in the new lawsuit the federal

11   government seeks to invalidate and enjoin several laws, including the same provisions of the

12   Values Act that were the subject of the State's Motion for Preliminary Injunction for, on its face,

13   violating Section 1373.[1]

14        Not only does the federal government's gamesmanship attempt to undermine this Court's

15   jurisdiction to decide the Values Act's compliance with Section 1373, the federal government's

16   determination that the Values Act violates Section 1373, and the interpretation of Section 1373 it

17   uses to reach that determination, represents a dramatically conflicting position from the one that

18   Defendants made to the Court in this litigation.  These new facts also constitute substantial

19   material changes allowing re-consideration of the State's Motion for Preliminary Injunction.[2]

20   The federal government's interpretation of the scope of Section 1373 vis-a-vis the Values Act is

21   complete.  The interpretation that the federal government presented in this separate litigation

22   crystalizes that its definition of "regarding . . . immigration status" is limitless and reaches

23   information that is not unmistakably encompassed by the plain text of Section 1373.  This

24   interpretation reaches into the State's traditional police powers to direct the functioning of the

25   [1] The federal government's complaint and motion for preliminary injunction with all exhibits is
     attached to the Request for Judicial Notice in Support of the State of California's Motion for
26   Reconsideration ("RJN") as Exhibits A and B, respectively.

27   [2] Pursuant to an order by the Eastern District court, on March 13, the State will be filing a motion
     to transfer this separate lawsuit to the Northern District of California due to the significant
28   overlap in issues and parties between that case and the one before this Court.

1   State, and makes it impossible for the State to decline to participate in the federal program of

2   immigration enforcement.  Without Court intervention, the State's JAG and COPS funds are

3   effectively lost, and the constitutional injury imposed on the State has been exacerbated.

4         For these reasons, and those discussed herein, the State respectfully requests that its Motion

5   for Reconsideration of the Amended Motion for Preliminary Injunction be granted.

6                              **BACKGROUND**

7   **I.    DEFENDANTS' BRIEFING AND ARGUMENT IN THIS CASE**

8         Defendants have consistently emphasized to this Court that: (1) they had not made a final

9   decision regarding the Values Act's compliance with Section 1373; and (2) that their

10  interpretation of the scope of Section 1373 was unsettled, but reached only "personal

11  information," including home addresses, and release dates.  Defendants' constant refrain has been

12  that they were working in collaboration with the State, and that they had not yet made any final

13  determinations about the State law's compliance.  In their briefing, Defendants emphasized that

14  the Office of Justice Programs ("OJP") within the U.S. Department of Justice ("USDOJ") had not

15  determined "whether the [Values] Act violates Section 1373," and "has not had an opportunity to

16  fully consider the State's arguments to the contrary."  Defs.' Opp'n to Am. Mot for Prelim. Inj.,

17  ECF No. 42 ("Opp'n to PI") at 17.  Defendants represented that their November 1 letter alleging

18  that the Values Act may not comply with Section 1373 was only a "preliminary assessment of

19  [California's] compliance."  *Id.*  According to Defendants, the process was "ongoing and is

20  narrowing the scope of the dispute between the parties."  *Id.* at 18.  Defendants reiterated these

21  points in their oral argument before the Court.  Specifically, Defendants thought they "should be

22  commended for being very upfront with the State of California," Tr. of Hr'g on Mtn. for Prelim.

23  Inj., ECF No. 71 ("PI Tr.") at 26:22-23, and that they were still "considering [the State's]

24  response" regarding compliance, but had not yet come to any conclusions.  PI Tr. at 27:7-8; *see*

25  *also id.* at 29:22-23, 39:22-24.

26        Defendants' position did not change by the time the parties briefed the Motion to Dismiss.

27  Defendants explicitly argued there was no ripe controversy "regarding the Values Act itself

28  because defendants have not yet made a final determination regarding whether it violates Section

                                  3

1    1373."  Mot. to Dismiss, ECF No. 77 at 21; *see also* 2 (OJP "has not yet reached a final decision"

2    regarding whether the Values Act violates Section 1373), 22 (OJP has not yet determined

3    "whether the [Values] Act violates Section 1373").  Weeks later, Defendants stuck to this position

4    in the reply in support of their motion:  "As to the Values Act, although Defendants have

5    expressed concern that the Act appears to violate Section 1373, the parties have not yet completed

6    their discussion on that subject and DOJ has not yet issued any final determination that the Act

7    violates Section 1373."  Defs.' Mem. in Supp. of Mot. to Dismiss, ECF No. 83 ("MTD Reply") at

8    13.  Finally, Defendants explicitly stated that "OJP has not yet determined whether to initiate

9    'prosecution'" because of the Values Act.  *Id*. at 13.  Defendants repeated this sentiment several

10   times at the hearing on their Motion to Dismiss: "I just want to remind the Court that there's still

11   an administrative process going on with respect to the 1373 compliance. . . . [The Department is]

12   still in the process of . . . assessing whether there is compliance."  MTD Tr. of Hr'g on Mot. to

13   Dismiss, ECF No. 86 ("MTD Tr.") at 6:7-12.  "[T]he administrative process is not yet

14   complete. . . .  there are still negotiations going on with respect to that issue."  *Id.* at 41:7-13.

15       On the scope and interpretation of Section 1373, Defendants also consistently represented

16   that their concern about the Values Act's compliance with the statute was limited to the Act's

17   regulation of the exchange of home addresses and release dates, while not "foreclose[ing]" them

18   from interpreting Section 1373 more broadly at "some future opportunity."  MTD Tr. at 15:19-20.

19   In their November 1, 2017 letter to the State, Defendants only identified being concerned with

20   home addresses and release dates.  Ex. P to Req. for Judicial Notice in Supp. of the State of

21   California's Am. Mot. for Prelim. Inj., ECF No. 27 (Nov. 7, 2017).  At the hearing on the Motion

22   to Dismiss, when discussing the reach of Section 1373 against the Values Act, Defendants stated

23   they had identified only two "very narrow" areas of information definitely covered, including

24   "personal information, which would be name and address, primarily; and also the release date

25   when the individual's released from incarceration . . . ."  MTD Tr. at 15:9-14.  Defendants

26   reiterated several times that they had only identified these two pieces of information as within the

27   scope of Section 1373 and their dispute with the Values Act.  *See* MTD Tr. at 16:7-8 ("We've

28   identified two things that we think naturally fall within the definition."); *id.* at 45:11-14 (when

4

1    pressed by the court Defendants stated "And we have articulated exactly what we think it means.

2    The Court: Those two things?  Mr. Readler: Yes.").  Moreover, in contemporaneous briefing in

3    the related case before this Court, Defendants specified certain categories of information that

4    were *not* within the ambit of Section 1373.  *See, e.g.*, Reply in Supp. of Defs.' Mot. to Dismiss,

5    *City and County of San Francisco v. Sessions*, No. 17-cv-04642, ECF No. 72 ("SF MTD Reply")

6    at 7 (stating that whether a person receives unemployment services, vehicle registration

7    information, and payment of utility bills are not encompassed within information "regarding" a

8    person's immigration status).

9    **II.    THIS COURT'S MARCH 5, 2018 ORDER ON THE AMENDED MOTION FOR
         PRELIMINARY INJUNCTION**

10

11       Based on the representations made by Defendants, this Court determined in its March 5 PI

12   Order that the Court was unable to assess the State's likelihood of success on its claim seeking

13   declaratory relief on Section 1373 under the current record.  The State sought preliminary relief

14   preventing Defendants from interpreting Section 1373 in such a manner as to withhold JAG and

15   COPS funds on the basis of the Values Act, *see* ECF No. 26-1.  On the potential conflict between

16   the State's powers under the Tenth Amendment and the federal government's power under

17   Section 1373, the Court looked to the federal government's failure to articulate a specifically-

18   clear position on the breadth of the statute in finding the issues not clear to decide.  For example,

19   the Court recognized that "[a]n issue that needs to be tied down is whether the federal

20   government's interpretation of Section 1373 is unconstitutional because it is so broad that it

21   violates the State's police powers under the Tenth Amendment."  PI Order at 23.  And later, the

22   Court emphasized that the federal government "has not tried to define" the phrase "regarding

23   immigration status."  *Id.* at 25.  This made it difficult to reach a decision because to understand

24   the constitutional issue "it is important to understand the parameters of the federal government's

25   interpretation of Section 1373."  *Id.* at 26.  The Court concluded that there were a "number of

26   open questions concerning the federal government's positions concerning the provisions of the

27   statutes in question," *id.* at 2, including "[i]f personal information and release dates of detainees

28   are encompassed within Section 1373's sweep as 'regarding immigration status,' what are the

5

1    contours of DOJ's definition; does it include every fact about a detainee's life, or something

2    else?" *Id.* at 26.

3         The uncertainty surrounding the record on Section 1373 also impacted the Court's

4    determination that the State did not face irreparable harm.  The Court found that harm was not

5    irreparable because "[p]ayment is delayed, for the moment." *Id.* at 2.  This was only a temporary

6    state of affairs while the "DOJ appears to be using its regular administrative process to decide

7    whether it will follow its initial inclinations" regarding the Values Act failing to comply with

8    Section 1373.  *Id.*  The Court relied on Defendants' repeated claim that they had not yet made a

9    final determination on whether the Values Act conflicted with Section 1373, nor finalized their

10   interpretation of the statute, contributing to the Court's conclusion that the harm "at this point"

11   was not irreparable.  *Id.* at 27.  Specifically, the Court pointed out that the "constitutional claims

12   are uncertain," as discussed above, and concluded that the $1 million COPS grant was only

13   "delay[ed]," and did not constitute a "refusal to pay." *Id.* at 27-28.

14   **III.   THE FEDERAL GOVERNMENT'S CONTRADICTORY CLAIMS IN ITS MARCH 6, 2018
          LAWSUIT**

15        The day after the Court issued the PI Order, the federal government filed a complaint in the

16
     Eastern District of California alleging the Values Act was invalid under the Supremacy Clause
17
     and in direct violation of Section 1373.  *See* RJN Ex. A (federal government complaint against
18
     the State of California, filed Mar. 6, 2018 ("Compl.")).  The federal government asked the court
19
     there to preliminarily enjoin the Values Act.[3]  *See* RJN Ex. B (federal government's Mot. for
20
     Prelim. Inj., filed Mar. 6, 2018 ("U.S. PI Mot.")).
21
          The arguments made in this new lawsuit represent a material change in evidence from what
22
     the federal government presented to this Court prior to the PI Order in two respects.  First, the
23
     federal government now lays out a different and broader interpretation of the reach of Section
24

     ---
     [3] The federal government also challenges other state laws that it contends "obstruct the United
25   States' enforcement of federal immigration law." *See generally* Compl. ¶¶ 3, 60-65 (challenging
     Cal. Lab. Code §§ 90.2 and 1019.2; Cal. Gov't Code §§ 7285.1, 7285.2, 12532). While these laws
26   are not directly impacted by the State's Motion for Preliminary Injunction, the nature of the
     federal government's claims, and the State's defenses, in that litigation will involve the
27   constitutional issues surrounding the intersection between the State's "broad constitutional police
     powers under the Tenth Amendment" and the federal government's immigration powers. *See* PI
28   Order at 1.

                                                    6

1   1373.  For example, for the first time, the federal government indicated that work addresses, in

2   addition to home addresses, would be covered by Section 1373.  U.S. PI Mot. at 29.  To justify

3   their attempt to invalidate the Values Act under Section 1373, as discussed below, the federal

4   government relies on an interpretation of Section 1373 that confirms that it interprets that statute

5   as essentially reaching all information that state and local governmental agencies may possess

6   about a person's life.  Second, in this separate lawsuit, the federal government made absolutely

7   clear that there is no ongoing question of whether the federal government views the Values Act as

8   complying with Section 1373.  The complaint is premised on the notion that the Values Act

9   should be enjoined because provisions of the Values Act at issue in this case "expressly violat[e]

10  8 U.S.C. § 1373(a)" on its face.  Compl. ¶ 59; *see also* ¶¶ 55, 65.  Moreover, the federal

11  government's motion for preliminary injunction explicitly states that the same exact provisions of

12  the Values Act that were the subject of the State's Motion for Preliminary Injunction, Cal. Gov.

13  Code § 7284.6(a)(1)(C)-(D), "directly conflict with 8 U.S.C. § 1373(a)."  U.S. PI Mot. at 27.

14  **ARGUMENT**

15  "A district court has inherent jurisdiction to modify, alter, or revoke a prior order."  *De La*

16  *Torre v. CashCall, Inc.*, 56 F. Supp. 3d 1105, 1107 (N.D. Cal. 2014).  Under Ninth Circuit

17  precedent, reconsideration is appropriate when "the district court (1) is presented with newly

18  discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3)

19  if there is an intervening change in controlling law."  *See Sch. Dist. No. 1J, Multnomah Cty., Or.*

20  *v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993).

21      The federal government's action against the State (1) alleging that the Values Act expressly

22  violates Section 1373, and (2) solidifying their broad definition of Section 1373, which, in ways,

23  contradicts the definition that Defendants presented to this Court, constitutes new material facts

24  that justify reconsideration of the Court's previous order, as these facts underlay much of the

25  Court's determination on certain issues.

26

27

28

7

1

I.    **THE FEDERAL GOVERNMENT'S FILING OF A SEPARATE LAWSUIT ALLEGING THE VALUES ACT VIOLATES SECTION 1373 REPRESENTS A MATERIAL CHANGE IN FACT SUPPORTING RECONSIDERATION OF THE STATE'S LIKELIHOOD OF SUCCESS**

2

3        The federal government's final determination that the Values Act violates Section 1373,

4 and its interpretation of Section 1373 to support that determination, are material differences in

5 fact that were created by the federal government one day after the Court's PI Order.  Throughout

6 the briefing on the Motion for Preliminary Injunction and Motion to Dismiss, Defendants

7 repeatedly referred to the "ongoing" administrative process as a reason for dismissing the State's

8 First Amended Complaint ("Cal. FAC") on ripeness grounds.  *See, e.g.*, Opp'n to PI at 17-18.

9 As late as February 28, six days before filing an action premised on the Values Act's violation of

10 Section 1373, counsel for Defendants represented to this Court that there were "still negotiations

11 going on with respect to that issue."  *See, e.g.*, MTD Tr. at 41:7-13.

12        While the State argued it was entitled to relief, Defendants' representations about this

13 ongoing process caused the Court to delay making an assessment on the State's likelihood of

14 success at this preliminary stage.  Even though the Court agreed with the State that the ongoing

15 administrative process did not make the State's declaratory claim unripe, the Court was not

16 prepared to make a preliminary ruling in light of the uncertainty regarding the federal

17 government's interpretation of Section 1373 under the current record.  *See, e.g.*, PI Order at 2.

18        But the federal government's lawsuit against the State constitutes the end of the line for its

19 interpretation of Section 1373 and its relation to the Values Act.  For this reason, the Court no

20 longer needs a more complete record because the record now makes clear: (1) the federal

21 government believes the Values Act expressly violates Section 1373; and (2) it interprets Section

22 1373 in a manner that violates that statute's plain text and the Tenth Amendment.

23        The filing of the lawsuit represents the final decision not only of how the federal

24 government plans to act against the State because of its determination about the Values Act, but

25 also "how it views [the State's] legal obligations" under Section 1373. *AT&T Co. v. EEOC*, 270

26 F.3d 973, 975 (D.C. Cir. 2001) (when an agency files a lawsuit against a party, the agency has

27 decided "how it views [the party's] legal obligations" and "how it plans to act upon that view").

28 "Any doubt regarding the finality of this agency decision was removed by the [federal

8

1   government] filing the instant enforcement action." *Herman v. Excel Corp.*, 37 F. Supp. 2d 1117,

2   1122 (C.D. Ill. 1999); *Leslie Salt Co. v. United States*, 789 F. Supp. 1030, 1033 (N.D. Cal. 1991)

3   ("A final agency determination reviewable by this court occurs when the [agency] files a civil

4   enforcement action . . . ."). The positions of the parties with respect to the relation of Section

5   1373 to the Values Act could not be clearer. In its lawsuit against the State, the federal

6   government alleges that the Values Act violates Section 1373 *on its face*, Compl. ¶¶ 55, 59,

7   contending that a facial evaluation of the Values Act is sufficient to support their motion for

8   preliminary injunction. By comparison, the State's motion for preliminary injunction maintained

9   that it is likely to succeed on the claim that the Values Act plainly complies with Section 1373 on

10   its face. *See* Pl.'s Am. Mot. for Prelim. Inj., ECF No. 26 at 17-19.

11        Beyond the filing of the action itself, the federal government's interpretation of Section

12   1373 to support its determination that it conflicts with the Values Act provides the "parameters of

13   the federal government's interpretation of Section 1373," and supplies the record that the Court

14   believed was lacking at the time of the PI Order. *See* PI Order at 26. In its motion for

15   preliminary injunction, for the first time, the federal government has specified that it believes

16   work addresses are within the scope of Section 1373. *Compare* U.S. PI Mot. at 29 *with* Nov. 1

17   Letter (only seeking clarification of whether Values Act restricts the sharing of release dates and

18   home addresses) and MTD Tr. at 45:12-14 ("Mr. Readler: And we have articulated exactly

19   what . . . we think [Section 1373] means. The Court: Those two things? Mr. Readler: Yes.").

20        In addition, to support its final determination that the Values Act violates Section 1373, the

21   federal government presents the "contours" of its position to justify its determination that the

22   Values Act conflicts with Section 1373. U.S. PI Mot. at 29. This new position presented in this

23   separate litigation contradicts what it has represented to this Court as the boundaries of

24   information "regarding" immigration status:

25        •   The federal government claims that a home address is information regarding

26            immigration status because it is relevant to "whether an alien admitted in a particular

27            nonimmigrant status (e.g., B-1 business visitor) has remained in the United States

28            beyond their authorized period of admission, evidenced an intent not to abandon his or

9

1    her foreign residence, or otherwise violated the terms and conditions of such

2    admission (e.g., engaged in unauthorized employment)." U.S. PI Mot. at 29. Using

3    that same rationale, whether a person receives "unemployment services," pays utility

4    bills, or registers his or her vehicle in the U.S. would be just as relevant to showing

5    whether a person "evidence[s] an intent not to abandon his or her foreign residence,"

6    although Defendants represented to this Court that these pieces of information are not

7    encompassed by Section 1373. SF MTD Reply at 7.

8    • The federal government suggests that work addresses are relevant to "whether [an]

9       alien has been granted work authorization as a benefit attached to a particular status or

10       form of relief." U.S. PI Mot. at 29. Under Defendants' interpretation of Section 1373,

11       then, the fact that a person has applied for or is receiving unemployment benefits

12       could be relevant to whether a non-immigrant visa-holder has failed to maintain the

13       required employment necessary to maintain that immigration status. *See, e.g.*, 8

14       C.F.R. § 214.2(h). However, Defendants represented to the Court that the same

15       information is not within the scope of "regarding" immigration status. SF MTD Reply

16       at 7.

17    • The federal government also indicates that either home addresses, work addresses, or

18       both, are relevant to "whether an alien has accrued the necessary continuous presence

19       to be eligible for relief from removal." U.S. PI Mot. at 29 (citing 8 U.S.C. § 1229b).

20       An address, alone, does not say anything about a person's presence in the United

21       States for 5 or 10 years. *See* 8 U.S.C. § 1229b(a)(1), (b)(1)(A). Under the same logic,

22       whether a person has paid utility bills is just as informative of a person's presence in

23       the United States, which Defendants also represented to this Court as not being

24       encompassed within the term "regarding" a person's immigration status. SF MTD

25       Reply at 7.

26    To be clear, in the State's view, none of these examples involve information regarding

27  "citizenship or immigration status" within the meaning of Section 1373. But this new, broader,

28  and contradictory interpretation from the federal government confirms that its view of

10

1    "regarding" immigration status, indeed, "stop[s] nowhere." *Roach v. Mail Handlers Ben. Plan*,

2    298 F.3d 847, 849-50 (9th Cir. 2002) (following the Supreme Court in limiting the scope of

3    "relate to" in a contract to not supersede "the historic police powers of the States" without the

4    clear intent of Congress).

5         As the federal government's interpretation of Section 1373 in its motion for preliminary

6    injunction illustrates, if the federal government's interpretation of Section 1373 encompasses

7    "addresses" within the meaning of information regarding "immigration status," the term

8    "regarding immigration status" must also extend to encompass a vast array of other information

9    that state and local governments may have about a person.  Under this interpretation of Section

10   1373, the State must not only allow its employees to share information about addresses and

11   release dates, but must also permit the exchange of anything that suggests that a person may take

12   up residence in the United States, and not a foreign country—enrolling their children in school or

13   the Children's Health Insurance Program, obtaining a driver's license, or paying state and local

14   taxes.  This will cause a chilling effect, discouraging the state's residents from interacting with

15   governmental entities, including law enforcement.  *See. e.g.*, Cal. First Am. Compl. ¶¶ 30, 41,

16   119-20.  As the Second Circuit warned, even though Section 1373 does not require the sharing of

17   information regarding citizenship or immigration status, the Tenth Amendment may be

18   implicated if Section 1373 is interpreted to prohibit the shielding of "pertinent information, which

19   is essential to the performance of a wide variety of state and local governmental functions, [that]

20   may in some cases be difficult or impossible [to obtain] if some expectation of confidentiality is

21   not preserved." *City of New York v. United States*, 179 F.3d 29, 36 (2d Cir. 1999).

22        Defendants' most recent interpretation of Section 1373 does not comport with the plain text

23   of the statute or the Constitution.  None of the information that is implicated by the federal

24   government's increasingly expansive interpretation of Section 1373 is "unmistakably clear[ly]"

25   included in the statute's text as is required to "alter the usual constitutional balance between the

26   State and Federal Government." *Gregory v. Ashcroft*, 501 U.S. 452, 460-61 (1991); *see also*

27   *Bond v. United States*, 134 S. Ct. 2077, 2089 (2014).  Furthermore, this interpretation indeed

28   makes "the whole *object* of [Section 1373] to direct the functioning of the state executive," *Printz*

*v. United States*, 521 U.S. 898, 932 (1997) (emphasis in original) by making it impossible for the

State to "decline to administer the federal program." *New York v. United States*, 505 U.S. 144,

176-77 (1992).  The Tenth Amendment does not authorize the federal government to place the

State in the "position of taking the blame for [the] burdensomeness" and consequences of

allowing all of its governmental employees to provide expansive information about the State's

residents to immigration authorities, *see Printz*, 521 U.S. at 930, which the federal government's

interpretation of Section 1373 would require.  *See* FAC ¶¶ 119-20.

**II.   THESE MATERIAL CHANGES IN FACT SUPPORT RECONSIDERATION OF THE STATE'S IRREPARABLE HARM**

The federal government's determination that the Values Act violates Section 1373 and the

constitutional infirmities of its more expansive interpretation of Section 1373 also represent

material changes in fact and new evidence that contradict the representations the Court previously

relied upon to determine that the present injury to the State was not irreparable.  There are no

longer "open questions concerning the federal government's positions concerning" the Values

Act, *see* PI Order at 2, nor uncertainty as to the State's constitutional claim.  *See id.* at 26.  As

discussed above, the State has a stronger claim that applying Section 1373 in such a way that the

Values Act would be in violation of that provision (which the federal government now says it

"expressly" is) contravenes the Tenth Amendment.  These "constitutional violation[s]," coupled

with the monetary damages discussed below, "can suffice to show irreparable harm." *Am.*

*Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1058-59 (9th Cir. 2009) (relying on

*Morales v. Trans World Airlines, Inc.*, 504 U.S. 374 (1992)) (plaintiffs were injured when they

faced the choice of signing unconstitutional agreements or a loss of customer goodwill and

business).

Now knowing the federal government's definitive view that the Values Act violates Section

1373, in order to receive JAG or COPS funds, the State must choose between: (a) changing its

laws; or (b) certifying that it will comply with the federal government's unconstitutional

interpretation of Section 1373.  *See* PI Tr. at 29:16-19 ("So this year the Government is expecting

that the State, if they certify compliance, will be agreeing to the Government's interpretation on

12

1    the issues that we've raised to them."). And with respect to JAG, the State must make such a

2    certification under penalty of perjury. Pl.'s Req. for Judicial Notice in Supp. of Am. Mot. for

3    Prelim. Inj., Ex. A, ECF No. 27-1 at Appx II. The federal government's action intensifies the

4    already painfully stark choice the State confronts—to either change its laws or face the threat of

5    prosecution if it executes the certification. *See Morales*, 504 U.S. at 380-81 (injunctive relief

6    proper where "respondents were faced with a Hobson's choice: continually violate the Texas law

7    and expose themselves to potentially huge liability; or violate the law once as a test case and

8    suffer the injury of obeying the law during the pendency of the proceedings").

9          Moreover, the fact that the State is now faced with the choice of having to change its laws

10   in order to both receive these grant funds and avoid prosecution is enough to meet the irreparable

11   harm requirement. The State has a clear sovereign interest in "the exercise of sovereign power

12   over individuals and entities within the relevant jurisdiction-this involves the power to create and

13   enforce a legal code, both civil and criminal." *Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel.,*

14   *Barez*, 458 U.S. 592, 601 (1982). And courts have found that injuries to "sovereign interests and

15   public policies" can be "irreparable." *Kansas v. United States*, 249 F.3d 1213, 1227 (10th Cir.

16   2001); *see also Kiowa Indian Tribe of Okla. v. Hoover*, 150 F.3d 1163, 1171-72 (10th Cir. 1998)

17   (prohibition against full enforcement of sovereign laws sufficient to demonstrate "irreparable

18   harm as a matter of law"). In light of the federal government's lawsuit against the State, it is now

19   certain that the federal government will "follow[] its interpretation of Section 1373," PI Order at

20   27, and require certification of an interpretation of Section 1373 that the federal government itself

21   is convinced "directly conflict[s]" with the Values Act. *See* U.S. PI Mot. at 27.

22         Finally, the implications of Defendants' actions are fatal to the State's chances of receiving

23   the grants they are owed and constitute a material change in fact from what this Court relied on in

24   its previous decision regarding irreparable harm. In the PI Order, this Court concluded, "While

25   the State to date has suffered an injury, it is only in the delay of $1 million of a federal grant that

26   it previously received, not in the *refusal to pay*." PI Order at 28 (emphasis added). It is now clear

27   with respect to the COPS grant that there is not simply a "h[o]ld up" where payment is only

28   "delayed, for the moment," while USDOJ decides whether "the State is not complying with 8

13

1   U.S.C. § 1373."  PI Order at 2.  Rather, there has been a full denial, tantamount to a "refusal to

2   pay," given the federal government's clear statements in the new litigation that the provisions of

3   the Values Act at issue in this case "expressly violat[e] 8 U.S.C. § 1373(a)."  U.S. Compl. ¶ 59.[4]

4   Moreover, while the federal government has unilaterally decided to delay provision of the JAG

5   awards for an indeterminate amount of time, the outcome with regards to the State's application

6   now also appears to be a foregone conclusion—there is no chance that the federal government

7   will award the State and its local jurisdictions the congressionally-appropriated $28.3 million in

8   law enforcement funding, without the State first changing its laws, when the federal government

9   has stated without equivocation before another court that provisions of the Values Act expressly

10  violate Section 1373.

**CONCLUSION**

12      For the foregoing reasons, Plaintiff respectfully requests that the Court reconsider its Order

13  of March 5, 2018 denying the State's Amended Motion for Preliminary Injunction, and grant the

14  requested injunction.

---

[4] The Court suggested in its order that the amount of the COPS award "is not so great that the State could not cover it while the litigation continues."  PI Order at 27.  If the State does that, however, there is a risk that Defendants will withhold the State's COPS award on that basis as grant recipients cannot "supplant (replace) state, local, or BIA funds that would have been dedicated to the COPS Office-funded item(s) in the absence of the COPS Office-award (42 U.S.C. § 3796dd-3(a))."  ECF No. 66-1 at 5, § 4 (FY 2017 COPS award).

14

1    Dated:  March 13, 2018                                    Respectfully Submitted,

2                                                              XAVIER BECERRA
                                                              Attorney General of California
3                                                              SATOSHI YANAI
                                                              Supervising Deputy Attorney General
4
                                                              */s/ Lee Sherman*
5                                                              */s/ Lisa C. Ehrlich*
                                                              */s/ Sarah E. Belton*
6
                                                              LEE SHERMAN
7                                                              LISA C. EHRLICH
                                                              SARAH E. BELTON
8                                                              Deputy Attorneys General
                                                              *Attorneys for Plaintiff*
9                                                              *State of California*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

State of California's Motion for Reconsideration; MPA in Support Thereof (17-cv-4701)