1  XAVIER BECERRA
   Attorney General of California
2  MICHAEL L. NEWMAN
   Senior Assistant Attorney General
3  SARAH E. BELTON
   Supervising Deputy Attorney General
4  LEE SHERMAN (SBN 272271)
   Deputy Attorney General
5   300 South Spring Street, Suite 1702
    Los Angeles, CA  90013
6   Telephone:  (213) 269-6404
    Fax:  (213) 897-7605
7   E-mail:  Lee.Sherman@doj.ca.gov
   *Attorneys for Plaintiff State of California*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **STATE OF CALIFORNIA, ex rel, XAVIER BECERRA, in his official capacity as Attorney General of the State of California,**<br><br>Plaintiff,<br><br>v.<br><br>**JEFFERSON B. SESSIONS, in his official capacity as Attorney General of the United States, *et al.*;**<br><br>Defendants. | 3:17-cv-04701-WHO<br><br>**PLAINTIFF STATE OF CALIFORNIA'S NOTICE OF MOTION AND MOTION TO ENFORCE NOVEMBER 20, 2018 AMENDED JUDGMENT AND ORDER; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:  December 21, 2018<br>Time:  10:00 am<br>Dept.:  2<br>Judge:  Honorable William H. Orrick<br>Action Filed: August 14, 2017 |

**TABLE OF CONTENTS**

**Page**

NOTICE OF MOTION AND MOTION TO ENFORCE JUDGMENT ........................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES .................................................................. 1

INTRODUCTION ............................................................................................................................ 1

BACKGROUND .............................................................................................................................. 2

    I.    Project Safe Neighborhoods History ............................................................................ 2

    II.   Developments Following the Court's Summary Judgment Order ............................... 5

ARGUMENT .................................................................................................................................... 7

    I.    Legal Standard ............................................................................................................. 7

    II.   Defendants Have Violated the Amended Judgment and Order by Withholding California's PSN Funding ........................................................... 8

        A.    Defendants are Violating the Court Order by Enforcing the § 1373 Requirement Under a Different Label ............................................ 8

        B.    Defendants Lack Statutory or Constitutional Authority to Incorporate the Terms of § 1373 or Enforce their New PSN Immigration Conditions ........................................................................ 11

CONCLUSION .............................................................................................................................. 14

**TABLE OF AUTHORITIES**

**Page**

**CASES**

*Apple Comput., Inc. v. Formula Int'l, Inc.*
    594 F. Supp. 617 (C.D. Cal. 1984) ..........................................................................................8

*California v. U.S. Dep't of Labor*
    155 F. Supp. 3d 1089 (E.D. Cal. 2016) ....................................................................................7

*Champaign Cty. v. U.S. Law Enf't Assistance Admin.*
    611 F.2d 1200 (7th Cir. 1979) ................................................................................................12

*City of Los Angeles v. Sessions*
    293 F. Supp. 3d 1087 (C.D. Cal. 2018) ..................................................................................13

*Gilbert v. Johnson*
    490 F.2d 827 (5th Cir. 1974) ....................................................................................................8

*Heartland Hosp. v. Thompson*
    328 F. Supp. 2d 8 (D.D.C. 2004) ..............................................................................................7

*Kahmann v. Reno*
    967 F. Supp. 731 (N.D.N.Y. 1997) ...........................................................................................8

*Lincoln v. Vigil*
    508 U.S. 182 (1993) ...............................................................................................................11

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*
    463 U.S. 29 (1983) .................................................................................................................14

*Pennhurst State Sch. & Hosp. v. Halderman*
    451 U.S. 1 (1981) ...................................................................................................................13

*Planned Parenthood of Ind., Inc. v. Comm'r of the Ind. State Dep't of Health*
    699 F.3d 962 (7th Cir. 2012) ..................................................................................................12

*Robbins v. Reagan*
    780 F.2d 37 (D.C. Cir. 1985) .................................................................................................13

*Rodriguez v. Cuomo*
    953 F.2d 33 (2d Cir. 1992) .....................................................................................................12

*Rural Alaska Cmty. Action Program v. Smith*
    847 F.2d 535, 535, 537 (9th Cir. 1988) ..................................................................................12

# TABLE OF AUTHORITIES
## (continued)

**Page**

*SEC v. Hermil*
   838 F.2d 1151 (11th Cir. 1988) .................................................................................................7

*South Dakota v. Dole*
   483 U.S. 203 (1987) ...............................................................................................................13

*Westlake N. Prop. Owners Ass'n v. City of Thousand Oaks*
   915 F.2d 1301 (9th Cir. 1990) .................................................................................................7

**STATUTES**

5 United States Code
   § 706 ...................................................................................................................................2, 14

8 United States Code
   § 1373 ............................................................................................................................. *passim*

34 United States Code
   § 41504 ........................................................................................................................2, 11, 14
   § 60701 .....................................................................................................................................3
   § 60702 ...................................................................................................................................12
   § 60703 ...................................................................................................................................11
   § 60705 .....................................................................................................................................3

Consolidated Appropriations Act of 2018, Pub. L. No. 115-141, 132 Stat. 348, 420
   and 436 .....................................................................................................................................3

21st Century Department of Justice Appropriations Authorization Act, Pub. L. No.
   107-273, § 104, 116 Stat. 1758, 1766 (2002) ..........................................................................2

The Project Safe Neighborhoods Grant Program Authorization Act of 2018, Pub L.
   No. 115-185, 132 Stat. 1485 ................................................................................................2, 3

**CONSTITUTIONAL PROVISIONS**

United States Constitution
    Tenth Amendment ................................................................................................................1, 5
    Article I, Section 8, Clause 1 ..................................................................................................2

**COURT RULES**

Federal Rules of Civil Procedure 70 .....................................................................................1, 7, 8

**NOTICE OF MOTION AND MOTION TO ENFORCE JUDGMENT**

PLEASE TAKE NOTICE that on December 21, 2018 at 10:00 am or as soon thereafter as it may be heard before the Honorable William H. Orrick in Courtroom 2 of the U.S. District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, CA 94102, Plaintiff State of California, ex rel. Xavier Becerra, California Attorney General, will and does hereby move to enforce this Court's November 20, 2018 Amended Judgment and Order, ECF No. 154, under the Court's inherent powers to enforce its own orders and Fed. R. Civ. P. 70.  This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the declarations, the Request for Judicial Notice, as well as the papers, evidence and records on file, and any other written or oral evidence or argument as may be presented at or before the time this Motion is heard by the Court.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

California respectfully requests that the Court enforce its November 20, 2018 Amended Judgment and Order by compelling Defendants to immediately award approximately $1.5 million in public safety funds that Defendants have presently withheld from California, which are conditioned on compliance with 8 U.S.C. § 1373.  At issue in this Motion is a block grant referred to as Project Safe Neighborhoods ("PSN") that California has annually received.  Congress required that the Attorney General establish PSN funding for each judicial district to promote federal coordination with state and local law enforcement officials in enforcing federal firearms laws, including school gun violence and juvenile gun offenses.  Although PSN has no relationship to immigration enforcement, for the first time, in fiscal year ("FY") 2018, Defendants required PSN recipients to certify compliance with § 1373, and to not violate § 1373, as conditions to the grant.  Incidentally, on October 3, 2018, Defendants released PSN funding and allocated funding to 86 of 93 judicial districts, but withheld funding from judicial districts in California and two other states that Defendants previously identified as potentially being non-compliant with § 1373.

On October 5, 2018, the Court granted California's motion for summary judgment and declared that § 1373 is unconstitutional on its face under the Tenth Amendment of the U.S.

1

Constitution. Following this ruling, and despite § 1373's unconstitutionality, Defendants sought to alter the judgment to preserve their ability to "incorporate the terms" of § 1373 as a condition for PSN. ECF No. 151 at 1-2. After two rounds of briefing, the Court enjoined Defendants from conditioning any federal funding "on the basis of 8 U.S.C. § 1373's independent statutory obligations," ECF No. 154 at 3, and determined that Defendants may only "incorporate[] the terms of Section 1373" as a condition on funding where they have separate statutory authority to do so. ECF No. 153. Undeterred, Defendants last week informed California that regardless of the Court's judgment, they will not award PSN funding to the State on the basis of a new rationale: Defendants "doubt . . . California's willingness and ability to work in full partnership with federal law enforcement officials." Decl. of Lee Sherman, Ex. B at 1 ("Sherman Decl.").

While California has imposed limitations on its law enforcement officers' ability to participate in immigration enforcement, California does partner with federal law enforcement, including immigration authorities, on criminal matters. The record demonstrates that Defendants' new explanation for withholding PSN funding from California is an end-run around the Amended Judgment and Order. Even if it were not, Defendants lack the statutory authority to impose substantive conditions on California to punish it for not cooperating on immigration enforcement ("PSN Immigration Conditions"). Nor do the PSN Immigration Conditions pass muster under the Spending Clause, U.S. Const. art. I, § 8, cl. 1, and Administrative Procedure Act, 5 U.S.C. § 706 (2012).

## BACKGROUND

### I. PROJECT SAFE NEIGHBORHOODS HISTORY

Project Safe Neighborhoods (PSN) was originally created by Congress in 2002 as part of the 21st Century Department of Justice Appropriations Authorization Act, Pub. L. No. 107-273, § 104, 116 Stat. 1758, 1766 (2002). Congress provided that "[t]he Attorney General *shall* establish a program for *each* United States Attorney to provide for coordination with State and local law enforcement officials in the identification and prosecution of violations of Federal firearms laws including school gun violence and juvenile gun offenses." 34 U.S.C. § 41504(a) (emphasis added). On June 18, 2018, the President signed into law the Project Safe Neighborhoods Grant

Program Authorization Act of 2018, Pub L. No. 115-185, 132 Stat. 1485, chaptered as 34 U.S.C. §§ 60701-60705. That law re-established PSN and appropriated funds for FY 2019 to 2021, *id.* § 60705, without repealing 34 U.S.C. § 41504. Neither the statutory language nor the legislative history of any iteration of PSN indicates that Congress intended a relationship between PSN and immigration enforcement. *See id.* §§ 41504(a), 60701-60705; *see also* Decl. of Gina Buccieri-Harrington ¶ 6 ("Harrington Decl.") ("No PSN award has ever contained a condition requiring California to assist in immigration enforcement.").

For FY 2018, USDOJ effectuates its statutory obligation under PSN by using an appropriation from Congress to fund the program and treating it as a block grant tied to a specific formula. *See* RJN Ex. A at 4 (relying on the Consolidated Appropriations Act of 2018, Pub. L. No. 115-141, 132 Stat. 348, 420 and 436); RJN Ex. H at 2 (referring to PSN as a block grant); RJN Ex. C at 3 (describing formula for PSN funding distribution); Sherman Decl., Ex. B at 3 (relying on Congress's appropriations "for competitive and evidence-based programs to reduce gun crime and gang violence" as providing funding for PSN).[1] Each U.S. Attorney's office in a federal judicial district must select a "fiscal agent" that is certified by that district's U.S. Attorney's office to apply for PSN funds. RJN Ex. A at 1 (FY 2018 PSN Solicitation). Once funds are disseminated to the fiscal agents, fiscal agents hold a competitive process to identify subrecipients intending to use the funds consistent with PSN purposes. *Id.* at 5. The FY 2018 PSN Solicitation promotes "flexibility of the program to adjust to the particular realities of individual jurisdictions," and recognizes that due to the "significant differences among U.S. communities in the level and nature of violent crime, PSN needs to be able to adapt to the unique circumstances of each local jurisdiction." *Id.* at 5-6.

Between 2007 and 2017, the California Governor's Office of Emergency Services ("OES") has annually applied for and received PSN funding as a fiscal agent for disbursing subawards to California local jurisdictions to use in connection with their local U.S. Attorney's offices. Harrington Decl. ¶ 6. Consistent with the purpose of PSN, those subgrants were focused on

---

[1] There is some information that suggests that PSN was treated as a competitive grant for a period of time between PSN's inception and the present despite no change in the statute. USDOJ's implementation of PSN in prior years is not at issue in this motion.

3

reducing crime throughout the State. For example, in FY 2017, OES issued a $450,000 PSN award to the Bakersfield Police Department to contract with ShotSpotter to more timely pinpoint the location of gunfire in real time, and in FY 2016, OES issued a $450,000 PSN award to the Fresno Police Department, in part, to purchase a National Integrated Ballistics Information Network to test crime scene evidence. *Id.* ¶ 7.

On or about June 18, 2018, USDOJ released the FY 2018 PSN Solicitation. In it, USDOJ acknowledged that PSN is to fund projects for "each" district where there is a U.S. Attorney, RJN Ex. A at 4-5, and that USDOJ intended to make PSN awards to each such district. *Id.* at 11. The PSN Solicitation stated that fiscal agents are subject to pre-eligibility requirements identified on the title page of the document, *id.* at 8, 14, that consist of certification as a fiscal agent by the relevant U.S. Attorney's office and agreement to forego any profit or management fee. *Id.* at 1. In addition, for the first time, in FY 2018, USDOJ requires the chief legal officer of the state or local government agencies applying as fiscal agents to "properly execute, and the fiscal agent must submit, the specific certification regarding compliance with 8 U.S.C. § 1373," *id.* at 2, which is Appendix G to the PSN Solicitation. All subrecipients of PSN funding also must submit a § 1373 certification to receive an award. *Id.* at 20-21. Furthermore, in the PSN Solicitation, USDOJ identified only one new "Express Award Condition" to be included in FY 2018 awards applying with respect to the "program or activity" to be funded: "*Not to violate (and certify that it is not in violation of) 8 U.S.C. § 1373*." *Id.* at 32 (emphasis added).

On July 19, 2018, OES submitted complete FY 2018 applications for PSN funds for local California jurisdictions to use in the Northern, Central, Southern, and Eastern Districts. Harrington Decl. ¶ 9. The total request for the Northern, Central, and Southern Districts was $1,471,699.[2] *Id.* ¶ 11. OES complied with the pre-eligibility requirements applicable to fiscal agents in the FY PSN 2018 Solicitation. *Id.* ¶ 9. Although it was not required to include the § 1373 certification until acceptance of the PSN award, *see, e.g.*, RJN Ex. A at 2, OES submitted

---

[2] On August 23, BJA notified Cal OES that its application for the Eastern District of California was denied because the Eastern District decided to proceed with a different fiscal agent other than Cal OES for the portion of funds set aside for that district. Harrington Decl. ¶ 11 & Ex. B. In this Motion, California does not seek receipt of the funds that Cal OES applied for as part its application for use of PSN funds in the Eastern District of California.

4

California's certification of compliance with § 1373 as a supplemental statement to each of its applications explaining that the State's laws comply with that statute. Harrington Decl. ¶ 10 & Ex. A. On September 6, BJA contacted OES asking for its § 1373 certification of compliance. *Id.* ¶ 12 & Ex. C. OES responded by pointing to the supplemental statement already submitted. *Id.* BJA said it would follow-up with any additional questions, but never did. *Id.* OES never received any FY 2018 PSN funding, or any response from USDOJ about the status of its application despite its follow-up. *Id.* ¶ 13 & Ex. C.

On October 3, 2018, USDOJ announced the release of PSN funding, RJN Ex. B (PSN Press Release), and released a chart with the PSN funding allocations. RJN Ex. C. As the chart illustrates, Defendants made PSN allocations to judicial districts in every state except for California, Oregon, and Illinois (Northern and Central Districts). *Compare id. with* RJN Ex. D (list of all U.S. Attorney districts). Defendants previously indicated that each of those three states may have laws or policies that violate § 1373. RJN Exs. E - G.

## II.   DEVELOPMENTS FOLLOWING THE COURT'S SUMMARY JUDGMENT ORDER

On October 5, 2018, the Court granted the State's motion for summary judgment. Among other things, the Court: (a) declared that that the State's TRUST, TRUTH, and Values Acts, and State Confidentiality Statutes comply with § 1373; (b) declared that § 1373 is unconstitutional on its face under the Tenth Amendment of the U.S. Constitution; and (c) enjoined Defendants from enforcing § 1373 against any California state entity or political subdivision. ECF No. 138.

Defendants moved to alter or amend the judgment. ECF No. 139. As it relates to § 1373, Defendants sought an amendment to allow Defendants to "impos[e] other grant conditions based on other statutory authority, including, where relevant authority exists, an independent grant condition that incorporates the terms of Section 1373." *Id.* at 5. California opposed the motion because "Defendants' proposed modification would allow them to require compliance with an unconstitutional law, even where that statutory authority does not exist." ECF No. 143 at 14-15. At the October 26, 2018 hearing on Defendants' motion, the Court requested additional briefing on how Defendants "might employ Section 1373 in ways that the current Judgment would prohibit." ECF No. 149. Defendants' brief acknowledged that PSN includes an "award

5

condition[] that incorporate[s] Section 1373 or its language," and asked the Court to limit its injunction to not prevent them from doing so. ECF No. 151 at 1. California responded by noting that Defendants not only "incorporate" the terms of § 1373 for PSN funding, but require compliance with the statute itself, and asked the Court to enjoin use of § 1373 as a grant condition dependent on that statute being an extant federal law. *See generally* ECF No. 152.

Meanwhile, California sought to meet and confer with Defendants about PSN funding in an attempt to reach a resolution without further litigation. On October 29, California asked counsel for Defendants for their legal authority to require compliance with § 1373 to receive PSN funding, and for "Defendants' basis for withholding PSN funding from California" in light of the Court's finding that the TRUST, TRUTH, and Values Acts, and State Confidentiality Statutes comply with § 1373. Sherman Decl., Ex. A at 3-4. Responding on October 30, Defendants declined to provide any statutory authority for requiring compliance with § 1373, and said that "Defendants are considering whether they can issue the Project Safe Neighborhoods funding to California in light of the court decisions in the FY 2017 litigation." *Id*. Ex. A at 2. Defendants did not provide that response until November 19. In an email sent on that date, Defendants stated that they "do not intend to issue PSN funding to the State in light of Judge Orrick's October 5, 2018 judgment." *Id*. Ex. B at 3. Although this Court had yet to issue the Amended Judgment and Order, Defendants indicated their position on withholding PSN funding from California stood no matter "where[] the courts may ultimately land on the constitutionality of 8 U.S.C. § 1373." *Id.* at 2. Defendants asserted that, when deciding whether to award PSN funding to California, it is "within the Attorney General's discretion to consider the extent to which PSN fiscal agents and sub-grantees are willing to 'work in partnership' with 'all levels of law enforcement,'" which Defendants said included "sharing information with DHS related to criminal aliens." *Id.* at 3.

The next day, on November 20, the Court issued the Amended Judgment and Order, and adopted California's proposed language. ECF Nos. 153-54. As relevant here, the ruling enjoins Defendants from "[r]equiring compliance with 8 U.S.C. § 1373 as a grant condition against any California state entity or political subdivision . . . on the basis of 8 U.S.C. § 1373 being an

'applicable Federal law,' or on the basis of 8 U.S.C. § 1373's independent statutory obligations." ECF No. 154 at 3.

Both before and after the issuance of the Amended Judgment and Order, on November 19 and 20, California asked Defendants to provide their basis for withholding PSN funding in light of the declaratory relief previously granted by this Court. Sherman Decl., Ex. B at 2-3. On November 20, following the Court's Amended Judgment and Order, California asked Defendants whether they plan on reconsidering their position to withhold PSN funding from California. *Id.* at 2. On November 22, Defendants asserted that they will continue withholding PSN funding from California, and claimed that their basis for withholding PSN funding from California is not based on § 1373, but because they profess "doubt as to California's willingness and ability to work in full partnership with federal law enforcement officials."[3]

**ARGUMENT**

**I.   LEGAL STANDARD**

A court may grant a motion to enforce the court's previous judgment if the prevailing party demonstrates its opponent has not complied with the judgment's terms. *California v. U.S. Dep't of Labor*, 155 F. Supp. 3d 1089, 1096 (E.D. Cal. 2016). It is "particularly appropriate" to grant this relief against an agency that neglects the mandate of a federal court. *Id.* "Within a court's power to administer its decrees is the power to construe and interpret the language of the judgment." *Heartland Hosp. v. Thompson*, 328 F. Supp. 2d 8, 11-12 (D.D.C. 2004) (citing *SEC v. Hermil, Inc.*, 838 F.2d 1151, 1153 (11th Cir. 1988)).

Moreover, under Federal Rule of Civil Procedure 70, a district court may exercise jurisdiction to administer remedies for failure to follow a court order. *Westlake N. Prop. Owners Ass'n v. City of Thousand Oaks*, 915 F.2d 1301, 1303 (9th Cir. 1990). Rule 70 states that if a party is directed to perform a specific act and fails to comply as specified, the court may direct the act

---

[3] Defendants also refused to retain California's portion of PSN funds pending resolution of this matter. Sherman Decl., Ex. B at 1. That issue has been addressed, for now, by the Court's November 27, 2018 minute order reflecting Defendants' agreement to "hold the funds, preserving the status quo until the matter is decided." ECF No. 23. California reserves its right to seek immediate relief from the Court to prevent Defendants' from disbursing California's PSN funds to other jurisdictions outside California if circumstances should change.

to be done through a number of remedies. *See, e.g., id.* at 1304 (explaining that Rule 70 applies to the parties "who have failed to perform specific acts pursuant to a judgment). In a case against the United States, or an officer or agency thereof, Rule 70 allows relief by an order to execute specific acts, *see Gilbert v. Johnson*, 490 F.2d 827, 829–30 & n.5 (5th Cir. 1974), or directing another entity or individual to comply with the judgment. *See* Fed. R. Civ. P. 70(a); *Kahmann v. Reno*, 967 F. Supp. 731, 734 (N.D.N.Y. 1997).

## II. DEFENDANTS HAVE VIOLATED THE AMENDED JUDGMENT AND ORDER BY WITHHOLDING CALIFORNIA'S PSN FUNDING

### A. Defendants are Violating the Court Order by Enforcing the § 1373 Requirement Under a Different Label

The record demonstrates that Defendants have sought to administer two different types of FY 2018 PSN programs. The first is the formula program reflected in the FY 2018 PSN Solicitation that had one new award condition of compliance with § 1373, which USDOJ enforced by awarding PSN funds to every jurisdiction in the United States, except those in states that USDOJ believes violate § 1373. The second is the discretionary program that USDOJ revealed after the Court's order on California's motion for summary judgment. Undeniably, USDOJ could not withhold PSN funds from California under the first type of program because under the Amended Judgment and Order, it can no longer "requir[e] compliance with 8 U.S.C. § 1373 as a grant condition against any California state entity or political subdivision . . . on the basis of 8 U.S.C. § 1373's independent statutory obligations." ECF No. 154 at 3. But, USDOJ cannot withhold funds from California under this alternate version of PSN either because Defendants' basis for withholding PSN funding from California would amount to nothing more than a post-hoc justification to circumvent the Court's judgment on § 1373. *See, e.g.*, *Apple Comput., Inc. v. Formula Int'l, Inc.*, 594 F. Supp. 617, 622-23 (C.D. Cal. 1984) (granting contempt order and enforcing preliminary injunction when defendant acted "upon a pretext to avoid the impact of the injunction and to achieve the same improper objective").

To be sure, just last week, Defendants stated that they are withholding PSN funding from California not because of § 1373 compliance concerns, but out of "doubt as to California's willingness and ability to work in full partnership with federal law enforcement officials."

Sherman Decl. Ex. B at 1. But there is no requirement in the FY 2018 PSN Solicitation that fiscal agents "work in full partnership with federal law enforcement officers." *See* RJN Ex. A at 1-2 (eligibility requirements for fiscal agents). Instead, the requirement of "working in partnership with a wide range of engaged stakeholders" that Defendants pointed to applies to the *U.S. Attorneys*. *See* RJN Ex. A at 6 ("The USA must work in partnership with federal, state, local and tribal law enforcement and prosecutors, as well as the community."); *see also* RJN Ex. A at 4 ("[E]ach USA is responsible for establishing a collaborative PSN team of federal, state, local, and tribal law enforcement…."). Other than requiring compliance with § 1373, the FY 2018 PSN Solicitation does not impose requirements on the fiscal agent to change its practices to match federal priorities, but directs that it is "*PSN* [that] needs to be able to adapt to the unique circumstances of each local jurisdiction." *See id* at 6. (emphasis added).

The FY 2018 PSN Solicitation only requires limited eligibility criteria for fiscal agents, *id.* at 2, as it makes clear that the "competitive" aspect of PSN occurs in the selection of subrecipients after fiscal agents receive their awards. *See id.* at 5 ("After BJA grant funds are disseminated, the recipients (fiscal agents) must hold a competitive application process to determine subrecipients for the funds."). The only relevant eligibility criteria that the FY 2018 PSN Solicitation requires of fiscal agents that is in question here is compliance with § 1373. *Id.* at 2. Likewise, the document identifies just one new express award condition: a condition "[n]ot to violate (and certify that it is not in violation of) 8 U.S.C. § 1373." *Id.* at 32. Although California has received PSN funding every year since 2007, California has not received PSN funding now that § 1373 was added as a grant condition. Harrington Decl. ¶¶ 6, 14. When Defendants issued PSN funding on October 3, the only jurisdictions that they did not fund were in California, Oregon, and Illinois, the same states that Defendants claimed may violate § 1373. *See* RJN Exs. C - G. Even on November 19, before the issuance of the Amended Judgment and Order, Defendants asserted they had authority to "require compliance with the substance of what is set forth in Section 1373," and indicated part of their consideration was the extent that California "share[s] information with DHS related to criminal aliens." Sherman Decl., Ex. B at 3.

9

Only after the Amended Judgment and Order, and after briefing on whether Defendants could require compliance with § 1373 as a condition for PSN, did Defendants claim that something other than § 1373 compliance could result in the denial of a PSN award. California asked Defendants on multiple occasions, dating back to October 29, to provide their basis for failing to award PSN funding to California. Sherman Decl., Ex. A at 4 & Ex. B at 2-3. Only on November 22 did Defendants finally answer that question and state a reason not explicitly based on § 1373 but having the exact same effect. This course of conduct raises clear suspicions that Defendants' current justifications for withholding funds are but a maneuver for maintaining the same § 1373 condition that this Court has declared unconstitutional, which the Court expressed concern with when deciding the scope of the judgment. Hr'g Tr. at 21:11-14, Oct. 26, 2018 ("What is unclear to me is whether there are going to be any other moves that the Department would like to make that will come in from the side and undermine my order. And that's the thing I just want to be very clear about.").

In any event, the undisputed evidence submitted at summary judgment revealed that California acts in "partnership" with federal law enforcement, including immigration authorities, on criminal law enforcement matters, which is what PSN is intended to support. *See generally* ECF No. 116-3, Ex. 1 (Decl. of Chris Caligiuri). Reflective of that collaboration, on August 31, 2018, USDOJ announced the success of a joint operation between multiple federal, state, and local law enforcement agencies including USDOJ, Immigration and Customs Enforcement Homeland Security Investigations ("ICE-HSI"), California Department of Justice ("Cal DOJ"), and California Highway Patrol, resulting in the arrest of over 20 MS-13 gang members, where U.S. Attorney McGregor Scott recognized, "The operation leading to today's arrests reflects the incredible teamwork between our federal, state, and local law enforcement partners, and our shared commitment to keeping our communities safe from violent criminal gangs like MS-13." RJN Ex. I. The public record is replete with numerous other examples of this level of partnership between California state law enforcement and federal law enforcement on criminal matters. *See, e.g.*, RJN Exs. J - K (2018 USDOJ and Cal DOJ press releases evidencing collaboration between California state law enforcement and ICE-HSI); L - V (2018 USDOJ and Cal DOJ press releases

evidencing collaboration between California and federal law enforcement generally).  The notion that California does not partner with federal law enforcement is fanciful, and cannot form a legitimate basis for withholding PSN funding from California.

    **B.**    **Defendants Lack Statutory or Constitutional Authority to Incorporate the Terms of § 1373 or Enforce their New PSN Immigration Conditions**

In its Amended Judgment and Order, the Court clarified that the ruling "do[es] not prohibit DOJ from incorporating the terms of Section 1373 as a condition for any program *if it has separate statutory authority*."  ECF No. 153 at 1 (emphasis added).  Defendants' asserted basis for imposing the § 1373 requirement on PSN funding and withholding funding from California is their belief that PSN is purely a discretionary grant tethered to a lump-sum appropriation.[4]  According to Defendants, it follows that they do not need any statutory authority to support the imposition of the PSN Immigration Conditions.  That is not true.  PSN has been authorized by statute since 2002.  That statute mandates the Attorney General carry out a program "for *each* United States Attorney to provide for coordination with State and local law enforcement officials in the identification and prosecution of violations of Federal firearms laws including school gun violence and juvenile gun offenses."  34 U.S.C. § 41504(a) (emphasis added); *see also* 34 U.S.C. § 60703(a) (PSN's purpose is "to foster and improve existing partnerships . . . in *each* Federal judicial district") (emphasis added).

Indeed, before the Court's order on California's motion for summary judgment, USDOJ implemented PSN as a formula grant consistent with the authorizing statute's design.  The FY 2018 PSN Solicitation said the Bureau of Justice Assistance (BJA) "expects to make 93 awards," which USDOJ clarified equates to "one *formula* award will be made per U.S. Attorney."  RJN Ex. A at 12 & n.9 (emphasis added); *see also* RJN Ex. C at 3 (describing formula).  In their FY 2018

---

[4] In their correspondence with California, Defendants rely on *Lincoln v. Vigil*, 508 U.S. 182 (1993), as providing them with seemingly boundless authority to add conditions to grants that stem from lump-sum appropriations.  *Lincoln* holds that when "Congress merely appropriates lump-sum amounts without statutorily restricting what can be done with those funds." *Id.* at 192.  But *Lincoln* is clearly distinguishable, as there the courts "concededly could identify no statute or regulation even mentioning the Program." *Id.* at 190.  Conversely, here, 34 U.S.C. § 41504 "mention[s]" PSN and imposes the requirement that grants be awarded to each judicial district and for the specified purposes of "identification and prosecution of violations of Federal firearms laws," thus, constraining Defendants' ability to impose conditions on PSN.

budget request, USDOJ classified PSN as a "block grant,"[5] RJN Ex. H at 2, which is a "formula grant[] based on respective populations" and different than discretionary grants. *Champaign Cty. v. U.S. Law Enf't Assistance Admin.*, 611 F.2d 1200, 1203 (7th Cir. 1979). The Ninth Circuit, and others, have recognized that the structure of "the block grant system . . . permits the states to administer the programs with minimal federal involvement and few federal procedural requirements." *Rural Alaska Cmty. Action Program v. Smith*, 847 F.2d 535, 535, 537 (9th Cir. 1988); *see also Planned Parenthood of Ind., Inc. v. Comm'r of the Ind. State Dep't of Health,* 699 F.3d 962, 985 (7th Cir. 2012) ("As a general matter, federal block grants devolve control to the states over the disbursement of federal funds."); *Rodriguez v. Cuomo*, 953 F.2d 33, 38 (2d Cir. 1992) (the "desire to allocate funds to the states in the form of block grants" was intended so that the grants "could be used efficiently in meeting the differing needs of local communities"). By emphasizing that "PSN needs to be able to adapt to the unique circumstances of each local jurisdiction," the FY 2018 PSN Solicitation works in concert with the purposes of a block grant. RJN Ex. A at 7. When announcing the awarding of FY 2018 PSN funds, Former Attorney General Sessions agreed: "PSN is not a Washington-centered program. In fact, it's just the opposite. PSN simply provides a flexible framework that can be adapted to the situation on the ground in local communities . . . and across the country." RJN Ex. W (Oct. 3, 2018).

Particularly because PSN is a block grant without any substantive conditions codified into the authorizing statute, Defendants' authority to add substantive conditions to PSN funding, are therefore, limited to conditions that "the block-granted money be used for the stated purposes." *Planned Parenthood of Ind.*, 699 F.3d at 982. Since immigration enforcement is not provided for as a stated purpose in the PSN statute, Defendants cannot add the substantive immigration conditions they have sought to impose. That is not to say that Defendants lack all discretion. Since Congress did not include a specific formula amount, Defendants may set the method for calculating allocations for each jurisdiction so long as it is a reasonable method that is not arbitrary or capricious and does not conflict with the statute. Defendants may delineate criteria consistent with program objectives for fiscal agents to consider when awarding subgrants. *See,*

---

[5] The new authorizing statute also identifies PSN as a "block grant." 34 U.S.C. § 60702.

12

*e.g.*, RJN Ex. A at 7-9. Defendants may also impose conditions tied to PSN's purpose of identifying and enforcing federal firearms laws if Defendants "make its allocations based on factors solely related to the goal of implementing the stated statutory purposes in a reasonable fashion, rather than taking irrelevant or impermissible factors into account." *Robbins v. Reagan*, 780 F.2d 37, 48 (D.C. Cir. 1985). But Defendants cannot, as they do here, create substantive requirements untethered to PSN's purposes. If Defendants interpretation holds, and "the Attorney General can favor applicants based on any factors relevant to public safety, he enjoys nearly limitless discretion to select grant awardees in ways not even tangentially related to" federal firearms laws. *City of Los Angeles v. Sessions*, 293 F. Supp. 3d 1087, 1098 (C.D. Cal. 2018).

Even if Defendants had statutory authority to impose conditions on PSN, those conditions would fail to satisfy the Spending Clause for the same reason that Defendants' JAG conditions fell short. *See South Dakota v. Dole*, 483 U.S. 203, 207 (1987) (requiring spending conditions to be "unambiguous[]" and sufficiently related to the federal interest in the specific program being funded). First, Defendants' shifting requirements for PSN funding, and nebulous and subjective post-hoc PSN Immigration Conditions, violate the ambiguity prong of the Spending Clause by being "largely indeterminate" and failing to provide the State with "clear notice" of what is necessary in order to receive PSN funds. *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 24-25 (1981); *see* ECF No. 137 at 36-37 ("DOJ's evolving interpretations of the [§ 1373] certification condition . . . demonstrate ambiguities" that do not comply with the Spending Clause). Second, as the Court found with JAG, the federal interest in creating PSN "do[es] not relate to immigration enforcement" to satisfy the Spending Clause's relatedness test. *See* ECF No. 137 at 39. Congress's purpose in creating PSN is to promote "coordination … in the identification and prosecution of violations of Federal firearms laws including school gun violence and juvenile gun offenses." 34 U.S.C. § 41504(a). Congress did not indicate any intention to require participation in civil immigration enforcement. Furthermore, just as one of JAG's primary purposes is to "give State and local governments more flexibility to spend money for programs that work for them rather than to impose a 'one size fits all' solution," H.R. Rep. No. 109-233, at 89 (2005), as discussed *supra*, the FY 2018 PSN Solicitation emphasizes

13

"flexibility" as a "key factor" to PSN's success and the importance of adapting "to the unique circumstances of each local jurisdiction." RJN Ex. A at 6-7. A requirement to comply with the terms of § 1373 or engage in immigration enforcement cannot be squared with the flexibility that PSN is intended to promote. *See* ECF No. 137 at 38.

For the same reasons, the PSN Immigration Conditions are arbitrary and capricious in violation of the Administrative Procedure Act and must be set aside, 5 U.S.C § 706(2)(A). The decision to impose substantive Immigration Conditions "relied on factors that Congress did not intend to consider" because Congress intended that PSN funding be provided for "each" judicial district, 34 U.S.C. § 41504(a), and did not intend PSN funding be conditioned on immigration enforcement. *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Also, by imposing conditions that undermine state and local government flexibility provided for in the FY 2018 PSN Solicitation, RJN Ex. A at 6-7, Defendants both "failed to consider an important aspect of the problem," and "offered an explanation for its decision that runs counter to the evidence before the agency." *State Farm*, 463 U.S at 43 (1983).

## CONCLUSION

For the foregoing reasons, California requests this Court grant its Motion.

Dated: November 28, 2018

Respectfully Submitted,

XAVIER BECERRA
Attorney General of California
MICHAEL L. NEWMAN
Senior Assistant Attorney General
SARAH E. BELTON
Supervising Deputy Attorney General

*/s/ Lee Sherman*

LEE SHERMAN
Deputy Attorney General
*Attorneys for Plaintiff
State of California*